## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AIR CANADA AND AEROPLAN INC.,

                Plaintiffs,

    v.

LOCALHOST LLC,

                Defendant.

C.A. No._____

## COMPLAINT

Plaintiffs Air Canada and Aeroplan Inc. (individually and collectively "The **Air Canada Group**," as applicable) allege as follows, upon actual knowledge with respect to themselves and their own acts, and upon information and belief as to all other matters.

### THE PARTIES

1.      Plaintiff Air Canada is a Canadian company, organized and existing under the laws of Canada, with its headquarters at 7373 Blvd. de la Côte-Vertu West, Montréal, Québec, Canada.

2.      Plaintiff Aeroplan Inc. is a Canadian company, organized and existing under the laws of Canada, with its headquarters at 7373 Blvd. de la Côte-Vertu West, Montréal, Québec, Canada, and is a wholly owned subsidiary of Air Canada.

3.      Defendant Localhost LLC, is a limited liability company, organized and existing under the laws of the State of Delaware, which maintains a registered agent for service of process at 8 The Green, STE A, Dover, Delaware 19901.

1

## NATURE OF THE ACTION

4.      This is an action for breach of contract; violation of the Computer Fraud and

Abuse Act, 18 U.S.C. § 1030; trademark counterfeiting, trademark infringement, trademark

dilution, false designation of origin, unfair competition, and false advertising under the Lanham

Act, 15 U.S.C. § 1051, *et seq.*; and trespass to chattels.

5.      The Air Canada Group brings this action because Mr. Ian Carroll—through

Defendant Localhost LLC—created a for-profit website and computer application (or "app")—

both called Seats.aero—that use substantial amounts of data unlawfully scraped from the Air

Canada Group's website and computer systems.[1] In direct violation of the Air Canada Group's

web terms and conditions, Carroll uses automated digital robots (or "bots") to continuously

search for and harvest data from the Air Canada Group's website and database. His intrusions are

frequent and rapacious, causing multiple levels of harm, e.g., placing an immense strain on the

Air Canada Group's computer infrastructure, impairing the integrity and availability of the Air

Canada Group's data, soiling the customer experience with the Air Canada Group, interfering

with the Air Canada Group's business relations with its partners and customers, and diverting the

Air Canada Group's resources to repair the damage. Making matters worse, Carroll uses the Air

Canada Group's federally registered trademarks and logo to mislead people into believing that

his site, app, and activities are connected with and/or approved by the real Air Canada Group and

lending an air of legitimacy to his site and app. The Air Canada Group has tried to stop Carroll's

activities via a number of technological blocking measures. But each time, he employs

---

[1] In a response to the Air Canada Group's demand letter to Mr. Carroll (discussed below), his
counsel responded that any actions "undertaken by Seats.aero" were done "through its limited
liability company, Localhost LLC." References in this complaint to "Mr. Carroll" "Ian Carroll,"
and "Carroll," thus refer to him and Localhost, LLC.

2

subterfuge to fraudulently access and take the data—all the while boasting about his exploits and circumvention online.

## JURISDICTION AND VENUE

6.     This action arises under the federal Trademark Act, 15 U.S.C. § 1051, *et seq.*; the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*; and Delaware common law. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b). This Court also has diversity jurisdiction under 28 U.S.C. § 1332 because Air Canada and Aeroplan Inc. are Canadian, Defendant Localhost LLC resides in Delaware, and the amount in controversy exceeds $75,000 exclusive of interest and costs. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the Air Canada Group's state-law claims because those claims are substantially related to the Air Canada Group's federal claims.

7.     This Court has personal jurisdiction over Defendant and venue is proper in the District of Delaware pursuant to 28 U.S.C. § 1391(b) and (c) at least because Defendant Localhost LLC resides in this District, Defendant is conducting business in this District, Defendant is violating the Air Canada Group's web terms and trademarks in this District and fraudulently accessing the Air Canada Group's computers and information (or exceeding any authorized access), and the Air Canada Group is being harmed in this District.

## THE AIR CANADA GROUP AND ITS SERVICES

8.     Air Canada is the largest foreign air carrier operating to and from the United States. Since its founding in 1937—when it inaugurated its first flight from Vancouver to Seattle—Air Canada has been Canada's flagship airline. Air Canada is currently Canada's largest passenger airline and the fifth largest passenger airline in all of North America.

