**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AIR CANADA AND AEROPLAN INC., | |
| Plaintiffs, | C.A. No. 23-1177-GBW |
| v. | |
| LOCALHOST LLC, | |
| Defendant. | |

**PLAINTIFFS' OPENING BRIEF
<u>IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION</u>**

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................ 1

II.   STATEMENT OF FACTS ........................................................................................... 2

      A.    The Air Canada Group and Its Aeroplan Reward Program .................................. 2

      B.    Localhost and Its Data Scraping ........................................................................ 5

            1.    Localhost Obtains Data Using Fraudulent, Unauthorized Requests........... 5

            2.    Localhost Consistently Circumvents Air Canada's Efforts to Block
                  Its Unauthorized Scraping Activity ....................................................... 7

      C.    The Effect of Localhost's Scraping on the Air Canada Group ............................. 8

            1.    Localhost's Scraping Slows and Disables the Air Canada Group's
                  Website and Mobile App ...................................................................... 8

            2.    Localhost's Scraping Damages the Air Canada Group's Business
                  Partnerships ....................................................................................... 9

            3.    The Resources the Air Canada Group Has Had to Divert to Try to
                  Stop Localhost ................................................................................. 10

      D.    Air Canada's Terms of Use Prohibit Data Scraping ........................................ 11

III.  ARGUMENT ........................................................................................................... 12

      A.    The Air Canada Group Is Likely to Succeed on Its Breach-of-Contract
            Claim ............................................................................................................ 13

            1.    The Terms of Use Are a Contract Between Air Canada and
                  Localhost ......................................................................................... 13

            2.    Localhost Has Breached Obligations Imposed by the Terms of Use ....... 14

            3.    The Air Canada Group Has Suffered Damages from Localhost's
                  Breach of the Terms of Use ................................................................ 15

      B.    The Air Canada Group Will Continue to Suffer Irreparable Harm Unless
            Localhost Is Enjoined .................................................................................... 16

      C.    The Balance of Hardships Favors Enjoining Localhost's Infringement.............. 18

      D.    Public Interest Is Best Served by a Preliminary Injunction ............................... 19

IV.   CONCLUSION ........................................................................................................ 20

ii

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allegheny Energy, Inc. v. DQE, Inc.*,
    171 F.3d 153 (3d Cir. 1999)......................................................................................13

*CouponCabin, Inc. v. PriceTrace, LLC*,
    No. 18 C 7525, 2019 WL 1572448 (N.D. Ill. Apr. 11, 2019)..........................................13–14

*Design With Friends, Inc. v. Target Corp.*,
    No. 1:21-cv-01376-SB, 2023 WL 3434013 (D. Del. May 12, 2023)................................13, 15

*Fam. Inada Co. v. FIUS Distribs. LLC*,
    No. 19-925-CFC, 2019 WL 5295178 (D. Del. Oct. 18, 2019) ................................................17

*Home Line Furniture Indus., Inc. v. Banner Retail Mktg., LLC*,
    630 F. Supp. 2d 527 (E.D. Pa. 2009) ......................................................................................16

*Jiffy Lube Int'l, Inc. v. Weiss Bros.*,
    834 F. Supp. 683 (D.N.J. 1993) ..............................................................................................19

*Kos Pharms., Inc. v. Andrx Corp.*,
    369 F.3d 700 (3d Cir. 2004)....................................................................................................13

*LVL Co. v. Atiyeh*,
    469 F. Supp. 3d 390 (E.D. Pa. 2020) ......................................................................................20

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer
    Pharms. Co.*,
    290 F.3d 578 (3d Cir. 2002)....................................................................................................19

*Opticians Ass'n of Am. v. Indep. Opticians of Am.*,
    920 F.2d 187 (3d Cir. 1990)....................................................................................................19

*Register.com, Inc. v. Verio, Inc.*,
    356 F.3d 393 (2d Cir. 2004)..........................................................................................14, 17, 18

*Sw. Airlines Co. v. BoardFirst, L.L.C.*,
    No. 3:06-CV-0891-B, 2007 WL 4823761 (N.D. Tex. Sept. 12, 2007) .................14, 18, 19, 20

*Sw. Airlines Co. v. Kiwi.com, Inc.*,
    No. 3:21-cv-00098-E, 2021 WL 4476799 (N.D. Tex. Sept. 30, 2021) .................14, 18, 19, 20

*Ubisoft, Inc. v. Kruk*,
    No. CV 20-478-DMG, 2021 WL 3472833 (C.D. Cal. July 9, 2021) ......................................17

*VLIW Tech., LLC v. Hewlett-Packard Co.*,
    840 A.2d 606 (Del. 2003) ........................................................................................................13

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ....................................................................................................................19

**Other Authorities**

Sam Curry*, Leaked Secrets and Unlimited Miles: Hacking the Largest Airline and
    Hotel Rewards Platform* (Aug. 3, 2023), https://samcurry.net/points-com/ .............................5

iv

## I.      INTRODUCTION

Consumers, airlines, and their retail partners love frequent flier programs. For consumers, they reward loyalty by giving them free things—from airline tickets, to cabin upgrades, to a host of goods and services. For airlines, they build brand loyalty and satisfaction and encourage people to fly with them. And for the airlines' participating retailers, they drive traffic to their wares and encourage further purchases.

