# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AIR CANADA AND AEROPLAN INC., | **REDACTED PUBLIC VERSION FILED FEBRUARY 15, 2024** |
| Plaintiffs, | C.A. No. 23-1177-GBW |
| v. | |
| LOCALHOST LLC, | |
| Defendant. | |

**PLAINTIFFS' REPLY BRIEF
IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION**

## **TABLE OF CONTENTS**

A.   The Air Canada Group is likely to succeed on its contract claim. .......................... 1

    1.   Localhost admits notice of the Terms and that it accessed the Air Canada Group's website after actual notice. ................................................ 1

    2.   Localhost's does not dispute the Terms prohibit scraping the Air Canada Group's website or that it scrapes data. ......................................... 3

    3.   Unrebutted evidence shows that Localhost's breach causes harm. ............ 4

B.   Absent an injunction, the Air Canada Group will suffer irreparable harm. ............. 7

C.   The Balance of Hardships Continues To Favor Enjoining Localhost .................. 10

D.   The Public Interest Is Best Served by a Preliminary Injunction. .......................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Gaudreau v. My Pillow, Inc.*,
  No. 6:21-CV-1899-CEM-DAB, 2022 WL 3098950 (M.D. Fla. July 1, 2022) ........................2

*Pennsylvania Emp., Benefit Tr. Fund v. Zeneca, Inc.*,
  710 F. Supp. 2d 458 (D. Del. 2010) ....................................................................................2

*Southwest Airlines Co. v. Kiwi.com, Inc.*,
  No. 3:21-CV-00098-E, 2021 WL 4476799 (N.D. Tex. Sept. 30, 2021) ...............................2

*Southwest Airlines Co. v. BoardFirst, L.L.C.*,
  No. 3:06-CV-0891-B, 2007 WL 4823761 (N.D. Tex. Sept. 12, 2007) .................................2

*QVC, Inc. v. Resultly, LLC*,
  99 F. Supp. 3d 525 (E.D. Penn. 2015) .................................................................................7

*Hologic,* Inc. *v. Minerva Surgical, Inc.*,
  No. 15-1031-SLR, 2016 WL 3143824 (D. Del. 2016) ........................................................9

*Hybridtech, Inc. v. Abbott Labs.*,
  849 F.2d 1446 (Fed. Cir. 1988) ............................................................................................9

*BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*,
  229 F.3d 254 (3d Cir. 2000) .................................................................................................9

*Smart Commc'ns Holding, Inc. v. Global Tel-Link Corp.*,
  No. 1:21-CV-01708, 2022 WL 1049319 (M.D. Pa. Apr. 7, 2022) .......................................9

*King v. Innovation Books*,
  976 F.2d 824 (2d Cir. 1992) .................................................................................................9

*Inst. for Motivational Living, Inc. v. Sylvan Learning Ctr., Inc.*,
  No. 06-0828, 2008 WL 379654 (W.D. Pa. 2008) ..............................................................10

*hiQ Labs, Inc. v. LinkedIn Corp.*,
  31 F.4th 1180 (9th Cir. 2022) .............................................................................................10

Localhost's answering brief raises scattershot points to try to distract from the core issues. Ultimately, however, Localhost either admits or fails to rebut the Air Canada's evidence and analysis demonstrating breach of the Terms of Use (the "Terms") and irreparable harm. Localhost admits it had actual notice of the Terms and that it used the Air Canada Group's website—establishing a contract. And Localhost admits it scrapes the Air Canada Group's data from the API (a part of the website)—establishing breach of that contract. On irreparable harm, Localhost's scraping (which comprises ▮▮▮▮▮ to the Air Canada Group's API) poses a constant threat of reputation-damaging brownouts and slowdowns that drain valuable resources to stop. And the damage continues. Just this week, in response to concerns and problems resulting to other Star Alliance partner airlines due to the heavy traffic from Localhost's data scraping, Star Alliance indicated it is implementing a solution that will limit the number of requests the Air Canada Group may send to Star Alliance's system. Once the limit is hit, customers will be denied access to partner flight data on the Air Canada Group's website and app. And their frustration and ire will naturally point to the Air Canada Group, striking a devastating blow to its reputation.

