**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AIR CANADA AND AEROPLAN INC., | **REDACTED PUBLIC VERSION** |
| Plaintiffs, | **FILED FEBRUARY 15, 2024** |
| v. | C.A. No. 23-1177-GBW |
| LOCALHOST LLC, | |
| Defendant. | |



**SUPPLEMENTAL DECLARATION OF PAUL CLARK**
**IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR PRELIMINARY INJUNCTION**

## I.   INTRODUCTION

1.      I have been retained by Air Canada and Aeroplan Inc. (together, "the Air Canada Group") as an independent expert in this case. I incorporate by reference by background and qualifications submitted my previous declaration for this case on December 21, 2023.

2.      In this declaration, I offer my opinions regarding certain statements pertaining to data scraping in Mr. Eric Eder's declaration submitted on January 18, 2024.

## II.   THE AIR CANADA GROUP'S WEBSITE

3.      Mr. Eder suggests that the term "website" does not include the website's application programming interface ("API"). For example, he says, "[w]hile Localhost contacts the website to begin the process of accessing the API, Localhost only gathers flight data via its interaction with the Amadeus API gateway." (D.I. 30, ¶ 32.) Mr. Eder draws an invalid distinction between what he calls "the website" and what he calls "the Amadeus API gateway," which is inconsistent with how the term "website" is used and understood in the network and

security fields. It is also inconsistent with the role Amadeus plays in the functioning of the Air Canada Group's web application(s).

4.      As I explained in my December 21, 2023 declaration, a website consists of three basic parts: (1) a *user interface application* (the part of the website and app that a user interacts with, including images, text, buttons, and other user-interface elements); (2) a *database* (where the relevant data is stored); and (3) an *application programing interface* ("API"), which serves as a digital gatekeeper between the user interface application, middleware, and the database.

5.      The *user interface application* is sometimes called the "front end" because it is the part of the website or app that the user sees and interacts with.

6.      The *API* and the *database* are sometimes collectively referred to as the "back end" because they are the parts of the website that the user does not see but are essential to the functioning of the web-based system that the user does see.

7.      As a term of art, "website" refers to all the components that make the site work. In modern network architecture, and certainly in the case of the Air Canada Group's website and app, this includes the three elements outlined above—user interface application, database, and API.

8.      If any of these pieces are missing, the Air Canada Group's website or app would be nonfunctional for users. Put another way, without the API, there's no Air Canada Group website as it is currently implemented.

9.      Therefore, it is *wrong* to say that accessing the Air Canada Group's website (or mobile app) API is not accessing the Air Canada Group's website, because the API and back-end are necessarily *part of* the website.

10.     Mr. Eder's statement that "Amadeus operates an API which links the Air Canada website with systems containing flight information" is similarly inaccurate. The Amadeus gateway monitors the Air Canada Group's website API, which the Air Canada Group operates on an Air Canada Group-owned endpoint running Amazon Web Services ("AWS") middleware.

11.     Air Canada's AWS instance exposes an API for use by the web user interface. AWS then responds to user queries and submissions through its interaction with the database. As described above, each of these components is required for the Air Canada website to function properly.

## III.     SESSION SIZE AND DURATION

12.     In his declaration, Mr. Eder details the results of testing he performed, concluding that "Seats.aero observed requests required only 2.11% of the session size and 1.11% of the session duration compared to an internet user request." This is irrelevant to whether Localhost's data scraping will continue to cause brownouts, slowdowns, or the other harms detailed in my earlier declaration.

13.     Specifically, "session size" and "session duration" are almost entirely irrelevant metrics to consider in this analysis. A "session" refers to the entire time a browser spends processing a user's request and returning results. The vast majority of a session consists of loading text and images on individual user's browser. These text and images come from a database that is entirely separate from the Air Canada Group's database that contains flight data. The relevant concern is that each session and each request require a processing thread to service.

14.     Thus, the relevant metric is the number of requests made in short periods of time, as they require separate processing threads through the back-end systems, which must be processed in real time. Legitimate user traffic generates much lower system loads because they are performed at human speeds, rather than computer speeds. Because Mr. Eder's analysis did

3

not parse the portion of the session relevant to requests to the API that retrieves data from the flight data database, his percentages have no relevance whatsoever to the question of whether Localhost's data scraping has harmed or will harm the Air Canada Group's legitimate users and business partners.

## IV.   LOCALHOST'S BOT NETWORK

15.    I understand that Mr. Carroll has indicated that just he and his wife operate Localhost out of their home. (D.I. 29, ¶ 3.) From what I have observed and in light of my 30+ years in cybersecurity this is an incomplete picture of Localhost's actual operation.

