# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| AIR CANADA AND AEROPLAN INC., <br><br> Plaintiffs, <br><br> v. <br><br> LOCALHOST LLC, <br><br> Defendant. | C.A. No. 23-1177-GBW <br><br> **UNSEALED ON 3/22/24** |

Daniel M. Silver, Alexandra M. Joyce, MCCARTER & ENGLISH, LLP, Wilmington, DE

*Counsel for Plaintiff*

Charles J. Brown, III, GELLERT SCALI BUSENKELL & BROWN, LLC, Wilmington, DE

*Counsel for Defendants*

## MEMORANDUM OPINION

March 14, 2024
Wilmington, Delaware

1

GREGORY B. WILLIAMS
U.S. DISTRICT JUDGE

Pending before the Court is Plaintiffs, Air Canada and Aeroplan Inc.'s (collectively "Air Canada"), Motion for Preliminary Injunction (D.I. 15) and Defendant Localhost LLC's ("Localhost") Partial Motion to Dismiss (D.I. 7). For the reasons set forth below, the Court denies both motions.

## I. BACKGROUND

Air Canada is a foreign air carrier that operates to and from the United States. D.I. 16 at 2. Air Canada runs a reward program ("Aeroplan") through which its customers can obtain rewards such as free airline tickets and cabin upgrades. *Id.* Aeroplan members accumulate Aeroplan points by, *inter alia*, flying with Air Canada or members of the "Star Alliance" (a global airline partnership) and can redeem those points for free airplane tickets and other rewards. *Id.* at 3.

Air Canada offers its Aeroplan program through a website and a mobile application (or "app") (collectively, "the Aeroplan website"). *Id.* The Aeroplan website allows customers to search for flight times, routes, and the amount of Aeroplan points needed to purchase a flight through Air Canada or one of its partner airlines. *Id.* To do so, the Aeroplan website uses (1) a user interface application (the part of the website with which the user interacts); (2) a database that stores information for the website to access; and (3) an application programming interface (the "API"). *Id.* at 4.

The API is a "middleman" that transmits information from the user interface application to the database, and vice versa. *Id.* For example, when a customer uses the user interface to send a request for flight information, the API will check if that request came from an authorized user

interface and, if so, will obtain the requested data from the database and send that data back to the customer through the user interface. *Id.*

Because Air Canada partners with other airlines, a customer's request for information on the Aeroplan website can lead to collateral requests to those partner airlines about their relevant flight information. Thus, a single shopping request on the Aeroplan website can generate up to 300 subsidiary availability requests on Air Canada's partner airlines' websites. *Id.* at 6.

Localhost runs a website and app ("Seats.aero") that helps users redeem their credit card and travel points, including Aeroplan points, for air travel on multiple airlines. D.I. 27 at 3. Seats.areo obtains its data from multiple publicly-available online airline databases, including the Aeroplan website. *Id.* To obtain that data, Seats.aero uses automated digital robots to "scrape" information from those databases. *Id.* at 4-5. In the context of the Aeroplan website, Seats.aero scrapes that website by sending search requests to the website's API. *Id.*

Air Canada contends that these search requests by Localhost differ from a typical customer's search requests because—while a customer might request information about a single flight itinerary—Localhost requests information about every available flight itinerary. D.I. 16 at 5. According to Air Canada, Seats.aero has, at times, displayed up to 265,552 Aeroplan-available routes. Air Canada contends that displaying this number of routes would require Localhost to have sent at least 265,552 shopping requests to the Aeroplan website's API within the preceding two (2) days. *Id.* at 6. Conversely, Localhost contends that its searches do not impose a significant burden on Air Canada's website because (1) it conducts its searches on the API, rather than the Aeroplan website, and (2) it limits its searches to a rate of about five (5) searches per second—a rate that Localhost argues does not burden modern servers. D.I. 27 at 5.

3

Air Canada also contends that Localhost's data scraping violates the Aeroplan website's Terms of Use. D.I. 16 at 11. Air Canada argues that this purported violation by Localhost hurts Air Canada because it: (1) slows down the Aeroplan website and, at times, has rendered the website inoperable; (2) hurts Air Canada's business relationships with its partner airlines by causing the Aeroplan website to overload its partner airlines' websites with information requests; and (3) requires Air Canada to dedicate significant resources in an attempt to stop Localhost from scraping. *Id.* at 8-11.