3

9.      Air Canada's daily schedule includes up to 400 flights between the United States and Canada, to and from 51 U.S. airports.

10.     Air Canada is a founding member of Star Alliance—the world's largest alliance of airlines. As part of Star Alliance, Air Canada helps connect passengers to 1,300 destinations in nearly 200 countries worldwide.

11.     Through its wholly owned subsidiary Aeroplan Inc., Air Canada operates its Aeroplan reward program. Aeroplan members accumulate Aeroplan points through travel on Air Canada and select partners and through other qualifying purchases, including purchases on certain credit cards and/or purchases from retailers like Starbucks, Uber/Uber Eats, Under Armour, lululemon, adidas, Best Buy, Dell, Sephora, Apple, and many others. Aeroplan members can redeem these Aeroplan points for travel and various other rewards provided by Air Canada and participating partners.

12.     The Air Canada Group has earned the loyalty of over eight million Aeroplan members—nearly a million of whom are located in the United States.

13.     Aeroplan members and potential members can browse and search for available rewards, and redeem Aeroplan points for rewards, on the Canadian edition of Air Canada's website <www.aircanada.com> (which can be automatically accessed from <www.aeroplan.com>) and through the "Air Canada + Aeroplan" mobile app. Beyond Aeroplan points, Air Canada's site and app provide a wealth of information on travel and let people plan trips, book flights, contact customer support, and obtain special offers.

14.     As a result of its popularity and success, the Aeroplan program continues to grow and develop new partnerships for its members. For example, in 2022, Emirates joined the Aeroplan program as a new airline partner, giving Aeroplan members the ability to earn and

4

redeem Aeroplan points for Emirates flights. And, on the ground, people can earn and redeem Aeroplan points for goods and services from popular businesses like HotelSavers, Uber, Starbucks, and many others.

15.     Air Canada dedicates significant technical and other resources to developing the functionality and features of its <www.aircanada.com> site and Air Canada + Aeroplan app, providing, among other things, a superior and seamless customer experience.

16.     As a result of its commitment to air travel, superior service, consumer experience, and its employees, Air Canada has earned numerous awards, including:

- 2024 APEX Five Star Global Airline Award
- Best Airline in Canada from Skytrax World Airline Awards
- Best Airline Staff in Canada from Skytrax World Airline Awards
- Best Low-Cost Airline in Canada (Air Canada Rouge) from Skytrax World Airline Awards
- Favorite Airline in North America (Fifth Consecutive Year) from the Trazee Awards
- Best Airline for Onboard Entertainment for the fifth consecutive year from Global Traveler
- Passenger Choice Award for Best Entertainment in North America from the Airline Passenger Experience Association (APEX)
  Airline Program of the Year, Best Promotion and Best Redemption Ability for Air Canada's Aeroplan loyalty program from the Freddie Awards

**THE AIR CANADA GROUP'S FAMOUS TRADEMARKS**

17.     Air Canada has used the name and trademark AIR CANADA—alone and/or with other word and/or design elements—since at least as early as 1964 to identify its air transportation and related services in the United States.

18.     Air Canada and Aeroplan have used the name and trademark AEROPLAN—alone and/or with other word and/or design elements—since at least as early as 1984 to identify its rewards program and related services in the United States.

5

19.     Air Canada and Aeroplan have obtained a number of federal trademark registrations for the AIR CANADA and AEROPLAN marks (among others) for a variety of airline and reward-program related goods and services, including:

| Mark | Reg. No. Reg. Date | Goods/Services |
|---|---|---|
| **AIR CANADA** ✦ | 2905414 11-30-2004 | Air transportation services of passengers and freight. |
| AIR CANADA | 2847118 06-01-2004 | Air transportation services of passengers and freight. |
| | 1947083 01-09-1996 | Air transportation services for persons, freight, and other cargo; travel agency services, namely making reservations and bookings for transportation and arranging travel tours. |
| AEROPLAN | 3593612 03-24-2009 | Computer programs for use in database management relating to travel reservations and incentive awards programs; computer programs for providing customer loyalty services relating to travel, transportation, lodging, credit card use, retail services, and other partner services; computer programs used to manage, retrieve, and store information and data relating to loyalty program membership points, rewards, and privileges; magnetically encoded credit cards. |