Given the importance of this brand-building ecosystem, Air Canada (with its subsidiary Aeroplan Inc., collectively the "Air Canada Group") cultivates and defends the website and infrastructure that power its "Aeroplan" reward program. It does so in part by requiring visitors to its website and mobile application (or "app") to agree to terms and conditions that prohibit intrusions that would slow or impair the system. It also implements technological barricades against those who try to abuse the system. One of those people is Mr. Ian Carroll and his company Localhost LLC.

According to one technology blog writer, Carroll has "a huge amount of experience hacking airlines." And he does just that. Through Localhost, Carroll created a for-profit website and mobile app—both called Seats.aero, where people can compare awards flights and search for the flight that will require the fewest Aeroplan points—that use substantial amounts of data unlawfully scraped from the Air Canada Group's system.

In direct violation of the Air Canada Group's web terms and conditions, Carroll uses automated digital robots (or "bots") to continually search for and harvest data from the Air Canada Group's website and database to fuel the information made available at Seats.aero. His intrusions are frequent and rapacious, causing multiple levels of harm, e.g., slowing the Air Canada Group's website and mobile app and, at times, rendering them inoperable; overwhelming the digital infrastructure of the Air Canada Group's airline partners with surges in searches for

1

partner award flight availability; and forcing the Air Canada Group to divert substantial time and effort from important projects to attempt to stop Localhost. All strike an immeasurable and irreparable blow to the Air Canada Group's goodwill and critical relationships with its most loyal customers and strategic airline partners.

Though the Air Canada Group has placed technological barriers in Carroll's way, he has successfully circumvented them by fraudulently accessing and scraping the data—all the while boasting about his exploits and circumvention online. An immediate injunction is thus needed to protect the Air Canada Group and the public from further harm.

## II.     STATEMENT OF FACTS

### A.     The Air Canada Group and Its Aeroplan Reward Program

Air Canada is the largest foreign air carrier operating to and from the United States. (Declaration of Derek Whitworth, ¶ 3 ("Whitworth Decl.").) Through its wholly owned subsidiary Aeroplan Inc., the Air Canada Group operates the Aeroplan reward program. (*Id.*) Aeroplan allows members to accumulate points by, among other things, purchasing travel on Air Canada and its partner airlines. (*Id.* ¶ 4.) Aeroplan members can then redeem those points for travel (e.g., airline tickets) and other rewards provided by the Air Canada Group and participating partners. (*Id.*)

One of the most important facets of a reward program is the variety of rewards offered. (*Id.* ¶ 5.) The more things people can use their points to redeem, the more attractive the program—and, consequently, the more people will want to become active, loyal members. (*Id.*) In addition to increasing business, this builds brand loyalty and trust. (*Id.*) The Air Canada Group has thus invested significant resources to recruit third-party businesses to partner with the Air Canada Group and participate in the Aeroplan program. (*Id.* ¶ 6.) And once these partnerships

2

are established, the Air Canada Group takes great care and effort to nurture and strengthen them, as they are critical to Aeroplan's success. (*Id.*)

One of the Air Canada Group's oldest and most valuable partnerships is with the Star Alliance, of which Air Canada is a founding member. (*Id.* ¶ 14.) The Star Alliance is the world's largest network of airlines—including, among others, United Airlines, Air China, Lufthansa, SWISS, Turkish Airlines, and Air New Zealand—and connects passengers to 1,300 destinations in nearly 200 countries worldwide. (*Id.*) Because of the Air Canada Group's partnership with the Star Alliance, customers can earn Aeroplan points by flying on any of the twenty-six member airlines and use those points to book tickets on multiple airlines. (*Id.*) The Air Canada Group also partners with non-Alliance airlines, giving Aeroplan more international partner airlines than any other program. (*Id.* ¶ 17.) Individually and together, these partners increase the worth of Aeroplan points, incentivizing customers to participate in the Aeroplan program and maintaining and elevating customers' loyalty to the Air Canada Group. (*Id.* ¶¶ 14, 17.) That is evident in the numbers; today, the Air Canada Group has over eight million Aeroplan members. (*Id.* ¶ 25.)

In addition to having the right partner and reward options, it is critical that a reward program be easy to use. (*Id.* ¶ 7.) To make it so, the Air Canada Group dedicates infrastructure and human resources to develop and support its rewards website (found at <www.aircanada.com>) and mobile app ("Air Canada + Aeroplan"). (*Id.*) Through the website and mobile app, Aeroplan members and potential members can browse and search for data on various rewards, including data pertinent to flight times, routes, and the Aeroplan points needed to purchase a flight. (*Id.*) The Air Canada Group has a digital products group dedicated to maintaining and optimizing features on the website and mobile app and to monitoring and responding to customer demand for additional features. (*Id.*)

3

The process of a user accessing data on the Air Canada Group's website and mobile app involves three main things:

1.  The website's or mobile app's *user interface application.* This is the part of the website or app that a user interacts with, including images, text, and buttons.