### A.   The Air Canada Group is likely to succeed on its contract claim.

#### 1.   Localhost admits notice of the Terms and that it accessed the Air Canada Group's website after actual notice.

Localhost admits that it had actual notice of the Terms. (D.I. 27 at 21.) And it concedes that it uses the Air Canada Group's website for its data scraping. According to its purported expert, "Seats.aero *accesses www.aircanada.com* as a generic internet user . . ." and "*contacts the website* to begin the process of accessing the API[.]" (D.I. 30 at ¶¶ 27, 32 (emphasis added).)

Faced with these facts, Localhost says a contract was not formed, claiming a browsewrap contract lacks "the bedrock contract principal [sic] of assent." (D.I. 27 at 21.) This ignores the clear law that in a browsewrap contract, *use* of a website with *notice* of the site's terms constitutes

1

*assent*. (D.I. 16 at 18.) Indeed, the sole case Localhost cites on this point recognizes that "browsewrap agreements do not require the user explicitly to *assent* to the terms" but "a party instead purportedly gives consent simply by *using* the website" with "actual notice" or "inquiry notice" of the terms. *Gaudreau v. My Pillow, Inc.*, No. 6:21-CV-1899-CEM-DAB, 2022 WL 3098950, at *4 (M.D. Fla. July 1, 2022) (cleaned up) (emphasis added).

Localhost also contends this dispute is "complicated" by the choice-of-law analysis, where Delaware courts first determine "whether the laws actually conflict on a relevant point." *Pennsylvania Emp., Benefit Tr. Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 466 (D. Del. 2010) (collecting cases). But the laws of Delaware and Alberta, Canada, *agree* on contract formation. Far from being "conclusory," as Localhost contends, the unrebutted evidence on this point from Canadian lawyer Mr. Nuttall comprehensively explains how and why "an Alberta court would find that a contract was formed when the Defendant accessed or used the Air Canada Website with actual or constructive knowledge of the Air Canada Terms of Use." (D.I. 19 at 42.)

Localhost further queries "how the same act can both serve as an agreement to be bound by a contract and simultaneously be a breach of that contract." (D.I. 27 at 22.) The data scraper in *Southwest Airlines Co. v. Kiwi.com, Inc.* similarly contended that "conduct that inherently constitutes a breach cannot show assent to a contract's terms." No. 3:21-CV-00098-E, 2021 WL 4476799, at *3 (N.D. Tex. Sept. 30, 2021). But the court disagreed, finding that when the data-scraper used the website "with actual knowledge of the Terms" it "bound itself to the contractual obligations imposed by the Terms." *Id.* (quoting *Southwest Airlines Co. v. BoardFirst, L.L.C.*, No. 3:06-CV-0891-B, 2007 WL 4823761, at *7 (N.D. Tex. Sept. 12, 2007)).

### 2. Localhost's does not dispute the Terms prohibit scraping the Air Canada Group's website or that it scrapes data.

Localhost does not dispute that the Terms prohibit scraping the Air Canada Group's "Website."[1] And it admits to scraping the site's API. (D.I. 27 at 9.) Faced with that, Localhost contends that scraping the website API is not technically scraping the "Website." Localhost is wrong. A website consists of a user-facing portion (the user interface application) *and* back-end portions (the API and database). (D.I. 18 at ¶¶ 23-25.) Scraping the user-facing portion is "screen scraping"; scraping the API is "API scraping." (*Id.* at ¶¶ 23-25.) The Terms prohibit both.

Localhost's attempt to cabin the definition of a "Website" to only its user-facing portion is belied by the Terms themselves. They provide that a "Website" is something from which data can be mined, extracted, or acquired. (D.I. 1-2 at 4.) And in order for the user-facing portion of a website to have data, the data must be retrieved and delivered by the back-end portions (API and the database). (Supp. Decl. of Paul Clark, ¶¶ 4-7 (Clark Decl.).) Fundamentally, the Air Canada Group's website is the sum of its user interface, API, and database. (*Id.*, ¶¶ 8-9; D.I. 16 at 8.)

Localhost argues that the Air Canada Group's API does not satisfy the Term's definition of "Website" as "websites that are owned and operated by us" because the Air Canada Group hires Amadeus to monitor the API. (D.I. 27 at 10 and 22.) But while Amadeus provides monitoring services, the Air Canada Group owns, operates, and controls its API, which resides at an Air Canada Group-owned location on Amazon Web Services' servers. (Supp. Decl. of Derek Whitworth, ¶¶ 2-3 ("Whitworth Decl."); Clark Decl., ¶ 10).