16.    Every request to the Air Canada Group's API contains forensic data akin to a fingerprint. Part of that fingerprint is something called an "IP address." An IP address is an identifier for the source of the request.

17.    Based on various forensics, it appears that Localhost uses server "farms" with a myriad of IP addresses to scrape the Air Canada Group's data. If Localhost did not use a large number of IP addresses, it would be easy to simply block all requests coming from a single, identifiable, IP address group.

18.    If the entire data-scraping operation was operated exclusively and just by two individuals out of a home, it would utilize a small number of source IP addresses registered to an identifiable source.

19.    By contrast, the requests coming from Localhost utilizes thousands of unidentifiable IP addresses. For example, Exhibit 1 illustrates that in the course of a single 24-hour period, Localhost sent ▮▮▮▮▮ requests ("events") using thousands of unique IP addresses. And these IP addresses demonstrate that the requests are not coming from Ann Arbor, Michigan, as Mr. Carroll suggests, but instead originate from countries around the globe, including Russia, Cambodia, Pakistan, Turkey, and Iran. And the chart attached as Exhibit 2 demonstrates that

4

these IP addresses are not directly traceable to Seats.aero, as one would expect in a small operation operated by two individuals in a home, but instead are traceable only to generic internet service providers, obscuring the requests' origin.

20.    This indicates a couple of possibilities. First, and most likely, Localhost has an arrangement with one or more third-party bot network(s) that allows Localhost to send requests from a global network of bots. That would allow Localhost to conceal the source of its requests, making stopping Localhost more difficult. It is also possible Localhost has contracted with a third-party "bot solver," which is an organization that provides bespoke solutions to allow a data scraper to circumvent an organization's security countermeasures.

21.    Regardless, it appears from the data that Localhost has an arrangement with some type of third-party bot network or bot solver (or both) and that it is not simply just two individuals operating out of a home with no other assistance.

## V.    RISK OF FUTURE HARM TO THE AIR CANADA GROUP

22.    Mr. Eder speculates that he "would not expect Seats.aero's requests to present a serious burden or risk suddenly overloading such servers." (D.I. 30, ¶ 47.)

23.    The facts do not support Mr. Eder on this. First, as I already demonstrated in my prior declaration, Localhost's requests *did* in fact overload the Air Canada Group's digital infrastructure and Mr. Eder provided no alternative explanation for those events.

24.    Second, Localhost's data scraping still accounts for ███████ of the burden on the Air Canada Group's API. Mr. Eder says that "Seats.aero's rate of searching is conservative[.]" (D.I. 30, ¶ 49.) But the fact is that requests from Localhost, when considered with *all* of the human traffic to the Air Canada Group's API, account for ██████████ requests to the API. Localhost's traffic can be evaluated against all other traffic because requests from Localhost generally contain certain identifiable characteristics ████████████████████ that help to

5

distinguish Localhost's requests from other traffic. The following graphic illustrates traffic from Localhost (Seats.aero) against all other traffic:



25.     Systems engineers design websites to handle a volume of load based on expected traffic. When a *single* user comes in and begins sending more requests than all other human traffic combined, it presents an imminent risk of slowdown or brownout, as demonstrated by the April 20, May 4, May 15, or May 23 events.

26.     Therefore, Localhost's data scraping leads to and should be expected to cause more brownouts and slowdowns on the Air Canada Group's website, impact its business partners, as well as the other harms outlined in my earlier declaration.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 8, 2024.

6

Paul C. Clark, DSc.

# EXHIBIT 1



# EXHIBIT 2



## <u>CERTIFICATE OF SERVICE</u>

  The undersigned counsel hereby certifies that true and correct copies of the foregoing

document were caused to be served on February 8, 2024 on the following counsel in the manner

indicated below.

### <u>VIA EMAIL:</u>

Charles J. Brown, III
Gellert Scali Busenkell & Brown, LLC
1201 N. King Street, Suite 300
Wilmington, DE 19801
cbrown@gsbblaw.com

Steven Susser
Michael S. Schwartz
Carlson, Gaskey & Olds, P.C.
400 West Maple Road, Suite 350
Birmingham, MI 48009
ssusser@cgolaw.com
mschwartz@cgolaw.com

*Attorneys for Defendants*


Dated: February 8, 2024        */s/ Alexandra M. Joyce*
                Alexandra M. Joyce (#6423)