The Aeroplan website's Terms of Use (the "Terms") are linked on the Aeroplan website, but do not pop-up on the user's screen before a visitor to the Aeroplan website can access the site. *Id.* at 11; D.I. 27 at 5. Among other things, the Terms prohibit users from "directly or indirectly, access[ing] . . . the Website through . . . automated scripts . . . to, without limitation: 'data mine'" and prohibit users from "access[ing] or us[ing] the Website in such [a] manner . . . that burdens [Air Canada's] infrastructure to an unreasonable and disproportionate extent, or reduces the speed of the Website". D.I. 1, Ex. 2 at 4-5. The Terms further state that "[e]ach time you [the website user] access or use" the Aeroplan website "you are entering into a contract with [Air Canada] and you agree to be bound by these Terms of Use." *Id.* Last, the Terms include sections that dictate the applicable law and proper fora for disputes under the Terms. *Id.* at 7-8.

## II.   LEGAL STANDARD

### A.   Preliminary Injunction

A preliminary injunction is an "extraordinary remedy" that the Court will grant only in "limited circumstances." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). The decision to grant or deny preliminary injunctive relief lies within the sound discretion of the district court. *See Greater Phila. Chamber of Com. v. City of Phila.*, 949 F.3d 116, 133 (3d Cir.

4

2020). To obtain a preliminary injunction that maintains the "status quo," the moving party must establish: (1) a likelihood of success on the merits; (2) irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the non-moving party; and (4) that the public interest favors such relief. *Kos Pharms.*, 369 F.3d at 708. A party seeking a preliminary injunction that alters the status quo is subject to a higher standard and, thus, must show "a substantial likelihood of success on the merits and that their right to relief is indisputably clear." *Hope v. Warden York Cty. Prison*, 972 F.3d 310, 320 (3d Cir. 2020).

The first two (2) factors—likelihood of success on the merits and irreparable harm—are "gateway factors" that the moving party must establish to obtain relief. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017); *Greater Phila. Chamber of Com.*, 949 F.3d at 133. Unless the movant meets its burden on these two factors, a preliminary injunction is not warranted, regardless of whether the Court proceeds to consider the balance of equities and the public interest. *Reilly*, 858 F.3d at 179.

### B. Forum Non Convenienes

Forum non convenienes is the proper mechanism for enforcing a forum selection clause that points to a state or foreign forum. *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 180 (3d Cir. 2017). A party that seeks to enforce a forum selection clause must first show that the claims and parties involved in the suit are subject to that clause. *Altvater Gessler-J.A. Baczewski Int'l (USA), Inc. v. Sobieski Destylarnia S.A.*, 572 F.3d 86, 89 (2d Cir. 2009). If the moving party makes that showing, the Court will give controlling weight to a valid forum selection clause in all but the most exceptional cases. *Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 62 (2013). The court applies principles of contract law to determine the scope and applicability of a forum selection clause. *Collins*, 874 F. 3d at 180.

## III. DISCUSSION

### A. The Court Denies Air Canada's Motion for Preliminary Injunction.

Air Canada asks the Court to preliminarily enjoin Localhost from scraping data from its website because Localhost's scraping breaches the Aeroplan website's Terms by, *inter alia*, slowing down the website and taking data from the website for a commercial purpose. D.I. 7. Air Canada contends that, in the absence of a preliminary injunction, it will suffer irreparable reputational damage among its consumers (because its website's performance is impacted by Localhost's scraping) and its business partners (because Localhost's scraping causes the Aeroplan website to send unreasonable numbers of subsidiary availability requests to its partners' websites). D.I. 16 at 15-18. The Court finds that Air Canada has not shown (1) a substantial likelihood of success on the merits with respect to Localhost's alleged breach of contract, and (2) that it would suffer irreparable harm absent a preliminary injunction. Thus, the Court denies Air Canada's motion.