6

| AEROPLAN | 6078089 06-16-2020 | Promoting the sale of wares and services of others through a consumer loyalty program in the distribution and sale of air transportation services; advertising and promotion of the sales of goods and services of others through purchase continuity programs consisting of the distribution of points or miles which can be redeemed for goods, services or money from a catalogue, participating merchants and service providers.<br><br>Credit card services, namely, credit card authorization, payment processing, and transaction processing services, issuance of credit cards and credit card financing services.<br><br>Air transportation services for persons, baggage, freight and other cargo; travel and tour services, namely, providing travel information in the field of travel arranging, providing and booking reward travel, namely, providing transport of reward travelers, booking of reward travel tickets, booking of reward travel transport.<br><br>Providing on-line non-downloadable computer software for the organization, operation and supervision of sales and promotional incentive schemes and loyalty reward programs. |

20.     Printouts of the registrations, taken from the U.S. Patent and Trademark Office's online database, are attached as Exhibit A.

21.     Registration Nos. 2905414, 2847118, 1947083, and 3593612 are incontestable.

22.     The AIR CANADA and AEROPLAN marks have become well-known and famous by virtue of extensive public exposure and the tremendous success of the Air Canada Group's products and services.

ME1 46410472v.1

## DEFENDANT'S UNLAWFUL ACTS

23.     Ian Carroll, who formed Localhost, is a data scraper—someone who extracts data from a legitimate website or database using automated software called "bots." Carroll scrapes data from the Air Canada Group and uses the data to run a for-profit website and app called Seats.aero owned by Localhost, which he boasts is "the fastest search engine for award travel."

24.     While users can get some basic information on Seats.aero for free, they need to upgrade to a "Pro" account for $9.99 per month to obtain "availability on all routes, advanced filters, SMS alerts, and more."

25.     According to one technology blog writer, Mr. Carroll has "a huge amount of experience hacking airlines." (*See* https://samcurry.net/points-com/.)

26.     Carroll scrapes an enormous amount of the Air Canada Group's data using several methods, including "screen scraping" and "API scraping," discussed below, to populate the Seats.aero website and app.

27.     Through screen scraping, Carroll extracts all of the data displayed on the <www.aircanada.com> website, including the text and images.

28.     Carroll also employs the more intrusive API scraping to further feed Defendant's website. An API is an application programming interface that serves as a middleman between a user interface application and a database. The user interface application is the part of a website that a user interacts with, such as the images, text, and buttons. The database stores the data that the user interface application employs to respond to users' interactions with the website. Through Carroll's API scraping, Localhost requests information from the Air Canada Group's database by impersonating authorized requests from Air Canada's user interface application. He then intercepts the database's response.

8

29.    To illustrate the relationship between the user interface, the API, and the database, consider a person searching <www.aircanada.com> for flights from the Detroit Metropolitan Wayne County Airport ("DTW") to the Frankfurt International Airport ("FRA"). First, the user interacts with the user interface application to input certain search parameters, such as the departure and return dates. When the user presses the "Search Flights" button, the user interface application sends a request for flight information to the database. The API recognizes this request as coming from the user interface application based on certain identifying characteristics, including, for example, a header that identifies the authorized user interface application as the source of the request.



30.    If the request appears to come from an authorized user interface application, such as the <www.aircanada.com> website or Air Canada + Aeroplan mobile app, the API will obtain the requested data from the database and send the data to the authorized user interface

application.



31.    The user interface application then uses the data to display the search results

responsive to the user's search, e.g.:



10

32.     Mr. Carroll scrapes the Air Canada Group's data by falsifying requests to Air Canada's API, and altering the header of his API requests, to make it appear as though the requests come from one of Air Canada's authorized user interface applications and to further feed Defendant's website and mobile app.