2.  The Air Canada Group's *database.* This is the repository where the data is stored.

3.  The Air Canada Group's *application programing interface* ("API"). This is a middleman between the user interface application and the database. (*Id.* ¶ 8.)

Consider a user searching flights from the Philadelphia International Airport to the Frankfurt International Airport. (*Id.* ¶¶ 9–12.) A user enters search parameters into the user interface and presses the "Search Flights" button. (*Id.*) The user interface sends a *shopping request* (i.e., a request for flight information) to the API. (*Id.*) The API verifies the shopping request as coming from an authorized user interface (the website or mobile app), obtains the requested data from the database, and sends the data to the user interface, which displays the data as search results:



B.       **Localhost and Its Data Scraping**

Defendant Localhost was founded and is run by an individual named Ian Carroll. Through Localhost, Mr. Carroll engages in "data scraping"—the practice of extracting data from a website using automated software or bots. (Declaration of Paul Clark ¶¶ 21, 28–32 ("Clark Decl.").) According to one technology blog writer, Carroll has "a huge amount of experience hacking airlines." (*See* Fagan Decl., Ex 8, 6 (Sam Curry, *Leaked Secrets and Unlimited Miles: Hacking the Largest Airline and Hotel Rewards Platform* (Aug. 3, 2023), https://samcurry.net/points-com/).) Carroll scrapes an enormous amount of the Air Canada Group's data by bypassing the legitimate ways to access the data and using bots to fraudulently scrape it. After hijacking the data, Localhost uses it to populate its for-profit website and app, Seats.aero, where users can search for flights that can be purchased using Aeroplan points. Seats.aero provides basic information for free, but users must purchase a "Pro" account for $9.99 per month to see "availability on all routes, advanced filters, [and] SMS alerts." (Fagan Decl., Ex. 7 at 2.)

1.       **Localhost Obtains Data Using Fraudulent, Unauthorized Requests**

Localhost circumvents the authorized process of legitimately obtaining data from the Air Canada Group and forges shopping requests to Air Canada's API. Rather than send shopping requests for information about a single flight path the way consumers do, Localhost anticipatorily searches data on *all* possible flight itineraries available through Aeroplan—every day, multiple times a day. (Clark Decl. ¶¶ 31–33.) To scrape data on such a scale, Localhost conceals the source of its API requests, making it appear as though the requests come from one of the Air Canada Group's authorized user interface applications. (*Id.* ¶ 34.) Localhost does this so the Air Canada Group's systems cannot identify that the search activity is coming from a bot.

(*Id.*) The following figure illustrates how Defendant's forged shopping requests fraudulently obtain data, and how it then uses that data to power Seats.aero:



(*Id.*)

The daily volume of Localhost's fraudulent shopping requests is substantial and equals or exceeds the number of results that Localhost displays on Seats.aero for Aeroplan. (*Id.* ¶¶ 35–37.) For example, on a single day, Seats.aero displayed 265,552 routes available through Aeroplan, reflecting at least 265,552 shopping requests to Air Canada's API within the previous two days. (*Id.*)

The Air Canada Group's API is not the only one slammed by the surge in search volume from Localhost. Each shopping request also generates a large number of collateral "availability requests" sent to partner airlines who operate any leg of a journey, asking for that partner airline's relevant flight information. (*Id.* ¶ 38.) A single shopping request can result in as many as 100–300 availability requests. (*Id.*) Consequently, when the Air Canada Group's API received 265,552 shopping requests (shown above), Aeroplan's partner airlines could have received millions of fraudulent availability requests. (*Id.* ¶ 39.)

6

### 2. Localhost Consistently Circumvents Air Canada's Efforts to Block Its Unauthorized Scraping Activity

The Air Canada Group has repeatedly tried to block Localhost's cyber intrusions. But each time, Localhost has circumvented the blockade, resulting in the cat-and-mouse struggle summarized below:

4/20/23:   At 03:00 to 04:00 GMT, Amadeus—a third-party service provider monitoring the Air Canada Group's API—detected a *two-fold increase* in traffic. Amadeus also detected "high RTOs" (Recovery Time Objectives), signaling slow website or app response times. Air Canada categorized the traffic and resulting RTOs as a "Major Incident"— one related to high traffic that renders the website temporarily inoperable. The Air Canada Group later learned that a Star Alliance partner experienced a *five-fold increase* in availability request traffic from the Air Canada Group that same day.

Just hours later, at 05:41 GMT, Ian Carroll announced, "I'm excited to announce that we've added support for Air Canada Aeroplan!"

5/4/23 &
5/9/23:   Amadeus recorded two Major Incidents, one of which lasted for over three hours. Air Canada observed "[n]egative impact to brand, as some members were unable to complete redemption bookings" during these incidents. A high volume of customers called the Aeroplan customer service number and complained about this.