---

[1] As previously noted, the mobile app has the same terms and prohibitions. Additionally, Localhost's own terms of use on Seats.aero similarly condition "access to and use of" Seats.aero on the user's "acceptance of and compliance with" the Seats.aero's terms (not, as Localhost says, on "clicking a button"). (D.I. 20 at 32; *see* D.I. 27 at 7.)

3

Irrespective, Localhost's definitional nitpicking cannot save it. That's because, at bottom, the Terms prohibit *all* web scraping—both screen scraping and API scraping—forbidding any activity that "directly or *indirectly*" accesses the Website to further prohibited action.[2] And Localhost does both. It directly accesses the Website "to obtain some initial information" so that it can scrape, which Localhost characterizes as "bypass[ing] the website" in order to "access the API." (D.I. 1-2 at 4 (emphasis added); D.I. 27 at 9.)[3] However characterized, this is a breach.

### 3.     Unrebutted evidence shows that Localhost's breach causes harm.

Localhost contends that the Air Canada Group "has failed to tie any specific problem to an action taken by [Localhost]." (D.I. 27 at 11.) In so doing, Localhost ignores the timeline (with supporting testimony and evidence from Whitworth and the expert Clark) correlating—event by event—Localhost's admitted scraping with brownouts and slowdown events, including on April 20, May 4, May 9, May 15, and May 23. (D.I. 18 at ¶¶ 44, 46, 50, and 51.)

Hoping to divert attention from these events, Localhost's purported expert performed "tests" and concluded that "it is improbable that any issues that have occurred with the [Air Canada] Website and/or partner websites are attributable to LH[.]" (D.I. 17 at 15.) But these artificial exercises are no surrogate for the real-life events chronicled, experienced, and presented by the Air Canada Group. Based on its "tests," Localhost claims that its requests to the Air Canada Group's API are only "2.11% the size and 1.11% the duration compared to a standard user

---

[2] Further demonstrating the Terms forbid both screen and API scraping, they prohibit both "screen scrapers" used for "screen scraping" and the "bots" Localhost admits to using for API scraping. (D.I. 1-2 at 4-5; D.I. 27 at 9.)

[3] The Terms also capture when Localhost "bypasses" or "avoids" portions of the website by prohibiting "*any action*, that burdens our infrastructure to an unreasonable and disproportionate extent," including "circumvent[ing], or attempt[ing] to circumvent, any measures or precautions taken by Air Canada to prevent the use or access of the Website, or any other action in violation of these Terms of Use." (D.I. 1-2 at 4-5 (emphasis added).) Localhost has publicly chronicled its circumvention campaign and the measures the Air Canada Group has taken to try to stop Localhost's misuse of the Website. (D.I. 16 at 11-12.)

request." (D.I. 27 at 15.) Localhost's purported expert compares the "User Browser Session Size" and "User Browser Session Duration" with the "Seats.Aero Session Size" and "Seats.Aero Session Duration." (D.I. 30 at 8.) But the size and duration of a "session" are irrelevant metrics, rendering Localhost's "tests" meaningless. (Clark Decl., ¶ 12-14.) The vast majority of a browser session consists of the time and processing power needed to load the text and images on a webpage. (*Id.*, ¶ 13.) But because the Air Canada Group's website's text and images are stored in an entirely separate database from its flight availability data, the time and processing power dedicated to loading them is of no moment. (*Id.*, ¶ 13-14.) The only thing Localhost's "tests" show is that Seats.aero sends a request to the Air Canada Group's flight data API in less time than it takes the Air Canada Group's website to load text and images. As noted below, Localhost's scraping comprises ▆▆▆▆ traffic to the Air Canada Group's website API.

Localhost also tries to distract from the harms it caused by blaming unnamed entities. It points to an online interview where an Air Canada Group executive described harmful "third party searchers" and did "not mention [Localhost] or Seats.aero by name." (D.I. 27 at 16.) But Localhost fails to tell the Court that its principal Ian Carroll expressly and publicly acknowledged the executive was referring to Seats.aero, posting online: "I'm disappointed to listen to the remarks from Mark today around third-party tools. We (Seats.aero) have tried to reach out and work with Aeroplan several times and have been completely stonewalled by their team."[4] (Supplemental Declaration of Jonathan Fagan, Exs. 9 and 10 ("Fagan Decl.").)