#### i. The Court Applies Delaware Law To The Alleged Contract Between The Parties For Purposes Of This Motion.

As an initial matter, it is unclear what law applies to (1) the alleged formation of the parties' contract, and (2) Localhost's alleged breach of that contract. Air Canada does not specify what law it thinks applies to either issue but, instead, contends that the parties formed a valid contract under the law of any relevant jurisdiction.[1] *See* D.I. 16 at 13. Localhost contends that Alberta law applies to its purported breach of contract, because of the Term's choice of law and forum selection

---

[1] Air Canada also submitted a declaration by a Canadian lawyer that practices law in Alberta, Mr. Nutall. Mr. Nutall contends that Alberta courts would recognize and enforce browsewrap agreements. *See* D.I. 19.

6

clause, but notes that the law of multiple jurisdictions could apply to the alleged formation of a contract between the parties. D.I. 27 at 15-16.

The Court agrees with Localhost that the alleged contract between the parties is likely subject to Alberta law. No party, though, has alleged that Delaware law differs from Alberta law in a way that is germane to this dispute. *See* D.I. 16; D.I. 27. With respect to formation, the Court finds that the record, at this time, is insufficient to determine what jurisdiction has the "most significant relationship" to that alleged contract's formation. Accordingly, because the parties have not shown how the application of another jurisdiction's law would compel a different outcome with respect to either issue, the Court applies Delaware law. *See Pennsylvania Employee, Benefit Tr. Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 466-467 (D. Del. 2010).

### ii. The Court Finds That Air Canada Has Not Shown A Substantial Likelihood of Success on the Merits.

Air Canada's motion asks the Court to issue a preliminary injunction that would alter the status quo. If the Court were to grant the relief that Air Canada seeks, Localhost would be prevented from scraping Air Canada's website for information that it contends is necessary for its day-to-day business operations. *See* D.I. 7; D.I. 27 at 19. Thus, because Air Canada seeks to alter the status quo, Air Canada must establish a substantial likelihood of success on the merits to obtain a preliminary injunction. *Hope*, 972 F.3d at 320.

To establish a substantial likelihood of success on the merits, Air Canada must show that it is "indisputably clear" that it is entitled to relief for Localhost's alleged breach of contract. *See id.* The elements of a breach of contract claim under Delaware law are: (1) the existence of a contract; (2) the breach of an obligation imposed by the contract; and (3) resulting damage to the plaintiff. *See VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). Where

7

such an initial showing of an actionable breach of contract cannot be made, preliminary injunctive relief will not be granted. *See, e.g.*, *Cipla Ltd. v. Amgen Inc.*, 386 F. Supp. 3d 386 (D. Del. 2019).

### a. The Court Finds That Air Canada Has Shown A Substantial Likelihood of Success That A Contract Exists Between The Parties.

Air Canada contends that the Aeroplan website's Terms are a valid "browsewrap" contract.[2] D.I. 23 at 13. Air Canada argues that the parties entered into a contract, subject to those Terms, when Localhost continued to use the Aeroplan website after it obtained notice of the Terms. *Id.* at 13-14. According to Air Canada, Localhost received notice of the Terms by, at the latest, October 5, 2023—the date Air Canada sent Localhost a demand letter, with the Terms attached, that explained why Localhost's data scraping violates those Terms. *Id.* Conversely, Localhost argues that it never entered into a contract with Air Canada because (1) it never agreed to the Terms and (2) the same act cannot be both an agreement-to-contract and a breach of that same contract. D.I. 27 at 5-6.

The Court finds that Air Canada has shown a substantial likelihood of success that Air Canada and Localhost entered into a contract subject to the Aeroplan website's Terms. The enforceability of browsewrap agreements under Delaware law is not a settled issue. However, the Court finds that Delaware courts would likely enforce a browsewrap agreement against a website user when the user has actual notice of the agreement's terms and continues to use the website, because such continued use implicitly manifests the user's assent to the agreement. *See Payne v. Samsung Elecs. Am., Inc.*, 2024 WL 726907 at *5-8 (Del. Super. Ct. Feb. 21, 2024) (finding that

---

[2] "Browsewrap" agreements involve terms and conditions posted via hyperlink, commonly at the bottom of the screen, and do not request an express manifestation of assent such as, for example, clicking on a box that says "I agree." *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 223 (2d Cir. 2016).