33.     These deceptive practices allow Defendant to API scrape vast amounts of the Air Canada Group's data, including the date, location, and required Aeroplan points for various routes. Defendant does this numerous times per day. It then uses that scraped data to power its own Seats.aero website and mobile app, e.g.:

*Defendant's Website*



*Defendant's Mobile App*



34.     The following figure illustrates how Defendant's forged API request fraudulently obtains data and then uses that data to power Seats.aero:



12

35.    In addition to using fraudulently obtained Air Canada Group data to power Seats.aero, Defendant uses Air Canada's AIR CANADA and Aeroplan's AEROPLAN marks and logos on Seats.aero, e.g.:



36.    If a user clicks on one of the displayed flights, Seats.aero will prompt the user to either "Book via Air Canada Aeroplan" or to book through another reward program such as, for example, United MileagePlus, e.g.:

13



37.     Defendant's avaricious data scraping generates frequent and myriad requests to the Air Canada Group's database—far in excess of what the Air Canada Group's infrastructure was designed to handle. Its scraping collects a large volume of data, including flight data within a wide date range and across extensive flight origins and destinations—multiple times per day.

These frequent and broad searches result in slower response times for consumers using the Air Canada Group's website and app. At times, Defendant's voluminous requests have placed such immense burdens on the Air Canada Group's infrastructure that it has caused "brownouts." During a brownout, a website is unresponsive for a period of time because the capacity of requests exceeds the capacity the website was designed to accommodate. During brownouts caused by Defendant's data scraping, legitimate customers are unable to use <www.aircanada.com> or the Air Canada + Aeroplan mobile app, including to search for available rewards, redeem Aeroplan points for the rewards, search for and view reward travel availability, book reward flights, contact Aeroplan customer support, and/or obtain service through the Aeroplan contact center due to the high volume of calls during brownouts.

38.     Defendant's data scraping of the Air Canada Group's website also generates a large number of requests on the websites of some of the Air Canada Group's business partners, including Star Alliance. This has, in turn, burdened the infrastructure of these vital partners and strained the Air Canada Group's business relationships with them.

39.     Recognizing the threat that data scraping poses to itself and its consumers, the Air Canada Group explicitly forbids such activity in the Terms of Use, prominently linked on all <www.aircanada.com> webpages (referred to as "the Website" in the Terms of Use), which alerts Defendant and others that they may not:

- directly or indirectly, access, use, encourage, solicit, permit, facilitate, aid, assist, or abet or participate in, including, but not limited to, the selling, licensing, distribution or provision to any entity or person by any means whatsoever that allow, the access, use, or agree to provide the access or use, of the Website through any manual process or any automatic, electronic or technical device, including but not limited to automated scripts, robots, crawls, screen scrapers, web "bots", deep-links, indexes, spiders, click-spams, macro programs, or any other device, program, software, system, algorithm, methodology or technology, now known or that is afterwards discovered, that performs the same or a similar function, in order to, without limitation: "data mine"; "screen scrape"; data process; access, extract, copy, distribute, aggregate or acquire information; generate

15

impressions or clicks; input or store information; search or generate searches; or manipulate or monitor any portion or content of the Website;

- unless expressly provided for in these Terms of Use, create any derivative works from or otherwise copy, license, display, publish, perform, recreate, reproduce, sell, transfer, transmit or otherwise distribute, modify, edit, add to, mirror, frame, re-render, truncate, inject, filer or change of the order of any information, products, goods, services, and software contained or offered on, or obtainable by, through or from the Website. Without limiting the generality of the foregoing, you also agree not to cause to appear any pop-up, pop-under, exit windows, expanding buttons, banners, advertisement, or anything else that minimizes, covers, or otherwise inhibits the full display of the Website;

- access or use the Website in such manner, or otherwise take any action, that burdens our infrastructure to an unreasonable and disproportionate extent, or reduces the speed of the Website, that otherwise interferes with the normal functioning of the Website or otherwise abuses or overuses the Website;

- circumvent, or attempt to circumvent, any measures or precautions taken by Air Canada to prevent the use or access of the Website, or any other action, in violation of these Terms of Use.

40.     Defendant has constructive and/or inquiry notice of these Terms of Use by virtue of the prominent link on each <www.aircanada.com> webpage and the ease with which a reasonably prudent person could click on that link and read the Terms of Use.

41.     Defendant also has actual notice of these Terms of Use. On October 5, the Air Canada Group, through counsel, sent Mr. Carroll a letter noting that his data scraping and operation of the Seats.aero website and mobile app violate the Terms of Use (attaching a copy of the terms) and multiple other laws (see Exhibit B). Counsel for Defendant Localhost LLC, confirmed receipt of the October 5 letter and contested the Air Canada Group's claims. Thereafter, Mr. Carroll acknowledged Defendant's receipt of the Air Canada Group's demand letter via at least one online post, declaring, "We do not intend to comply with their request and will continue to maintain Seats.aero's support for Aeroplan for the foreseeable future. We are confident in our position, and if needed, we will see Air Canada in court[.]"