5/12/23:   After identifying Seats.aero's scraping of the mobile app as the principal source of traffic, the Air Canada Group released a security update to prevent scraping.

5/14/23:   Ian Carroll announced, "It appears Air Canada tried to block us from searching for availability starting on Friday. I just put in a fix for it so you should see availability start to refresh again."

5/15/23:   The Air Canada Group experienced another Major Incident that lasted for an hour. Again, the Air Canada Group observed "potential impact on revenue and brand" and "incomplete Aeroplan bookings on both web and mobile."

5/23/23:   Amadeus recorded another Major Incident. Again, customers called Aeroplan customer service, complaining that they could not book online.

5/26/23:   The Air Canada Group released a website update containing software to prevent bots from scraping its data. After activating the update, traffic dropped from 75+ transactions per second to 12–13—an 80+% decrease.

5/31/23:   The Air Canada Group worked with a service provider to implement "rate limiting," allowing it to limit shopping requests from web addresses associated with Seats.aero.

6/1/23:      Ian Carroll boasted, "Aeroplan banned our servers again. We got around the Aeroplan ban again. We will keep getting around it . . . ."

7/20/23:     Air Canada released version 5.35 of the mobile app, with new bot managing software.

7/27/23:     Air Canada activated a security upgrade contained in version 5.35 of the mobile app.

8/17/23:     Ian Carroll announced that "there has been a lot of instability with Aeroplan lately. This has been occurring because they have configured their security service (Akamai) with extreme anti-bot rules . . . . We have rolled back to our previous method of searching Air Canada [i.e., scraping the mobile app instead of the website], which we expect to be more stable and is actively updating data now."

(Whitworth Decl. ¶¶ 26–57 and Ex. 2; Fagan Decl., Ex. 3.)

Today, Localhost continues to scrape the Air Canada Group's website and mobile app and customers continue to suffer the consequences and complain. (Whitworth Decl. ¶ 57; Fagan Decl., Ex. 2.)

### C.      The Effect of Localhost's Scraping on the Air Canada Group

Localhost's data scraping harms the Air Canada Group in at least three ways. First, the scraping slows the Aeroplan website and mobile app and, at times, renders them inoperable (i.e., causing "brownouts"). By extension, this can impact the tools used by Aeroplan customer service agents. Second, the scraping overwhelms the infrastructure of the Air Canada Group's airline partners with surges in availability requests. Third, it forces the Air Canada Group to divert substantial time and resources from other important projects to fight Localhost.

### 1.      Localhost's Scraping Slows and Disables the Air Canada Group's Website and Mobile App

Localhost extracts the Air Canada Group's data using a volume of shopping requests that far exceeds the capacity that the Aeroplan website and mobile app were designed to handle. (Clark Decl. ¶ 52.) It slows the website and app and, at times, results in disabling brownouts. (*Id.* ¶¶ 28, 51.) That is precisely what happened on April 20, May 4, May 9, May 15, and May 23, as chronicled above. Customers could not use the website or app to search for rewards (including

8

flights) or redeem Aeroplan points (including for reward flights). (Whitworth Decl. ¶¶ 48–49.) Naturally, they were upset and complained. (*Id.*)

### 2.   Localhost's Scraping Damages the Air Canada Group's Business Partnerships

As noted, for *each* shopping request Localhost sends to the Air Canada Group's API, partner airlines receive between 100–300 collateral availability requests. (Whitworth Decl. ¶ 32.) And when partner airlines detect an unusual volume of requests from Aeroplan's system, they sometimes block the requests, suspecting fraud and/or because the traffic slows their systems. (*Id.*) Any interruption to the flow of data between the Air Canada Group and its partners can result in Aeroplan customers not being able to view or redeem partner rewards. (*Id.*)

In one case, on April 20, 2023—the day Localhost announced it was scraping the Air Canada Group's data—one of the group's partner airlines saw a drastic increase in requests from the Air Canada Group, with some traffic metrics increasing as much as 500%. (*Id.*) This airline complained to the Air Canada Group, which took measures to lessen the load on the airline's system. Unfortunately, the fix resulted in the Aeroplan website and app not being able to display award availability from the complaining airline. (*Id.* ¶ 33.)

Not knowing or understanding that Localhost's scraping was the root cause of the lack of partner award availability, consumers naturally blamed the Air Canada Group. For example, in a discussion titled "Aeroplan blocking partner award availability" on the "Reddit" online forum, Aeroplan customers bemoaned their inability to apply points to partner flights. (Fagan Decl., Ex. 1.) One customer wrongly believed that *Aeroplan* "essentially removed" all All Nippon Airways, EVA Air, and Etihad Airways flights. (*Id.*) Others lamented a temporary block on flights from Lufthansa and SWISS. (*Id.*) Another described these issues as "certainly distressing as partner

redemption is the best redemption one can still get" from Aeroplan. (*Id.*) Yet another wondered, "Hopefully this isn't the beginning of Aeroplan devaluation." (*Id.*)