Similarly, Localhost contends that it scrapes data "from [Air Canada] partner airlines like United and SAS" and that "[w]ith the exception of [Air Canada], none of these airlines have

---

[4] The Air Canada Group does not have a record of these alleged reach outs.

5

complained about LH's data gathering." (D.I. 27 at 7.) But Localhost knows full well that United was displeased with its scraping and has tried to stop it:

- On June 22, 2023, Carroll wrote in the online forum Discord, "United is preventing us from retrieving availability again so will likely be down for a bit until we get around it. Sorry for the inconvenience." (Fagan Decl., Ex. 11.)

- On June 23, 2023, Carroll reported, "United should be back now. It seems like they are actively working on blocking automated searches, which we heavily rely on. It is even blocking just normal users from doing searches on the site because the blocks are so aggressive. It is unfortunate that they are taking this path but we will keep working on it and make sure you can keep searching United awards." (*Id.*)

Localhost also dismisses the Air Canada Group's evidence of harm to its digital products group as "suspicious" because the Air Canada Group is a "mega-airline" while Localhost is a "small business" "operated by a husband and wife team out of their home." (D.I. 27 at 18, 23.) The modest portrait Localhost paints is as disingenuous as it is irrelevant. Computer forensics show that Localhost operates using a global network of computers to flood the Air Canada Group's API with requests from computers in places such as Iran, Russia, and Turkey. (Clark Decl., ¶¶ 15-22.) They come from hundreds of thousands of virtual computers from around the globe, indicating arrangements with third-party bot networks. (*Id.*, ¶¶ 19.) And it's no surprise that Localhost goes to such lengths to circumvent the Air Canada Group's security, as subscriber fees to Seats.aero generated approximately $118,000 in revenue *per month* last year and are expected to generate $1.5 million dollars in revenue this year. (Fagan Decl., Ex. 12.)[5]

---

[5] Localhost cites *QVC, Inc. v. Resultly, LLC*, 99 F. Supp. 3d 525 (E.D. Penn. 2015) for the proposition that irreparable harm does not exist "where the website owner could take action to prevent any ill effects of web-crawling software." (D.I. 27 at 18.) *QVC* is wholly distinguishable. Instead of obfuscating the source of its requests, hiding behind hundreds of thousands of IP addresses, and ignoring the instructions to bots in the robots.txt page like Localhost, the data scraper in *QVC* identified itself *by name* in its requests, used a limited number of registered, identifiable IP addresses, and promised to abide by any instructions the plaintiff put in its robots.txt page. *QVC*, 99 F. Supp. at 530-31; *see* Clark Decl., ¶ 19, Ex. 2 (illustrating that the

### B. Absent an injunction, the Air Canada Group will suffer irreparable harm.

In arguing no harm, Localhost ignores the case law establishing that data scraping causes precisely the sorts of reputational and other irreparable harms that preliminary injunctions seek to stop. (*See* D.I. 16 at 20-22.)[6] Localhost also contends that any harm is in the past and that the Air Canada Group cannot show prospective injury. The events of this week prove otherwise.

As previously explained, when people (and Localhost) search for a flight path on the Air Canada Group's website, it sends a "shopping request" to the site's API. (D.I. 16 at 8.) If the flight path includes options where a partner airline operates one or more legs of the flight, the API sends an "availability request" to the partner. (*Id.* at 10.) For Star Alliance member airlines, availability requests go through the virtual hub STARNET. (D.I. 17, ¶¶ 15-16.) A single *shopping* request can generate as many as 100-300 *availability* requests. (D.I. 16 at 10.)

On February 5, 2024, the Star Alliance contacted the Air Canada Group regarding the high volume of availability requests STARNET receives from Air Canada and complained about the burden these requests place on Star Alliance members. (Whitworth Decl., ¶ 5.) To protect its member airlines' systems, the Star Alliance announced it will "throttle" or limit the number of requests per second from the Air Canada Group. (*Id.*, ¶ 6.) As a result, any excess requests above a set limit will be rejected. When that happens, it will appear to consumers that the queried flight path does not exist. (*Id.*, ¶ 6.)