8

a "terms and conditions" booklet included in a box with a new cellphone was "reasonably conspicuous notice of contract terms to support mutual assent to [an] arbitration agreement"); *but see Doe v. Massage Envy Franchising, LLC*, 2020 WL 7624620, at *2 (Del. Super. Ct. Dec. 21, 2020) (explaining that contracts supposedly formed by using the website on which a browsewrap link appears are "generally unenforceable" under Delaware law). Judge Bibas, sitting by designation in this District, reached a similar result in *Design With Friends, Inc v. Target Corp*, 2023 WL 3434013 at *3 (D. Del. May 12, 2023). There, Judge Bibas found that a plaintiff had sufficiently plead a breach of contract claim when the plaintiff alleged that the defendant had inquiry notice of a purported browsewrap contract. *See id.* ("[B]rowsewrap terms are enforceable when they are (1) viewed by the user (thus putting him on actual notice) or (2) sufficiently conspicuous (inquiry notice)."). While the Third Circuit has not yet taken a position on the enforceability of browsewrap agreements, other courts to consider the issue have enforced that type of agreement when the website user had (1) actual notice of the terms and (2) manifested assent to them. *See James v. Glob. TelLink Corp*, 852 F.3d 262, 267 (3d Cir. 2017) (noting the evolving jurisprudence concerning browsewrap agreements); *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 402-404 (2d Cir. 2004) (finding likelihood of success on the merits in a breach of contract claim based on a browsewrap agreement when the defendant "admitted that ... it was fully aware of the terms" of the offer).

Localhost concedes that it had actual notice of the Terms. Thus, the issue before the Court is whether Localhost manifested assent to those Terms. *See* D.I 27 at 17 (acknowledging receipt of Air Canada's demand letter). The Court finds that Air Canada has shown that it is substantially likely to succeed in its contention that Localhost manifested its assent to the Aeroplan website's Terms. Courts have found that a website user manifests assent to a website's terms when the user

continues to use the website after receiving actual notice of the terms. *See, e.g., Cairo, Inc. v. Crossmedia Servs., Inc.*, 2005 WL 756610, at *5 (N.D. Cal. Apr. 1, 2005). Localhost disputes that the API from which it obtains Air Canada's flight information is a part of the Aeroplan website, but concedes that it accesses the website to obtain the information it needs to use that API. *See* D.I. 27 at 5. Localhost's access of the Aeroplan website, after it received Air Canada's demand letter, supports a finding that Localhost implicitly agreed to be bound by the Terms, because Localhost was on notice that Air Canada, through its website, was offering a "benefit" (public access to its API) "subject to stated conditions" (the Terms of Use). *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004) ("It is standard contract doctrine that when a benefit is offered subject to stated conditions, and the offeree makes a decision to take the benefit with knowledge of the terms of the offer, the taking constitutes an acceptance of the terms, which accordingly become binding on the offeree.").

### b. The Court Finds That Air Canada Has Not Shown A Substantial Likelihood of Success Regarding Localhost's Alleged Breach of Contract.

Air Canada contends that Localhost's data scraping breaches the "Limitations of Use" section of the Aeroplan website's Terms because Localhost (1) takes data for a commercial purpose, (2) uses automated software to extract data from the Aeroplan website's database, (3) creates a "derivative work" of the Aeroplan website's data by re-posting it on Seats.aero, (4) slows down the Aeroplan website, and (5) circumvents Air Canada's attempts to prevent Localhost from scraping its data. D.I. 16 at 14-15. Conversely, Localhost contends that it does not breach the Terms because Localhost collects its data from the Aeroplan website's API, rather than the website itself. D.I. 27 at 18-19. The Terms state that they apply to "websites that are owned and operated by [Air Canada]". *Id.* (citing D.I. 1, Ex. 2). Localhost argues that the API is not a website that is

owned or operated by Air Canada because Amadeus, a third-party company, operates it. *Id.* Thus, Localhost contends that the Terms do not apply to its requests to the API. *Id.* Localhost further contends that its limited access to the website, for the purpose of initiating access to the API, does not violate the Terms. *Id.* Air Canada disagrees, and argues that (1) the website is the combination of the user interface, API, and database and (2) Amadeus merely "monitors," rather than "own[s] or operat[es]", the API. D.I. 36 at 3.