42.     In addition to the Terms of Use, the Air Canada Group maintains a page telling legitimate users of automated software bots that they may not scrape data from the <www.aircanada.com> webpages. It is industry practice to direct a legitimate (i.e., non-malicious) bot to look for the "robots.txt" webpage associated with a website because that page instructs bots on whether they are permitted to scrape for data (and, if so, from which specific webpage(s)). The <www.aircanada.com/robots.txt> page prohibits data scraping outright. By failing to direct its bots to abide by the industry-standard robots.txt page, Defendant has either intentionally circumvented the Air Canada Group's technological roadblock in the robots.txt page or was willfully blind to it.

43.     In addition to the Terms of Use and robots.txt page, the Air Canada Group has taken multiple affirmative steps, at significant time and expense, to deny Defendant access to the Air Canada Group's data using technological, code-based hurdles.

44.     Upon detecting an exceptional increase in data scraping requests related to the Air Canada + Aeroplan mobile app in April 2023, the Air Canada Group started investigating the matter. The Air Canada Group worked with a third party, Akamai, to add security to prevent these requests. This solution was implemented in May 2023.

45.     Later in May 2023, however, the Air Canada Group again noticed an increase in data scraping requests and identified a large volume coming from Defendant. In response, the Air Canada Group attempted to deny Defendant access to the Air Canada Group's data by installing several additional technological barriers to Defendant's data scraping, i.e.:

- On May 12, 2023, Air Canada released an update to the Air Canada + Aeroplan mobile app—version App.5.33.2—intended to prevent further data scraping by Defendant.

- On May 27, 2023, the Air Canada Group worked with third-party Akamai to implement Akamai Bot Manager Premier on the specific user flow for Aeroplan flight reward shopping.

- On July 20, 2023, the Air Canada Group implemented an additional Akamai security tool into an update to its Air Canada + Aeroplan mobile app, version 5.35. On July 27, 2023, the Air Canada Group activated a feature in this new Akamai security tool intended to deny requests from Defendant's data scraping.

- On August 25, 2023, the Air Canada Group implemented a new bot detection solution =to help eliminate Defendant's data scraping of <www.aircanada.com>.

- Between May and September of 2023, the Air Canada Group continually made Akamai configuration changes to deny Defendant access to the Air Canada Group's data.

- Between May and September of 2023, the Air Canada Group worked with Amazon Web Services to implement rules intended to deny Defendant access to the Air Canada Group's data.

46.     Defendant circumvented these technological barriers and gates that the Air Canada Group constructed to stop it. Indeed, Mr. Carroll has publicly cataloged Defendant's scheme to access the Air Canada Group's data on the social-media platform Discord.

47.     On May 14, 2023—two days after the Air Canada Group released an update to the Air Canada + Aeroplan mobile app to stop Defendant's scraping—Carroll wrote on Discord, "It appears Air Canada tried to block us from searching for availability starting on Friday. I just put in a fix for it so you should see availability start to refresh again." (Exhibit C at 2.)

48.     On June 1, 2023, shortly after the Air Canada Group implemented Akamai cookies on <www.aircanada.com>, Carroll wrote, "Aeroplan banned our servers again. We got around the Aeroplan ban again. We will keep getting around it[.]" (Exhibit C at 3-4.)

49.     On August 17, 2023, Mr. Carroll wrote, "Hi all, as you may have noticed, there has been a lot of instability with Aeroplan lately. This has been occurring because they have configured their security service (Akamai) with extreme anti-bot rules . . . . We have rolled back to our previous method of searching Air Canada, which we expect to be more stable[.]" (Exhibit C at 5.)

18

50.     Defendant thus knew full well that the data scraping was unauthorized and that the Air Canada Group was actively attempting to technologically deny Defendant access to the Air Canada Group's data. Still, Defendant continually worked to subvert and circumvent the technological barriers that the Air Canada Group placed in its path.