Similarly, the "FlyerTalk" online forum contains a discussion page dedicated to consumer complaints arising from the lack of Aeroplan partner reward availability that has resulted from Localhost's scraping. (*Id.*, Ex. 2.) One user collated issues "as of November 2023," which sits atop the discussion page and serves as a virtual billboard that highlights the blow to the Air Canada Group's reputation from Localhost's scraping. (*Id.*)

### 3. The Resources the Air Canada Group Has Had to Divert to Try to Stop Localhost

The Air Canada Group has dedicated significant resources to abate Localhost's scraping. The Air Canada Group employs a digital products group, consisting of software engineers and developers, dedicated to maintaining existing features on the website and mobile app and to developing new features to improve the customer experience and respond to customer demands, preferences, and desires. (Whitworth Decl. ¶¶ 7, 58.) Localhost's scraping and the ensuing game of cat-and-mouse (described above) has so consumed the digital products group's time and energy that it has been unable to give customers the features they want. For example, the group has been unable to implement the highly requested "Calendar" feature, which would allow customers to more easily view flight and award data, and which has been among the group's top priorities. (*Id.* ¶ 59.) Additionally, the group has been unable to launch the "Multi-City" feature for the mobile app—a highly requested feature that would allow users to search itineraries for found trip flights that arrive and depart in different airports (rather than a traditional round-trip that departs from A to arrive in B, and then from B to A). (*Id.* ¶ 60.) Making matters worse, Localhost's scraping has also delayed the digital products group's implementation of updates to

10

existing features, including delaying an update to a feature that allows users to change an Aeroplan flight reward itinerary online until November 2023. (*Id.* ¶ 61.)

Localhost's scraping has also stymied the digital products group's efforts by rendering formerly valuable metrics meaningless. For example, the group tracks a "Shop-to-Book" ratio, which measures the number of total requests users submit through the website or app against the total number of flights that are actually booked. (*Id.* ¶ 63.) A more optimized (and better) user interface leads to a higher number of bookings-to-requests. (*Id.*) Because Localhost's scraping floods the Air Canada Group's website and app with myriad searches, it has rendered useless this valuable tool for measuring success and optimizing the customer experience. (*Id.* ¶ 63–66.)

### D.     The Air Canada Group's Terms of Use Prohibit Data Scraping

Recognizing the threat that data scraping poses to itself and its consumers, the Air Canada Group explicitly forbids such activity in its Terms of Use, prominently linked on all <www.aircanada.com> webpages (referred to as "the Website" in the Terms of Use), which alerts Defendant and others that they may not:

- directly or indirectly, access . . . the Website through . . . automated scripts, robots, crawls, screen scrapers, web "bots", deep-links, indexes, spiders, click-spams, macro programs, or any other device, program, software, system, algorithm, methodology or technology, . . . to, without limitation: "data mine"; "screen scrape"; data process; access, extract, copy, distribute, aggregate or acquire information; generate impressions or clicks; input or store information; search or generate searches; or manipulate or monitor any portion or content of the Website;

- create any derivative works from or otherwise copy, license, display, publish, perform, re[-]create, reproduce, sell, transfer, transmit or otherwise distribute, modify, edit, add to, mirror, frame, re-render, truncate, inject, filer or change of the order of any information, products, goods, services, and software contained or offered on, or obtainable by, through or from the Website;

- access or use the Website in such manner, or otherwise take any action, that burdens our infrastructure to an unreasonable and disproportionate extent, or reduces the speed of the Website, that otherwise interferes with the normal functioning of the Website or otherwise abuses or overuses the Website; and

- circumvent, or attempt to circumvent, any measures or precautions taken by Air Canada to prevent the use or access of the Website, or any other action, in violation of these Terms of Use.

D.I. 1-2 at 4-5.[1]

The Air Canada Group provides access to the website and mobile app subject to the Terms of Use, which state that they "govern your use" of the website and app and that "[e]ach time you access or use" the website or app, you are entering into a contract with us and you agree to be bound by these Terms of Use." *Id.* at 3. The Air Canada Group provides easy access to these terms via a link on both www.aircanada.com and the mobile app. Notably, Localhost also conditions use of its website on terms of use, posted via a link in the same place on Seats.aero. The Air Canada Group reminded Localhost of the group's Terms of Use via an October 5, 2023 letter, explaining to Mr. Carroll that his data scraping violates the terms and attaching them. (Whitworth Decl. ¶ 71; D.I. 1-2 at 2–9.)

## III.    ARGUMENT

A preliminary injunction is appropriate where the moving party establishes: "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citing *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999)). The Air Canada Group easily satisfies this test.

---

[1] The mobile app has the same terms and prohibitions.

ME1 47094147v.1

### A.    The Air Canada Group Is Likely to Succeed on Its Breach-of-Contract Claim

In Delaware, a breach-of-contract occurs when (1) a contract exists, (2) a party breaches an obligation imposed by the contract, and (3) the plaintiff is damaged by the breach. *See VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). This has happened here.