---

hundreds of thousands of IP addresses Localhost used in a 24-hour period do not identify Seats.aero but, instead, come from a host of generic internet service providers).

[6] Localhost contends the Air Canada Group seeks a mandatory injunction, not one to maintain the status quo. (D.I. 27 at 12.) But because the requested injunction would enforce a preexisting legal obligation by preventing Localhost from continuing to breach the Terms, it is *prohibitory*, not mandatory. *J.K. Hill & Assocs., Inc. v. PKL Servs., Inc.*, 15 F. Supp. 3d 494, 499 n.7 (D. Del. 2014) (holding plaintiff's injunction "maintains the status quo by prohibiting [defendant] from breaching the contract"). Regardless, the Air Canada Group has met its burden under either standard.

The Star Alliance would not have implemented this throttling if it were not for the heavy traffic Localhost sends through the Air Canada Group's API. And it is of no moment that Localhost purportedly sends only "five searches per second" to the Air Canada Group's API (D.I. 27 at 14-15) because those are *shopping requests*, and each *shopping request* can generate as many as 100-300 availability requests. Additionally, Localhost's "five searches per second" account for over ▮▮▮▮▮ shopping requests to the Air Canada Group's API. (Clark Decl., ¶ 25; Whitworth Decl., ¶ 7-8 and Ex. 3.) If Localhost is enjoined, STARNET will receive fewer than ▮▮▮▮▮ current requests from the Air Canada Group and the throttling solution will not be an issue. But without an injunction, the Air Canada Group and its customers will surely be cut off.

Localhost flippantly contends "there is nothing stopping [Air Canada] from diverting more resources to the development of its award system's user functionality and infrastructure." (D.I. 27 at 23.) But that's not the issue. It takes only one hacker to wreak havoc. And the Air Canada Group should not have to spend precious resources trying to outfox a company that is improperly accessing its systems in direct breach of its Terms. If the Air Canada Group were to divert its attention away from fighting Localhost's nonstop cyber-onslaught, Localhost will again overwhelm the Air Canada Group's infrastructure and cause further brownouts and slowdowns, as it did on April 20, May 4, May 9, May 15, and May 23. Making matters worse, with the throttling announced this week, the Air Canada Group and its customers will be cut out.

Localhost suggests that it is "improbable" that past harms were due to its data scraping and that the scraping "does not present a significant risk of any future disruption." (D.I. 27 at 15.) But its cries of improbability are belied by the facts. As noted, for each Localhost action, there was a corresponding consequence, namely brownouts and slowdowns on April 20, May 4, May 9, May 15, and May 23. (D.I. 16 at 11-12; D.I. 17 at ¶¶ 26-57; D.I. 18 at ¶¶ 28-56.) Localhost has provided

8

*no alternative explanation* for these events and there's no reason to think they will not continue the next time Localhost circumvents the Air Canada Group's defensive measures.

Finally, Localhost complains that the Air Canada Group delayed by "wait[ing] six months to start a lawsuit" and "another two months to file its Motion for Preliminary Injunction." (D.I. 27 at 5.)) But delay is not dispositive, and a plaintiff's good faith investigation of a defendant's harmful acts should not count against it. *See Hologic, Inc. v. Minerva Surgical, Inc.*, No. 15-1031-SLR, 2016 WL 3143824, at *10 (D. Del. 2016) ("A period of delay is but one circumstance that the district court must consider in the context of the totality of the circumstances.") (citation omitted); *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 264 (3d Cir. 2000) ("a delay caused by plaintiff's good faith efforts to investigate an infringement or to determine how serious an infringement is does not preclude a finding of irreparable harm"); *see Smart Commc'ns*, No. 1:21-CV-01708, 2022 WL 1049319, at *7 (M.D. Pa. Apr. 7, 2022) (eight-month delay did not preclude preliminary injunctive relief where plaintiff used that period to investigate defendant's acts and to inform defendant of his objections) (citation omitted).[7]

Any alleged "delay" here was due to Air Canada Group's good-faith efforts to investigate the data scraping and determine who was causing the brownouts and slowdowns. That was no small task, as Localhost makes its data-scraping requests to the Air Canada Group's API appear as though they are coming from hundreds of thousands of unique IP addresses from around the globe. After fighting blind for months, the Air Canada Group eventually identified Localhost as the culprit. (D.I. 17 at ¶¶ 26-57.) Once that was done, the Air Canada Group asked Mr. Carroll to