The Court finds that both parties have made plausible arguments regarding whether the Terms apply to Localhost's use of the API and whether that use constitutes a breach of the Terms. *See* D.I. 16; D.I. 27; D.I. 36. Thus, Air Canada's right to relief is not "indisputably clear." *See Hope*, 972 F.3d at 320. Accordingly, the Court finds that Air Canada has not shown a substantial likelihood of success on the merits.

### iii. The Court Finds That Air Canada Has Not Shown It Will Suffer Irreparable Harm Absent An Injunction.

Having found that, based on the present record, Air Canada has failed to show a substantial likelihood of success on the merits, the Court must deny Air Canada's Motion for Preliminary Injunction. *Reilly*, 858 F.3d at 179 (to be entitled to preliminary injunctive relief, a movant must establish that it is both likely to succeed on the merits ***and*** that it is more likely than not to suffer irreparable harm absent an injunction) (emphasis added). Nonetheless, the Court will proceed to address Air Canada's argument that failing to enjoin Localhost from its business operations will cause it irreparable harm.

To obtain a preliminary injunction, Air Canada must demonstrate "that irreparable injury is likely in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The irreparable harm must be actual and imminent, not merely speculative, *see Shabazz*

*v. Delaware Dep't of Correction*, C.A. No. 16-570-RGA, 2020 WL 998541, at *2 (D. Del. Mar. 2, 2020) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180- 81 (2000)), and must not be compensable via monetary damages. *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988) ("[A] purely economic injury, compensable in money, cannot satisfy the irreparable injury requirement."). When the claim is based on a breach of contract, as is here, "irreparable injury may be found in two situations: (1) where the subject matter of the contract is of such a special nature or peculiar value that damages would be inadequate; or (2) where because of some special and practical features of the contract, it is impossible to ascertain the legal measure of loss so that money damages are impracticable." *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987).

Air Canada contends that it will suffer irreparable harm if the Court does not enjoin Localhost because Localhost's actions harm its reputation and good will among its customers and business partners. D.I. 16 at 16-18. Air Canada contends that Localhost was responsible for a series of five (5) "brownouts,"—i.e., periods of time where the Aeroplan website was temporarily inoperable—that occurred during April and May 2023. *Id.* at 7-9. Air Canada also contends that Localhost's scraping causes the Aeroplan website to send an excessive number of information requests to Air Canada's partner airlines and that, as a result, those airlines sometimes block traffic from the Aeroplan website. *Id.* This hurts Air Canada's relationship with its customers and its partner airlines, Air Canada alleges, because it prevents Air Canada's customers from being able to see whether they can purchase flights (or other rewards) from those partner airlines with their Aeroplan points. *Id.* Air Canada also avers that it has dedicated significant personnel resources to combat Localhost's data scraping on the digital front—resources Air Canada contends it could have spent improving the Aeroplan website but for Localhost's data scraping. *Id.* at 10-11.

Localhost disputes that its data scraping harms Air Canada and, specifically, disputes that its data scraping was the cause of the Aeroplan website's April and May 2023 brownouts. *See* D.I. 27 at 12. Localhost contends that its searches are not a significant burden on Amadeus because that company has stated that it has a main data center that is capable of processing over 100,000 user transactions per second. *Id.* at 3. Localhost, on the other hand, only conducts five (5) searches per second. *Id.* at 5. Localhost also points to expert testing it conducted on Aeroplan's website regarding the website's server capacity. Localhost's expert, Mr. Eder, concluded that Localhost's requests are only 2.11% of the size and 1.11% the duration compared to a standard user request and that Localhost's five (5) searches per second are a small fraction of the capacity of even common consumer-grade servers. *Id.* at 11.

The Court finds that Air Canada has not met its burden to show that it faces the threat of "actual and imminent" irreparable harm absent an injunction. The brownouts that Air Canada cites as the basis for its reputational harm all occurred in April and May 2023—seven (7) to eight (8) months prior to Air Canada's filing of this motion for a preliminary injunction. *See* D.I. 16 at 8-9. Air Canada has not alleged that any other brownouts have occurred since then. *See id.* Thus, it is not clear to the Court that Air Canada faces an "imminent" harm absent an injunction.