## INJURY TO THE AIR CANADA GROUP AND THE PUBLIC

51.     Defendant's data scraping has caused and is continuing to cause disruption to the Air Canada Group's services and damage to the Air Canada Group's infrastructure and operations, resulting in slow response times and brownouts on <www.aircanada.com> and the Air Canada + Aeroplan mobile app.

52.     Defendant's data scraping has harmed the Air Canada Group's goodwill and reputation with consumers as a result of the slow response times and brownouts on <www.aircanada.com> and the Air Canada + Aeroplan mobile app.

53.     Defendant's data scraping has harmed the Air Canada Group's goodwill and reputation with its business partners as a result of the slow response times and brownouts on <www.aircanada.com> and the Air Canada + Aeroplan mobile app, and because of increased request volume on the partners' systems as a result of Defendant's data scraping.

54.     Defendant's data scraping has resulted in lost opportunities because of the resources the Air Canada Group has had to devote to fighting Defendant's scraping.

55.     Defendant's unauthorized use of the Air Canada Group's marks and logos is likely to cause confusion, mistake, and deception as to the source or origin of Defendant, its business, and/or its commercial activities with the Air Canada Group.

56.     Defendant's unauthorized activities have damaged and irreparably injured and, if permitted to continue, will further damage and irreparably injure the Air Canada Group, the Air

19

Canada Group's name and marks, the Air Canada Group's reputation and goodwill, and the public's interest in being free from confusion, mistake, and deception.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract**

57.     Air Canada repeats and realleges each and every allegation set forth in paragraphs 1 through 56 of this Complaint.

58.     Use of <www.aircanada.com> is governed by and subject to the Air Canada Group's Terms of Use.

59.     The Terms of Use constitute a valid and enforceable agreement between the Air Canada Group and Defendant.

60.     The <www.aircanada.com> website and other relevant webpages display a link to the Terms of Use and offer easy access to the Terms of Use, giving Defendant constructive notice of the Terms of Use.

61.     Through direct correspondence, the Air Canada Group provided Defendant with actual notice of the Terms of Use, advising them that their activities violate the Terms of Use.

62.     Defendant's actions breach the provisions of the Terms of Use by at least the following: (1) directly or indirectly accessing, using, encouraging, soliciting, permitting, facilitating, aiding, assisting, or abetting or participating in, including, but not limited to, the selling, licensing, distribution, or provision to any entity or person by any means whatsoever that allow the access, use, or agreement to provide the access or use of <www.aircanada.com> through manual processes and/or automatic, electronic, or technical devices, including, but not limited to, automated scripts, robots, crawls, screen scrapers, web "bots," deep-links, indexes, spiders, click-spams, macro programs, or any other device, program, software, system, algorithm, methodology, or technology that performs the same or a similar function in order to

20

"data mine," "screen scrape," data process, access, extract, copy, distribute, aggregate, or acquire information; generate impressions or clicks; input or store information; search or generate searches; or manipulate or monitor any portion or content of <aircanada.com>; (2) creating derivative works from and/or copying, licensing, displaying, publishing, performing, recreating, reproducing, selling, transferring, transmitting, and/or otherwise distributing, modifying, editing, adding to, mirroring, framing, re-rendering, truncating, injecting, and/or changing the order of information, products, goods, services, and/or software contained and/or offered on or obtainable by, through, or from <www.aircanada.com>; (3) accessing or using <www.aircanada.com> in such manner that burdens the Air Canada Group's infrastructure to an unreasonable and disproportionate extent, reducing the speed of <www.aircanada.com>, interfering with the normal functioning of <www.aircanada.com>, and abusing and/or overusing <www.aircanada.com>; and (4) circumventing, or attempting to circumvent, measures or precautions taken by the Air Canada Group to prevent the use or access of <www.aircanada.com>.

### SECOND CLAIM FOR RELIEF
### Computer Fraud and Abuse under 18 U.S.C. § 1030

63.     The Air Canada Group repeats and realleges each and every allegation set forth in paragraphs 1 through 62 of this Complaint.

64.     The Air Canada Group's computers and servers are involved in interstate and foreign commerce and communication, and are protected computers under 18 U.S.C. § 1030(e)(2).