### 1.    The Terms of Use Are a Contract Between Air Canada and Localhost

An online "browsewrap" contract exists when a website or mobile app's terms of use state that the use of the site or app constitutes assent to the terms, and the user had actual or constructive notice of the terms upon use. This is so under the law of Alberta, Canada, which Localhost contends governs the Terms of Use. (D.I. 8, 3–4; Declaration of Evan Nuttall, ¶¶ 75–83 ("Nuttall Decl.").) It is also the case in this Court and in other U.S. jurisdictions.[2] *Design With Friends, Inc. v. Target Corp.*, No. 1:21-cv-01376-SB, 2023 WL 3434013, at *3 (D. Del. May 12, 2023); *see CouponCabin, Inc. v. PriceTrace, LLC*, No. 18 C 7525, 2019 WL 1572448, at *4 (N.D. Ill. Apr. 11, 2019). Such a contract exists here.

*First*, the Terms of Use alert users that they "govern your use" of the website and app and that "[e]ach time you access or use" the website or app "you are entering into a contract with us and you agree to be bound by these Terms of Use." (D.I. 1-2 at 3.) The terms further provide that, "[i]f you do not agree to be bound by and comply with these Terms of Use, please do not access or use" the website or app." (*Id.*)

*Second*, Localhost cannot credibly contend that it was unaware of the Terms of Use. Localhost posts its own terms of use in the same spot on Seats.aero and has made it clear in

---

[2] Localhost argues that the Terms of Use require suit be brought in Calgary, Canada. (D.I. 8 at 5.) But the terms state that such jurisdiction against non-Québec residents is "non-exclusive" (versus Québec residents, where it is "exclusive") *and* also that "Air Canada may commence an action ***in any court*** of competent jurisdiction in order to enforce these Terms of Use." (D.I. 1-2 at 7–8 (emphasis added).)

online posts that it expects its visitors to comply. (Nuttall Decl. ¶¶ 104–05; Fagan Decl., Exs. 6 and 7.) And Localhost had actual notice of the terms via the Air Canada Group's demand letter. Localhost's counsel confirmed receipt of the letter and specifically discussed the terms. (Fagan Decl., Exs. 4 and 5.) Mr. Carroll also publicly discussed the demand letter, declaring in one online post that Localhost does "not intend to comply." (*Id.*, Ex. 3 at 7.)

In *Register.com, Inc. v. Verio, Inc.*, the Second Circuit affirmed a preliminary injunction on the breach of a browsewrap agreement by a data scraper who, like Localhost, was sent a demand letter with the terms. 356 F.3d 393, 402 (2d Cir. 2004); *see also Sw. Airlines Co. v. Kiwi.com, Inc.*, No. 3:21-cv-00098-E, 2021 WL 4476799, at *3 (N.D. Tex. Sept. 30, 2021) (granting preliminary injunction for breach of a browsewrap agreement where defendant "acknowledged receipt of [a] cease-and-desist notice" that "referenced the Terms and attached a copy of them" and "continued to use the . . . website . . . with actual knowledge of the Terms"); *Sw. Airlines Co. v. BoardFirst, L.L.C.*, No. 3:06-CV-0891-B, 2007 WL 4823761, at *7 (N.D. Tex. Sept. 12, 2007) (granting summary judgment and a permanent injunction for breach of a browsewrap agreement where the defendant "had actual knowledge" of a website's terms of use via a "cease-and-desist letter" and "continued to use" the website); *Design With Friends*, 2023 WL 3434013, at *3 (recognizing that a demand letter "would be strong evidence of inquiry or even actual notice—if it said anything about [the website's] terms of use").

### 2.     Localhost Has Breached Obligations Imposed by the Terms of Use

Localhost's data scraping breaches multiple provisions of the Terms of Use, e.g.:

| *Prohibited Action under Terms of Use* | *Localhost's Breach* |
|---|---|
| Taking data for "any commercial use or purpose." D.I. 1-2 at 4. | Takes data to power its for-profit website and mobile app Seats.aero. |
| Using "automated scripts, robots, crawls, | Uses automated software, such as bots, to |

14

| | |
|---|---|
| screen scrapers, web 'bots,' [etc.] . . . [to] 'data mine'; 'screen scrape'; data process; access, extract, copy, distribute, aggregate or acquire information." *Id.* | mine data and to extract and aggregate information from the Air Canada Group's database. |
| Creating "any derivative works from or otherwise copy, license, display, publish, perform, re[-]create, reproduce, sell, transfer, transmit or otherwise distribute, modify, edit, add to, mirror, frame, re-render, truncate, inject, filer or change of the order of any information, products, goods, services, and software contained or offered on, or obtainable by, through or from the Website." *Id.* at 4–5. | Uses the Air Canada Group's data to populate Seats.aero, thus creating a derivative work, copy, re[-]creation, reproduction, and mirror of the Air Canada Group's data. |
| Accessing or using "the Website in such manner . . . that burdens [the Air Canada Group's] infrastructure to an unreasonable and disproportionate extent, or reduces the speed of the Website, that otherwise interferes with the normal functioning of the Website or otherwise abuses or overuses the Website." *Id.* at 5. | Uses the website and mobile app in a manner that burdens the Air Canada Group's infrastructure by slowing it down and causing brownouts. |
| Circumventing, or attempting to circumvent, "any measures or precautions taken by Air Canada to prevent the use or access of the Website." *Id.* | Has repeatedly circumvented and attempted to circumvent multiple and ongoing measures and precautions taken by the Air Canada Group to prevent Localhost's use and/or access. |