---

[7] *See also Inst. for Motivational Living, Inc. v. Sylvan Learning Ctr., Inc.*, No. 06-0828, 2008 WL 379654, at *4 (W.D. Pa. 2008) (finding that "delay" due to "good faith effort[s] to investigate the merits of [an] action and to determine how serious the infringement was" "was excusable and fails to negate the presumption of irreparable harm").

stop. (D.I. 1-2 at 2.) He did not, so the Air Canada Group filed a complaint on October 19, 2023. When Localhost persisted, the Air Canada Group moved for a preliminary injunction.

### C. The Balance of Hardships Continues To Favor Enjoining Localhost

Localhost's cites *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180 (9th Cir. 2022)[8] for the proposition that enjoining a data scraper (hiQ) is a hardship. (D.I. 27 at 24.) But *hiQ* is inapposite because its "entire business" relied on scraping a *single* data source: "public LinkedIn member profiles[.]" *hiQ*, 31 F.4th at 1189. And it showed that the mere uncertainty of such access stalled financing and "and several employees left the company." *Id.* It thus faced the existential threat of "go[ing] out of business." *Id.* Localhost, by contrast, scrapes data "from 14 online airline databases" and does not rely just on the Air Canada Group. (D.I. 27 at 7.) Indeed, Localhost has previously stopped scraping data for at least one airline, with no dire ramifications. (Fagan Decl., Ex. 13 (illustrating Localhost's removal of Avianca LifeMiles); D.I. 16 at 23.)

### D. The Public Interest Is Best Served by a Preliminary Injunction.

Localhost contends its republication of data available on the Air Canada Group's website is in the public's interest. But the data republished in violation of the Terms is available on the Air Canada Group's website, so the public loses nothing if Localhost is prevented from scraping and republishing this data. And given the recent development that Star Alliance is implementing throttling, if Localhost is not enjoined then the public will lose all access to reliable data on either the Air Canada Group's website *or* Seats.aero. But with an injunction, throttling will not be an issue, and the public will have reliable access to data on the Air Canada Group's website.

For these reasons, the Air Canada Group is entitled to a preliminary injunction.

---

[8] Localhost also cited this case for the proposition that "the Ninth Circuit recently found that data scraping is legal under the CFAA[.]" (D.I. 27 at 8.) But the CFAA is not at issue in this motion. And the data scraper in *hiQ* ultimately lost because its conduct breached LinkedIn's terms of use.

| | |
|---|---|
| Dated: February 8, 2024 | MCCARTER & ENGLISH, LLP |
| *Of counsel:* | */s/ Alexandra M. Joyce* |
| | Daniel M. Silver (#4758) |
| Douglas A. Rettew | Alexandra M. Joyce (#6423) |
| Jonathan J. Fagan | 405 N. King St., 8th Floor |
| FINNEGAN, HENDERSON, FARABOW, | Wilmington, DE 19801 |
| GARRETT & DUNNER, LLP | (302) 984-6300 |
| 901 New York Avenue NW | dsilver@mccarter.com |
| Washington, DC 20001-4413 | ajoyce@mccarter.com |
| (202) 408-4000 (phone) | |
| (202) 408-4400 (fax) | *Attorneys for Plaintiffs* |
| Doug.Rettew@finnegan.com | *Air Canada and Aeroplan Inc.* |
| Jonathan.Fagan@finnegan.com | |

11

## **CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that true and correct copies of the foregoing document were caused to be served on February 8, 2024 on the following counsel in the manner indicated below.

### **VIA EMAIL:**

Charles J. Brown, III
Gellert Scali Busenkell & Brown, LLC
1201 N. King Street, Suite 300
Wilmington, DE 19801
cbrown@gsbblaw.com

Steven Susser
Michael S. Schwartz
Carlson, Gaskey & Olds, P.C.
400 West Maple Road, Suite 350
Birmingham, MI 48009
ssusser@cgolaw.com
mschwartz@cgolaw.com

*Attorneys for Defendants*

Dated: February 8, 2024                             */s/ Alexandra M. Joyce*
                                                                Alexandra M. Joyce (#6423)

ME1 47595229v.1