Moreover, the Court also finds that it is not clear, from this record, that Localhost was the cause of those brownouts. Localhost contends that its search volume has not changed since it started in April 2023. *See* D.I. 27 at 13. If Localhost's data scraping was, in fact, the primary cause of those brownouts, Localhost's relatively constant search rate suggests that other brownouts should have occurred since May 2023. *See id.*

The Court also finds that Air Canada has not made a sufficient showing of irreparable harm because Air Canada is "perfectly able to protect itself from harm without resort to an 'extraordinary

13

remedy' such as a preliminary injunction." *See QVC, Inc. v. Resultly*, LLC, 99 F. Supp. 3d 525, 541-542 (E.D. Pa. 2015). Localhost contends that it can access Air Canada's API only because Air Canada makes its API publicly available. D.I. 27 at 14. Thus, since Air Canada holds the key to its API, Air Canada has the power to prevent Localhost's access to its API by not making its API publicly available—a fact that counsels against a finding of irreparable harm. *See id.*; *see also QVC*, 99 F. Supp. 3d at 541-542.

Last, Air Canada did not ask the Court to enjoin Localhost until December 2023—seven (7) months after Air Canada contends that it had notice that Localhost's data scraping was damaging its business operations. *See* D.I. 7; D.I. 16 at 8-9. That delay weighs strongly against a finding of irreparable harm. *See, e.g., Pharmacia Corp. v. Alcon Labs., Inc.*, 201 F. Supp. 2d 335, 384 (D.N.J. 2002) (collecting cases).

### iv. The Court Need Not Address The Remaining Preliminary Injunction Factors.

In view of the above conclusions on the likelihood of success on the merits and on irreparable harm, the Court need not make any findings concerning the third and fourth factors. *Univar Sols. Inc. v. Geisenberger*, C.A. No. 18-1909 (MN), 2022 WL 2064990, at *10 (D. Del. June 8, 2022) ("The absence of either a reasonable likelihood of success or of irreparable harm is sufficient to deny Plaintiff's request for a preliminary injunction.") (citing *Exp. Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 374 (3d Cir. 2012)).

### B. The Court Denies Localhost's Partial Motion to Dismiss.

Localhost argues that there is no contract between it and Air Canada but that, if there is, the Court should dismiss Air Canada's breach of contract claims under the doctrine of forum non convenienes. Localhost contends that the Terms mandate that this action be heard in the judicial

district of Calgary, Province of Alberta. D.I. 7. The Court finds that the Terms' forum selection clause is not mandatory and, thus, denies Localhost's motion. *See* D.I. 1, Ex. 2 at 7-8.

The Terms contain two (2) relevant provisions. *Id.* The first, under a section titled "Governing Law", states, in relevant part, that: "[f]or Qúebec [r]esidents . . . [a]ny dispute is to be submitted to the *exclusive* jurisdiction of the courts in the judicial district of Montreal, Province of Québec" (the "Qúebec Resident clause") but that "[f]or non-Qúebec [r]esidents . . . any dispute is to be submitted to the *non-exclusive* jurisdiction of the courts in the judicial district of Calgary, Province of Alberta" (the "non-Qúebec Resident clause") (collectively, the "Governing Law clauses"). *Id.* (emphasis added). The second, under a section titled "Injunctive and Similar Relief", states that "You [the website user] agree that Air Canada may commence an action in any court of competent jurisdiction in order to enforce these Terms of Use and to seek damages and/or equitable relief against you for any breaches by you of these Terms of Use." (the "Enforcement clause"). *Id.*

Localhost contends that the alleged contract between the parties is subject to the Governing Law clauses and, specifically, the non-Qúebec Resident clause.[3] D.I. 8. Localhost contends that this clause is mandatory because it contains mandatory language; namely, that any dispute *is to be* submitted to an Alberta court. *Id.* at 4. Localhost also argues that the clause's inclusion of the phrase *non-exclusive* does not compel a different result. *Id.* In support, Localhost cites

---

[3] Air Canada disagrees, and contends that the Governing Law clauses, to the extent that those clauses mandate that disputes are to be heard in a specific forum, apply only to disputes brought by parties other than Air Canada. *See* D.I. 23 at 3. In support, Air Canada cites the Enforcement clause. *See id.* Discussed below, the Court finds that the non-Qúebec Resident clause does not compel partial dismissal of Air Canada's breach of contract claims. Accordingly, the Court need not reach this argument.