65.     Defendant intentionally accessed the Air Canada Group's protected computers or servers without authorization or in excess of authorization as defined by the Air Canada Group's Terms of Use, as well as by the Air Canada Group's affirmative acts denying access to

ME1 46410472v.1

Defendant, and thereby obtained information from the Air Canada Group's protected computers or servers, including to the Air Canada Group's routes, pricing, and rewards in violation of 18 U.S.C. § 1030(a)(2).

66.     Defendant knowingly and with an intent to defraud accessed the Air Canada Group's protected computers and servers without authorization or in excess of authorization, and by means of this access furthered the intended fraud and obtained valuable information from the Air Canada Group's computers and servers, including the Air Canada Group's routes, pricing, and rewards in violation of 18 U.S.C. § 1030(a)(4).

67.     Defendant has violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(B) and (C) by intentionally accessing a protected computer without authorization, causing damage to the Air Canada Group, recklessly or without due regard for his actions.

68.     The Air Canada Group has suffered damages and loss by reason of these violations, including harm to the Air Canada Group's content and programs, and expenses associated with being forced to investigate the unauthorized access and abuse of its computers and servers, with other losses and damages in an amount to be proven at trial of over $5,000 aggregated over a one-year period.

**THIRD CLAIM FOR RELIEF**
**Federal Trademark Counterfeiting under**
**Sections 32(1)(b), 34(d) of the Lanham Act, 15 U.S.C. §§ 1114(1)(b), 1116(d)**

69.     The Air Canada Group repeats and realleges each and every allegation set forth in paragraphs 1 through 68 of this Complaint.

70.     Defendant has used and continues to use a counterfeit of Air Canada's and Aeroplan's federally registered marks (including Reg. Nos. 1947083, 3593612, and 6078089) in connection with travel agency services and software and services relating to travel reservations

22

and incentive programs in violation of Sections 32(1)(b), 34(d) of the Lanham Act, 15 U.S.C. §§ 1114(1)(b), 1116(d).

### FOURTH CLAIM FOR RELIEF
**Federal Trademark Infringement under
Section 32(a) of the Lanham Act,
<u>15 U.S.C. § 1114(1)</u>**

71.     The Air Canada Group repeats and realleges each and every allegation set forth in paragraphs 1 through 70 of this Complaint.

72.     Without the Air Canada Group's consent, Defendant used and continues to use in commerce reproductions, copies, and colorable imitations of the Air Canada Group's registered AIR CANADA and AEROPLAN marks in connection with the offering, distribution, and advertising of services, which is likely to cause confusion, or to cause mistake, or to deceive, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

### FIFTH CLAIM FOR RELIEF
**Federal Trademark Infringement, False Designation
of Origin, and Unfair Competition under
Section 43(a)(1)(A) of the Lanham Act,
<u>15 U.S.C. § 1125(a)(1)(A)</u>**

73.     The Air Canada Group repeats and realleges each and every allegation set forth in paragraphs 1 through 72 of this Complaint.

74.     Defendant's actions described above are likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of Defendant, Defendant's services/goods, and/or Defendant's commercial activities by or with the Air Canada Group, and thus constitute trademark infringement, false designation of origin, and unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

ME1 46410472v.1

### SIXTH CLAIM FOR RELIEF
### Trademark Dilution under
### Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)

75.     The Air Canada Group repeats and realleges each and every allegation set forth in paragraphs 1 through 74 of this Complaint.

76.     The Air Canada Group's AIR CANADA and AEROPLAN marks are famous, as that term is used in 15 U.S.C. § 1125(c), and were famous prior to Defendant's first use of AIR CANADA and AEROPLAN, based on, among other things, the federal registration of the Air Canada Group's AIR CANADA and AEROPLAN marks and the extensive nationwide use, advertising, promotion, and recognition of those marks.

77.     Defendant's actions, as described above, are likely to dilute the distinctive quality of the Air Canada Group's famous AIR CANADA and AEROPLAN marks in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), as amended by the Trademark Dilution Revision Act of 2006.

### SEVENTH CLAIM FOR RELIEF
### False Advertising
### Section 43(a)(1)(B) of the Lanham Act,
### 15 U.S.C. § 1125(a)(1)(B)

78.     The Air Canada Group repeats and realleges each and every allegation set forth in paragraphs 1 through 77 of this Complaint.