### 3. The Air Canada Group Has Suffered Damages from Localhost's Breach of the Terms of Use

As shown, the Air Canada Group has suffered multiple types of harm as a result of Localhost's breach of the Terms of Use. *See supra* Section II.C.1–3. Localhost's scraping has caused slow response times and brownouts on the Air Canada Group's website and mobile app— naturally resulting in customer frustration and complaints, and impugning the Air Canada Group's goodwill, reputation, and brand. Localhost's intrusions have also disrupted the Air Canada Group's relationships with its important business partners from the high traffic

originating from Localhost (sent through the Air Canada Group's system). Further still, the Air Canada Group's resources have been diverted from enhancing the customer experience to stopping Localhost's scraping.

**B.     The Air Canada Group Will Continue to Suffer Irreparable Harm Unless Localhost Is Enjoined**

A preliminary injunction in a breach-of-contract case is appropriate where the moving party "will suffer immediate and irreparable harm if [the harmful conduct is] permitted to continue, and . . . money damages alone" are insufficient to compensate it. *Home Line Furniture Indus., Inc. v. Banner Retail Mktg., LLC*, 630 F. Supp. 2d 527, 540 (E.D. Pa. 2009) (granting a preliminary injunction where irreparable harm arose from breach of contract).

Here, the monetary damages are inadequate and the harm to the Air Canada Group is irreparable and incalculable. When Localhost's scraping causes the group's website and app to become inoperable, it frustrates consumers and devastates the Air Canada Group's reputation and goodwill. Localhost's scraping led to a "negative impact to brand, as some members were unable to complete redemption bookings." (Whitworth Decl., Ex. 8 at 2; *see also id.*, Exs. 3 and 5.) So too when Localhost's scraping sends large volumes of traffic to partner systems, which impairs the relationships the Air Canada Group has worked so hard to build, and which are critical to its rewards program. Even the Air Canada Group's ability to repair the damage is impacted, for its digital products group must keep diverting precious resources to temporarily stopping Localhost—until it devises the next workaround—instead of focusing on the customer experience and addressing customer requests.

Reputational damage like this is precisely the type of harm Delaware courts acknowledge is irreparable and not compensable merely via monetary damages. *Fam. Inada Co. v. FIUS Distribs. LLC*, No. 19-925-CFC, 2019 WL 5295178, at *6 (D. Del. Oct. 18, 2019) (granting a

preliminary injunction where the moving party demonstrated "a clear showing that, absent an injunction, it will suffer irreparable harm in the form of lost reputation and good will"); *see also Ubisoft, Inc. v. Kruk*, No. CV 20-478-DMG (ASx), 2021 WL 3472833, at *2 (C.D. Cal. July 9, 2021) (granting preliminary injunction against defendant who launched a distributed-denial-of-service ("DDoS") attack on plaintiff's computer system, which "slow[ed] down or disrupt[ed] the normal operation of targeted computer systems and servers by overburdening them with 'an abundance of illegitimate requests,'" and finding irreparable harm to plaintiff's goodwill and reputation from having to "employ[] new network and traffic management technologies that counteract the effects of the attacks, respond[] to [customer] complaints, [and] employ[] personnel . . . to detect the use of the DDoS services" (citation omitted)).

Leaning on this principle, multiple courts have granted preliminary injunctions to prevent the irreparable harms caused by data scrapers. In *Register.com*, the plaintiff maintained a public online database and, like here, imposed terms on the use of the data. 356 F.3d at 396. Breaching those terms, the defendant scraped the plaintiff's data and used it to send marketing solicitations. *Id.* at 396–97. As a result, the plaintiff received complaints "from its customers and co-brand partners." *Id.* at 397, 421. Granting a preliminary injunction, the district court "found it impossible to estimate 'with any precision the amount of the monetary loss which ha[d] resulted and which would result in the future from the loss of Register.com's relationships with customers and co-brand partners.'" *Id.* at 404 (citation omitted). The Second Circuit affirmed, noting the irreparable harm arising from "loss of reputation, good will, and business opportunities." *Id*.; *see also BoardFirst*, 2007 WL 4823761, at *9 (finding irreparable harm where data scraping caused "decreased traffic flow to southwest.com by Southwest customers," "deprive[d] Southwest of valuable selling and advertising opportunities," undermined the

17

potential for customers to see partner ads, deprived Southwest of the brand exposure effected by the check-in process, decreased the likelihood that customers would be repeat buyers, and undermined Southwest's "egalitarian service philosophy" behind its check-in process); *Kiwi.com*, 2021 WL 4476799, at *6 (finding irreparable injury where data scraping breached the plaintiff's website's terms of use and the scraping caused "interference with customer communications, disruptions to flight schedules, [and] increased costs for baggage handling and customer services" that culminated in "loss of control of reputation and loss of goodwill," which was not "compensable via money damages").