*IAC/InterActiveCorp v. Roston*, a Seventh Circuit case where the court held that "[i]f a contract has both mandatory venue and forum language and permissive jurisdiction language, the separate permissive consent to jurisdiction clause does not defeat the mandatory forum selection clause." 44 F.4th 635, 643-644 (7th Cir. 2022).

*IAC*, however, does not compel a result in Localhost's favor. In *IAC*, the contract at issue contained a mandatory forum selection clause and a permissive jurisdiction clause. Specifically, the contract stated that any dispute related to the Agreement "*will be heard* and determined before an appropriate federal court located in the State of California in Alameda County" (the mandatory forum selection clause) and that "[e]ach party hereto submits itself and its property to the *non-exclusive* jurisdiction of the foregoing courts" (the permissive jurisdiction clause). *Id.* at 639. (emphasis added). Accordingly, the court held that many courts might have personal jurisdiction, but that only a few courts were the proper venue. *Id.* at 644.

Here, though, it is not clear that the non-Qúebec Resident clause contains a mandatory forum selection component and an additional permissive jurisdiction component. *See* D.I. 1, Ex. 2 at 8-9. In fact, the context of the non-Qúebec Resident clause in the Terms suggests that the clause is just a permissive jurisdiction clause. *Id.* The non-Qúebec Resident clause states that the judicial district of Calgary, Province of Alberta has *non-exclusive* jurisdiction. *Id.* Conversely, the Qúebec Resident clause contains mandatory language that specifies that the judicial district of Montreal, Province of Québec has "*exclusive* jurisdiction over disputes for Qúebec residents." *Id.* (emphasis added). The Terms' intentional distinction between "exclusive" jurisdiction and "non-exclusive" jurisdiction implies that those terms have different meanings. *See Manti Holdings, LLC v. Authentix Acquisition Co., Inc.*, 261 A.3d 1199, 1208 (Del. 2021) ("[c]ontracts will be interpreted to give each provision and term effect") (internal citations omitted). Thus, the Court

finds that the non-Québec Resident clause requires parties to the agreement (who are not Québec residents) to submit to the jurisdiction of the judicial district of Calgary, Province of Alberta. *See* D.I. 1, Ex. 2 at 8-9. Conversely, the Québec Resident clause requires parties to the agreement (who are Québec residents) to bring their disputes in the judicial district of Montreal, Province of Québec.[4] *Id.*

Localhost is not a resident of Québec and, as such, the non-Québec Resident clause applies to the parties' purported contract. *See* D.I. 1, Ex. 2 at 8-9. For the reasons stated above, the Court finds that the non-Québec Resident clause does not mandate that this action be heard elsewhere. Accordingly, the Court denies Localhost's partial motion to dismiss under the doctrine of forum non convenienes.[5]

## IV.   CONCLUSION

For the foregoing reasons, this 14th day of March, 2024, **IT IS HEREBY ORDERED** as follows:

1. Air Canada's Motion for Preliminary Injunction is **DENIED.** D.I. 15.

2. Localhost's Partial Motion to Dismiss is **DENIED.** D.I. 7.

---

[4] The Court recognizes that, because this is a browsewrap agreement, Localhost played no role in the drafting of the contract. Localhost's lack of participation in the contract's drafting means that the Court would interpret the contract in Localhost's favor if the Court were to find that the contract was ambiguous. *See, e.g., Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1160 (Del. 2010). The Court, however, finds that the contract is not ambiguous.

[5] The Court finds that Localhost's argument regarding traditional forum non conveniens in its Reply Brief—namely, that the Court should grant Localhost's motion even if the Term's forum selection clause is not mandatory—was waived by Localhost's failure to make that argument in its opening brief. Specifically, Localhost failed to address how, absent a mandatory forum selection clause, the first and third factors of the forum non conveniens analysis favor dismissal. *See Collins v. Mary Kay, Inc.*, 874 F.3d 176, 186 (3rd Cir. 2017).