79.     Defendant's actions described above constitute false and misleading descriptions and misrepresentations of fact in commerce which, in commercial advertising and promotion misrepresent the nature, characteristics, and qualities of the Air Canada Group's and Defendant's goods, services, and/or commercial activities.

24

## EIGHTH CLAIM FOR RELIEF
### Trespass to Chattels
### <u>under Delaware Common Law</u>

80.     The Air Canada Group repeats and realleges each and every allegation set forth in paragraphs 1 through 79 of this Complaint.

81.     The Air Canada Group owns, possesses, and/or has the right to possess the servers and infrastructure used to run its business.

82.     Defendant intentionally interfered with the Air Canada Group's use and possession of the Air Canada Group's servers and infrastructure.

83.     The Air Canada Group has never consented to Defendant's conduct.

84.     Defendant's conduct has caused damage and, if continued, expanded, and/or replicated unchecked by others, will cause damage to the Air Canada Group in the form of impaired condition, quality, and value of its servers, infrastructure, and services.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, the Air Canada Group respectfully requests that this Court enter judgment in its favor on each and every claim set forth above and award it relief, including the following:

A.     An Order declaring that Defendant's activities constitute a breach of his contract with the Air Canada Group, computer fraud, trademark counterfeiting, trademark infringement, trademark dilution, unfair competition, false advertising, and trespass, as detailed above.

B.     An Order that Defendant and any person or entities in active concert or participation with him be preliminarily enjoined throughout the pendency of this lawsuit, and permanently enjoined thereafter, from: (1) extracting the Air Canada Group's flight, fare, reward,

25

and/or other information or data from <www.aircanada.com> and/or the Air Canada Group's proprietary servers or websites; (2) publishing the Air Canada Group's flight, fare, and reward information on or through the Seats.aero website, Seats.aero mobile application, and/or elsewhere; (3) accessing and using the Air Canada Group's websites and data in violation of the Air Canada Group's Terms of Use; (4) using the AIR CANADA or AEROPLAN marks or any similar term(s) in any manner likely to cause confusion with the Air Canada Group and/or its marks, to dilute the Air Canada Group's marks, or to otherwise injure the Air Canada Group and/or its reputation; and/or (5) assisting, aiding, and/or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs B(1) through (4) above.

C.      An Order directing that, within thirty (30) days after the entry of the injunction, Defendant file with this Court and serve on the Air Canada Group's attorneys a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction.

D.      An Order requiring Defendant to account for and pay to the Air Canada Group all profits arising from Defendant's unlawful acts, and increasing such profits, for payment to the Air Canada Group in accordance with 15 U.S.C. § 1117 and other applicable laws.

E.      An Order requiring Defendant to pay statutory damages in accordance with 15 U.S.C. § 1117(c) of up to $2,000,000 for each type of service sold, offered for sale, or distributed by Defendant under the AIR CANADA and AEROPLAN marks.

F.      An Order requiring Defendant to pay the Air Canada Group actual damages, in an amount to be determined (but exceeding $75,000), caused by the foregoing acts, and trebling such damages in accordance with 15 U.S.C. § 1117 and other applicable laws.

26

G.       An Order requiring Defendant to pay the Air Canada Group all of its litigation

expenses, including reasonable attorneys' fees and costs under 15 U.S.C. § 1117 and other

applicable laws.

H.       An Order requiring Defendant to pay the Air Canada Group punitive damages

in an amount to be determined due to the foregoing willful acts.


Dated: October 19, 2023                          MCCARTER & ENGLISH, LLP

*Of counsel:*                                    */s/ Daniel M. Silver*_____
                                                 Daniel M. Silver (#4758)
Douglas A. Rettew                                Alexandra M. Joyce (#6423)
Jonathan J. Fagan                                405 N. King St., 8th Floor
FINNEGAN, HENDERSON, FARABOW,                    Wilmington, DE 19801
 GARRETT & DUNNER, L.L.P.                         (302) 984-6300
901 New York Avenue N.W.                          dsilver@mccarter.com
Washington, D.C. 20001-4413                       ajoyce@mccarter.com
(202) 408-4000 (phone)
(202) 408-4400 (fax)                             *Attorneys for Plaintiffs*
                                                 *Air Canada and Aeroplan Inc.*

ME1 46410472v.1