It is impossible to know how many customers abandoned Aeroplan after being unable to complete a booking, how many prospective business partners refrained from approaching Air Canada fearing digital infrastructure problems, and how much Aeroplan could have otherwise been improved but for Localhost's scraping. And this harmful conduct will go on unabated absent an injunction. Carroll declared that Localhost "do[es] not intend to comply" and intends to continue his scraping "for the foreseeable future." (Fagan Decl., Ex. 3 at 7.)

### C.   The Balance of Hardships Favors Enjoining Localhost's Infringement

The balance of hardships favors the Air Canada Group because greater injury would result from denying the preliminary injunction than from granting it. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish . . . that the balance of equities tips in his favor . . . .").

If Localhost is not enjoined, the irreparable harms its data scraping causes will continue, disrupting the Air Canada Group's business and tarnishing the reputation and goodwill it has long labored to build. *See Kiwi.com*, 2021 WL 4476799, at *7 (finding the balance of harms favored plaintiff when a data scraper's scraping caused "significant disruption to its customer operations"); *BoardFirst*, 2007 WL 4823761, at *18 (finding that the data scraper's "interest in

18

using the [scraped] website in breach of the Terms cannot outweigh [plaintiff's] legitimate interest in maximizing selling opportunities from its own website and in protecting its brand image").

By contrast, Localhost can "hardly claim to be harmed, since it brought any and all difficulties occasioned by the issuance of an injunction upon itself." *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990); *see also Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 596 (3d Cir. 2002) ("[T]he injury a defendant might suffer if an injunction were imposed may be discounted by the fact that the defendant brought that injury upon itself."). Indeed, any alleged harm to Localhost from breaching the Air Canada Group's Terms of Use should be disregarded. *See Jiffy Lube Int'l, Inc. v. Weiss Bros.*, 834 F. Supp. 683, 693 (D.N.J. 1993) ("[T]he often painful harm which follows a defendant who willfully breaches a contractual undertaking is not a basis for denying a plaintiff the relief to which it is legally entitled.").

Nevertheless, any harm to Localhost from an injunction to stop scraping and republishing Air Canada's data would be incidental, not existential. Reflecting the precarious nature of its business, Localhost anticipates being unable to scrape and republish an airline's data any given time. Seats.aero has a "System Status" page that indicates whether its scraping of a particular airline is "Healthy" or if there is an "Outage" (e.g., an airline has successfully blocked the scraping). Outages are built into the business model, not an unforeseeable harm. (Fagan Decl., Ex. 7 at 3.)

### D.     Public Interest Is Best Served by a Preliminary Injunction

The public interest will be served by the issuance of a preliminary injunction against Seats.aero because it will protect consumers and uphold contractual obligations. *Kiwi.com*, 2021 WL 4476799, at *7 ("The Court concludes [that] the public interest will be served if the

preliminary injunction is granted for the reasons put forward by Southwest and because there is an expectation that parties to contracts will honor their contractual obligations."); *BoardFirst*, 2007 WL 4823761, at *18 ("[T]he public has an interest in seeing contractual arrangements enforced."); *LVL Co. v. Atiyeh*, 469 F. Supp. 3d 390, 425 (E.D. Pa. 2020) ("The public interest would be served by protecting the contractual interests of the parties in this case.").

Granting an injunction also bears no risk of public harm because consumers can still view the Air Canada Group's flight and reward data legitimately through its website and mobile app. And it is of no moment that Seats.aero's users may be disappointed as the result of its breaching activities. *BoardFirst*, 2007 WL 4823761, at *18 ("[A]ny such disappointment [of defendant's customers] does not in any way mean that the public at large is disserved by an injunction.").

## IV.   CONCLUSION

For these reasons, the Air Canada Group is entitled to a preliminary injunction.


Dated: December 21, 2023                    MCCARTER & ENGLISH, LLP

*Of counsel:*                               */s/ Alexandra M. Joyce*
                                            Daniel M. Silver (#4758)
Douglas A. Rettew                           Alexandra M. Joyce (#6423)
Jonathan J. Fagan                           405 N. King St., 8th Floor
FINNEGAN, HENDERSON, FARABOW,               Wilmington, DE 19801
 GARRETT & DUNNER, LLP                      (302) 984-6300
901 New York Avenue NW                      dsilver@mccarter.com
Washington, DC 20001-4413                   ajoyce@mccarter.com
(202) 408-4000 (phone)
(202) 408-4400 (fax)                        *Attorneys for Plaintiffs*
Doug.Rettew@finnegan.com                    *Air Canada and Aeroplan Inc.*
Jonathan.Fagan@finnegan.com

ME1 47094147v.1