**GSB·B**
GELLERT
SEITZ
BUSENKELL
◆ BROWN, LLC

**VIA ECF**                                                                 May 14, 2026

The Honorable Gregory B. Williams, U.S.D.J.
United States District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 North King Street, Unit 26, Room 6124, Wilmington, DE 19801-3555

**Re:**   ***Air Canada and Aeroplan, Inc. v. Localhost LLC*,**
         **Civil Action No.: 1:23-cv-01177-GBW**

Dear Judge Williams:

        We, along with Steptoe LLP, represent Defendant Localhost LLC in the above-referenced matter.  Pursuant to Paragraph 4 of the Court's Amended Scheduling Order (D.I. 84) (the "Scheduling Order"), Localhost respectfully moves to amend its answer to include necessary counterclaims.  This amendment is necessary to address Air Canada's anticompetitive, unfair, and interfering conduct, which has injured Localhost and consumers.  *See* Exhibit A (Amended Answer and Counterclaims) and Exhibit B ("Blackline" Comparison).  Because the motion is timely, made in good faith, causes no undue prejudice, and is not futile, leave should be granted.

**I.      BACKGROUND**

        Localhost operates seats.aero,[1] a tool that allows users to efficiently search and compare airline award availability across multiple loyalty programs including Aeroplan.  Air Canada's interfaces are limited and inefficient, making it difficult for consumers to identify and compare available route and date options.  Tools like seats.aero improve the booking process dramatically by displaying flight award availability across different loyalty programs simultaneously.  This allows users to search more efficiently and identify better award itineraries.  As a result, such tools are widely used and preferred by consumers.

        Nonetheless, Air Canada imposed improperly restrictive terms of use and technical measures that undermine these tools' functionality.  Those actions impaired seats.aero, increased Localhost's costs, and disrupted its relationships with paying users and business partners.  They also reduced competition among tools that help consumers access and compare award travel options, limiting transparency and making it more difficult for consumers to identify and evaluate flights.  Localhost's proposed counterclaims are directed to Air Canada's foregoing conduct, already at issue in the case.  The continued evolution of Air Canada's exclusionary measures further justifies amendment at this stage.

---

[1] The proposed amendment also adds Travel Data Corporation ("TDC"), the entity that now operates seats.aero, as a counterclaim plaintiff.

1201 NORTH ORANGE STREET
SUITE 300
WILMINGTON, DE 19801
P: 302.425.5800 | F: 302.425.5814          **WWW.GSBBLAW.COM**          901 NORTH MARKET STREET
SUITE 3020, 3RD FLOOR
PHILADELPHIA, PA 19107
P: 215.238.0010 F: 302.425.5814

May 14, 2026
Page 2

The case was stayed for an extended period during settlement discussions.  D.I. 67, 70, 72, 79.  On March 12, 2026, Localhost substituted Steptoe LLP as its counsel.  D.I. 73.  The stay was then lifted on April 3, 2026, and the case now proceeds under the Scheduling Order entered on April 14, 2026.  The motion to amend pleadings deadline is May 14, 2026, *i.e.*, within one month of the Scheduling Order.  Fact discovery remains open through July 31, 2026, followed by expert discovery, dispositive motions, and trial.  D.I. 84 ¶¶ 3(a), 3(f)(iv), 9, 14.  Substantial time remains before those stages, including more than seven months before initial expert reports, more than a year between dispositive motions and the pretrial conference, and approximately two and a half years before trial.  Upon conferral, Air Canada advised that it opposed the counterclaims, necessitating this motion.[2]

## II.    ARGUMENT

### A.    Pertinent Legal Standard

Leave to amend should be "freely give[n] . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Third Circuit applies a liberal standard.  *See Arthur v. Maersk, Inc*., 434 F.3d 196, 202 (3d Cir. 2006).  Leave to amend should be granted in the absence of (A) "undue delay"; (B) "bad faith or dilatory motive on the part of the movant"; (C) "undue prejudice to the opposing party by virtue of allowance of the amendment"; and (D) "futility of amendment."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### B.    The Court Should Grant Localhost's Motion to Amend Because Each of the *Foman* Factors Weighs in Favor of Amendment

#### 1.    Localhost's Motion is Timely and Made in Good Faith

Localhost timely filed this motion within the Court's amendment deadline, which precludes undue delay.  *See Bos. Sci. Corp. v. Edwards Lifesciences Corp.*, 2017 WL 781046, at *2 (D. Del. Feb. 28, 2017); *Invensas Corp. v. Renesas Elecs. Corp.*, 2013 WL 1776112, at *3 (D. Del. Apr. 24, 2013) (finding no undue delay where motion was filed on the amendment deadline).  Localhost substituted Steptoe LLP as counsel on March 12, 2026, the stay was lifted on April 3, 2026, and Localhost diligently pursued this motion promptly within the Court-ordered deadline of May 14, 2026, which was an agreed-upon date by the parties.  Nor is there any bad faith or dilatory motive.  Courts require a "sinister motive" or "nefarious purpose," neither of which exists.  *U.S. ex rel. B&R, Inc. v. Donald Lake Constr., Inc*., 19 F. Supp. 2d 217, 221 n.6 (D. Del. 1998); *Trueposition, Inc. v. Allen Telecom, Inc*., 2002 WL 1558531, at *2 (D. Del. July 16, 2002) (refusing to find bad faith where the motion complied with the deadline).

---

[2] Pursuant to D.I. 84 ¶ 3(g), the following attorneys participated in a verbal meet-and-confer by telephone on May 14, 2026: Alexandra M. Joyce, McCarter & English, LLP; Charles J. Brown, III, Gellert Seitz Busenkell & Brown, LLC; Douglas A. Rettew and Jonathan J. Fagan, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP; Vishal Gupta and Lillian Wallace, Steptoe LLP.



May 14, 2026
Page 3

### 2.      The Counterclaims Are Not Futile

The counterclaims are not futile.  At this stage, the Court applies the Rule 12(b)(6) standard.  *Guardant Health, Inc. v. Tempus AI, Inc.*, No. 25-82-GBW, 2025 WL 3269885 (D. Del. Nov. 24, 2025).  All factual allegations and reasonable inferences are accepted as true, and the Court does not weigh competing factual positions or assess the merits.  *Cornell Univ. v. Illumina, Inc.*, 2016 WL 3046258, at *6 (D. Del. May 27, 2016).  Localhost's counterclaims readily meet this standard.  The proposed counterclaims span 44 pages and amply plead antitrust, tortious interference, and unfair competition theories with detailed factual allegations regarding Air Canada's control over Aeroplan data, its anticompetitive conduct, and its interference with Localhost's business.  For example, the counterclaims include factual allegations supporting monopolization and attempted monopolization under Sherman Act § 2 (*e.g.*, ¶¶ 18-41, 56-61, 62-126), unreasonable restraint of trade under Sherman Act § 1 (*e.g.*, ¶¶ 18-41, 56-61, 62-89, 105-126), and tortious interference and unfair competition (*e.g.*, ¶¶ 18-35, 42-55).  The counterclaims further detail causes of action under Sherman Act § 2 (Counts I-II, ¶¶ 127-152), Sherman Act § 1 (Count III, ¶¶ 153-167), and state-law claims for tortious interference and unfair competition (Counts IV-VI, ¶¶ 168-217).  Because the claims are plausible under Rule 12(b)(6), futility provides no basis to deny the motion.

### 3.      Air Canada Cannot Show Undue Prejudice

Air Canada will not suffer undue prejudice if Localhost's motion is granted.  The current case schedule easily accommodates the counterclaims without disrupting the orderly progress of the case.  *See Guardant Health*, 2025 WL 3269885, at *1 (rejecting undue prejudice where trial remained approximately two years away and the schedule included substantial gaps that could be used to accommodate additional discovery).  Air Canada will also have a full opportunity to respond and to pursue discovery in the ordinary course.  Any additional discovery can be accommodated within the existing schedule as significant time remains before expert discovery, dispositive motions, and trial.

### C.      The Court Should Grant Localhost's Motion to Amend Because the Amendment Properly Brings All Related Claims Before the Court

The amendment ensures all related disputes are efficiently resolved in a single proceeding.  *Trueposition*, 2002 WL 1558531, at *2 (finding amendment promotes judicial economy by resolving related claims in a single action).

\*      \*      \*

For the foregoing reasons, Localhost respectfully requests that the Court grant its motion. We thank the Court for its time and consideration.

Respectfully submitted,

*/s/ Charles J. Brown, III*

Charles J. Brown, III (DE 3368)

cc: all counsel of record (via Email)       **GELLERT SEITZ BUSENKELL & BROWN, LLC**

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

AIR CANADA AND AEROPLAN INC.,

                            Plaintiffs,

      v.

LOCALHOST LLC,

                          Defendant.

LOCALHOST LLC AND TRAVEL DATA
CORPORATION,

                    Counterclaim Plaintiffs,

      v.

AIR CANADA AND AEROPLAN INC.,

                  Counterclaim Defendants.

Case No. 1:23-cv-01177-GBW

**JURY DEMAND REQUESTED**

████████████████████

**LOCALHOST LLC'S AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND
COUNTERCLAIMS OF LOCALHOST LLC AND TRAVEL DATA CORPORATION**

NOW COMES the Defendant, Localhost LLC, ("Localhost"), by and through its counsel,
and for its Answer to the Complaint of Plaintiffs Air Canada and Aeroplan, Inc. (the "Air Canada
Group") states as follows:

**RESPONSES AS TO THE PARTIES**

1.      Localhost lacks knowledge or information sufficient to form a belief about the
truth of this allegation, which has the effect of a denial and demands strict proof thereof.

2.      Localhost lacks knowledge or information sufficient to form a belief about the
truth of this allegation, which has the effect of a denial and demands strict proof thereof.

3.      Admits that it is a limited liability company, organized and existing under the laws of the State of Delaware, that it previously maintained a registered agent for service of process at 8 The Green, STE A, Dover, Delaware 19901, and further states that it now maintains its registered agent for service of process at Corporation Trust Center, 1209 Orange St, Wilmington, Delaware, 19801.

### RESPONSES AS TO THE NATURE OF THE ACTION[1]

4.      Localhost admits only that the Air Canada Group's Complaint includes the listed claims.  Localhost denies that the Air Canada Group has stated any plausible claims.

5.      Denied as untrue.  In addition, Localhost objects to the reference to actions by non-party Ian Carroll being "through Defendant Localhost LLC."  This appears to be an attempt by Air Canada Group to pierce the corporate veil.  As Air Canada has not proffered any basis to believe that Mr. Carroll was acting in his individual capacity in connection with the allegations in this paragraph or, for that matter, anywhere in the complaint, any allegations against Mr. Carroll directly are improper.

### RESPONSES AS TO THE JURISDICTION AND VENUE

6.      Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

7.      Denied as untrue.  The Terms of Use advanced by the Air Canada Group state "Any dispute is to be submitted to the non-exclusive jurisdiction of the courts in in the judicial district of Calgary, Province of Alberta."  This District is not the proper venue for at least the Air Canada Group's breach of contract allegations.

---

[1] Localhost denies any allegation that may be implied or inferred from the headings of the Air Canada Group's Complaint.

### RESPONSES AS TO AIR CANADA GROUP BACKGROUND

8. Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

9. Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

10. Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

11. Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

12. Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

13. Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

14. Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

15. Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

16. Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

### RESPONSES AS TO AIR CANADA GROUP'S ALLEGEDLY FAMOUS TRADEMARKS

17. Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

18.     Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

19.     Admitted only that Plaintiffs have obtained federal trademark registrations for the trademarks identified in the table.  Otherwise, Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

20.     Admitted.

21.     Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

22.     Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

### RESPONSES AS TO ALLEGED UNLAWFUL ACTS OF DEFENDANT

23.     Localhost again objects to the reference to non-party Ian Carroll.  Mr. Carroll has not extracted any data from the Air Canada Group in his individual capacity.  To the extent that the Air Canada Group has mistakenly substituted Mr. Carroll for Defendant Localhost, Localhost admits only that Localhost lawfully extracts publicly available data from the Air Canada Group and uses it for the Seats.aero website owned by Localhost.  Localhost further admits only that its website correctly states "Seats.aero is the fastest search engine for award travel."  Otherwise, denied as untrue.

24.     Admitted.

25.     Localhost again objects to the reference to non-party Ian Carroll.  Admitted only that the linked webpage includes the quoted phrase.  Otherwise, denied as untrue.

- 4 -

26.     Denied as untrue.  Localhost again objects to the reference to non-party Ian Carroll.  Mr. Carroll has not extracted any data in his individual capacity.  To the extent that Air Canada Group has mistakenly substituted Mr. Carroll for Defendant Localhost, Localhost has never performed any "screen scraping" of Air Canada Group's data.

27.     Denied as untrue.  Localhost again objects to the reference to non-party Ian Carroll.  Mr. Carroll has not extracted any data in his individual capacity.

28.     Localhost again objects to the reference to non-party Ian Carroll.  Mr. Carroll has not extracted any data in his individual capacity.  To the extent that Air Canada Group has mistakenly substituted Mr. Carroll for Defendant Localhost, Localhost admits only that Localhost performs API extraction to obtain publicly available data from the Air Canada Group.  Otherwise, denied as untrue.

29.     Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

30.     Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

31.     Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

32.     Denied as untrue.  Localhost again objects to the reference to non-party Ian Carroll.  Mr. Carroll has not extracted any data from the Air Canada Group in his individual capacity.

33.     Admitted only that Localhost performs API extraction to obtain publicly available data from the Air Canada Group, including date, location, and required Aeroplan points for various routes.  Otherwise, denied as untrue.

- 5 -

34.    Denied as untrue.

35.    Admitted only that Localhost uses the phrases "Air Canada" and "Aeroplan" on the Seats.aero website to identify services offered by the Air Canada Group.  Otherwise, denied as untrue.

36.    Admitted.

37.    Denied as untrue.

38.    Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

39.    Denied as untrue.

40.    Denied as untrue.

41.    Localhost again objects to the reference to non-party Ian Carroll.  Mr. Carroll has not extracted any data from the Air Canada Group in his individual capacity.  To the extent that the Air Canada Group has mistakenly substituted Mr. Carroll for Defendant Localhost, Localhost admits only that on October 5, 2023, Localhost, through counsel, received a letter from the Air Canada Group alleging violations of the Terms of Use. Counsel for Localhost responded to that letter on October 17, pointing out the deficiencies of the Air Canada Group's allegations. Localhost further admits only that Mr. Carroll, acting through Localhost, made a post including the quoted language.  Otherwise, denied as untrue.

42.    Denied as untrue.

43.    Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

44.    Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

45.     Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

46.     Localhost again objects to the reference to non-party Ian Carroll.  Mr. Carroll has acted solely through Localhost at all relevant times.  To the extent that the Air Canada Group has mistakenly substituted Mr. Carroll for Defendant Localhost, Localhost admits only that Localhost has continued to legally extract data from the Air Canada Group publicly available website and that Localhost has communicated its operational status to users on Discord. Otherwise, denied as untrue.

47.     Localhost again objects to the reference to non-party Ian Carroll.  Mr. Carroll has acted solely through Localhost at all relevant times.  Admitted only that on May 14, 2023 Mr. Carroll, acting through Localhost, made a post on Discord including the quoted language. Otherwise, Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

48.     Localhost again objects to the reference to non-party Ian Carroll.  Mr. Carroll has acted solely through Localhost at all relevant times.  Admitted only that, on June 1, 2023 Mr. Carroll, acting through Localhost, made a post on Discord including the quoted language. Otherwise, Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

49.     Localhost again objects to the reference to non-party Ian Carroll.  Mr. Carroll has acted solely through Localhost at all relevant times.  Admitted only that on August 17, 2023 Mr. Carroll, acting through Localhost, made a post on Discord including the quoted language.

50.     Denied as untrue.

## RESPONSES AS TO ALLEGED INJURY TO THE AIR CANADA GROUP

51.    Denied as untrue.

52.    Denied as untrue.

53.    Denied as untrue.

54.    Denied as untrue.

55.    Denied as untrue.

56.    Denied as untrue.

## RESPONSES AS TO AIR CANADA GROUP'S FIRST CLAIM FOR RELIEF

57.    Localhost re-alleges and re-avers its responses to paragraphs 1 through 56 as set forth above.

58.    Denied as untrue.

59.    Denied as untrue.

60.    Denied as untrue.

61.    Denied as untrue.

62.    Denied as untrue.

## RESPONSES AS TO AIR CANADA GROUP'S SECOND CLAIM FOR RELIEF

63.    Localhost re-alleges and re-avers its responses to paragraphs 1 through 62 as set forth above.

64.    Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

65.    Denied as untrue.

66.    Denied as untrue.

67.    Denied as untrue.

68.     Denied as untrue.

## RESPONSES AS TO AIR CANADA GROUP'S THIRD CLAIM FOR RELIEF

69.     Localhost re-alleges and re-avers its responses to paragraphs 1 through 68 as set forth above.

70.     Denied as untrue.

## RESPONSES AS TO AIR CANADA GROUP'S FOURTH CLAIM FOR RELIEF

71.     Localhost re-alleges and re-avers its responses to paragraphs 1 through 70 as set forth above.

72.     Denied as untrue.

## RESPONSES AS TO AIR CANADA GROUP'S FIFTH CLAIM FOR RELIEF

73.     Localhost re-alleges and re-avers its responses to paragraphs 1 through 72 as set forth above.

74.     Denied as untrue.

## RESPONSES AS TO AIR CANADA GROUP'S SIXTH CLAIM FOR RELIEF

75.     Localhost re-alleges and re-avers its responses to paragraphs 1 through 74 as set forth above.

76.     Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

77.     Denied as untrue.

## RESPONSES AS TO AIR CANADA GROUP'S SEVENTH CLAIM FOR RELIEF

78.     Localhost re-alleges and re-avers its responses to paragraphs 1 through 77 as set forth above.

79.     Denied as untrue.

## RESPONSES AS TO AIR CANADA GROUP'S EIGHTH CLAIM FOR RELIEF

80.     Localhost re-alleges and re-avers its responses to paragraphs 1 through 79 as set forth above.

81.     Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

82.     Denied as untrue.

83.     Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

84.     Denied as untrue.

## AFFIRMATIVE DEFENSES

Defendant Localhost asserts the following affirmative defenses to the Air Canada Group's Complaint:

1.      The Air Canada Group's claims are barred, in whole or in part, by the doctrines of laches, equitable estoppel, waiver, unclean hands, and/or acquiescence.

2.      The Air Canada Group's breach of contract claims are barred, in whole or in part, by the doctrines of unconscionability, illegality, commercial impracticability, frustration of purpose, want or failure of consideration, and/or lack of mutuality.

3.      The Air Canada Group's breach of contract claims are barred because the Air Canada Group breached the mandatory forum selection clause of the Terms of Use by filing their Complaint in this District. The contract claims should be dismissed based on at least the doctrine of *forum non conveniens*.

4.      The Air Canada Group's trademark claims are barred, in whole or in part, by the doctrines of trademark fair use, particularly the doctrine of nominative fair use.

5.    Localhost reserves the right to amend these affirmative defenses based upon the course of discovery and proceedings in this action.

## RELIEF REQUESTED

WHEREFORE, Localhost respectfully requests that this Court:

A.    Dismiss the Air Canada Group's complaint in its entirety with prejudice;

B.    Grant judgement in Localhost's favor against the Air Canada Group for damages, including pre-judgment interest, post-judgement interest, attorney's fees and costs; and

C.    Grant any such other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Defendant demands a trial by jury on all issues so triable.

## COUNTERCLAIMS

Defendant and Counterclaim Plaintiff Localhost LLC ("Localhost LLC"), together with Counterclaim Plaintiff Travel Data Corporation ("TDC") (collectively, "Localhost"), by and through its undersigned counsel, asserts these counterclaims against Plaintiffs Air Canada and Aeroplan, Inc. (collectively, "Air Canada") as follows:

### AIR CANADA HARMS CONSUMERS AND COMPETITION BY IMPEDING LOYALTY POINT REDEMPTION

1.    These counterclaims challenge Air Canada's misuse of its control over the Aeroplan program to silence emerging competition and keep consumers in the dark.

2.    When Localhost introduced an independent display and search tool that allowed Aeroplan members to see and compare airline point redemption options more easily, consumers responded enthusiastically.  Using Localhost's tool, travelers could readily and quickly evaluate

- 11 -

the value of their points and identify award seats on multiple dates and routes, in an efficient way not possible on Air Canada's difficult to navigate website and mobile application.

3.     Rather than welcome innovation that benefited its members, Air Canada moved to shut Localhost's tool down by aggressively enforcing restrictive Terms of Use, invoking technical barriers, and walling off data.  By restricting access to basic redemption information, Air Canada deprived Aeroplan members of transparency, choice, and the ability to make informed travel decisions, and to save money while doing so.

4.     Air Canada's conduct harms Localhost, consumers, and the competitive process that drives fair value and choice in the travel-awards marketplace.  Localhost seeks to restore that competition and ensure that Aeroplan members, not Air Canada's gatekeeping, determine how best to use the awards they have earned.

## NATURE OF COUNTERCLAIMS

5.     Localhost brings antitrust, unfair competition, and interference claims based on Air Canada's conduct in the market for tools that search and display Aeroplan redemption data (the "Aeroplan Award-Search Tools market").  This case does not challenge Air Canada's operation of its airline or loyalty program as such, but rather its conduct in impairing competition by independent services that enable consumers to efficiently use Aeroplan points in a manner that suits their needs and preferences.

6.     Air Canada has engaged in a course of conduct designed to impair competition in this market by restricting access to Aeroplan redemption data, deploying technical measures that interfere with data retrieval, and enforcing overly restrictive contractual provisions that deter the development and operation of independent award-search tools.  Because access to Aeroplan redemption data is a necessary input for competing services, these restrictions have the effect of

- 12 -

raising rivals' costs, degrading their functionality, and limiting their ability to compete on the merits.

7.      Through this conduct, Air Canada has reduced the quality, reliability, and availability of independent award-search tools, diminished innovation, increased the difficulty and cost for consumers to identify and evaluate Aeroplan redemption opportunities, and engaged in conduct that constitutes tortious interference with Localhost's existing and prospective business relationships and unfair competition.  Localhost has been directly harmed by this conduct through lost revenue, increased operating costs, and impaired business relationships, and these harms flow from the same anticompetitive effects that injure competition and consumers in the Aeroplan Award-Search Tools market.

## **PARTIES**

8.      Localhost LLC is a limited liability company organized and existing under the laws of the State of Delaware, which maintains a registered agent for service of process at Corporation Trust Center, 1209 Orange St, Wilmington, Delaware, 19801.

9.      TDC is a corporation organized and existing under the laws of the State of Delaware, which maintains a registered office at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801.  ██████████████████████  TDC is added herein pursuant to Federal Rules of Civil Procedure 13(h) and 20(a).

10.     ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████

- 13 -

11.     Localhost LLC and TDC each suffered direct injuries arising from Air Canada's conduct.

12.     Upon information and belief, Plaintiff Air Canada is a company organized and existing under the laws of Canada with its headquarters at 7373 Blvd. de la Côte-Vertu West, Montréal, Québec, Canada.

13.     Upon information and belief, Plaintiff Aeroplan Inc. is a company organized and existing under the laws of Canada with its headquarters at 7373 Blvd. de la Côte-Vertu West, Montréal, Québec, Canada.

## JURISDICTION AND VENUE

14.     Localhost brings this action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26, for treble damages, injunctive relief, costs of suit, and reasonable attorneys' fees for violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2.  This Court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1337.

15.     Localhost also asserts state law claims: (i) for tortious interference with contractual relations; (ii) for tortious interference with prospective business relationships; and (iii) unfair competition.  This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, and Federal Rule of Civil Procedure 13, because these claims arise out of the same nucleus of operative facts and from the same controversy as Localhost's federal claims.

16.     This Court has personal jurisdiction over Air Canada because Air Canada instituted this litigation in this Court and, therefore, has consented to personal jurisdiction or waived any objection to it.

- 14 -

17.     Venue is proper in this District because, among other reasons, (1) having filed its action in this District, Air Canada is subject to personal jurisdiction in this District and has consented to venue in this District; and (2) as non-residents of the United States, Air Canada may be sued in any district.

## FACTUAL ALLEGATIONS RELEVANT TO LOCALHOST'S COUNTERCLAIMS[2]

### A.     Independent Travel Award-Search and Display Tools Help Consumers Use Their Loyalty Points

18.     Consumers accumulate airline loyalty points with the expectation that they can redeem those points for travel at predictable, reasonable value.  As such, the value consumers derive from loyalty programs depends on the ability to identify available award inventory across dates, cabins, and routes, which is inherently dynamic and time sensitive.  For example, airlines frequently change redemption pricing and seat availability.

19.     However, unlike cash flight data, which is publicly distributed to global distribution systems used by travel agents and online travel agencies, there is no equivalent centralized system for award data.  Consequently, consumers must visit multiple airline websites, run repetitive searches, and manually compare results, which is an inefficient process that discourages redemption and reduces the perceived value of loyalty programs.  For example, Air Canada's website and mobile interface require users to conduct numerous manual, sequential searches across dates and routes, making it difficult to efficiently identify and compare redemption opportunities.

---

[2] Localhost LLC asserts these counterclaims without waiving, and expressly preserves, all defenses to Air Canada's claims.  Nothing in these counterclaims should be construed as an admission or as inconsistent with Localhost LLC's defenses, all of which are asserted separately. To the extent necessary, Localhost pleads these counterclaims in the alternative and reserves all rights to do so.

20.     Independent travel award-search and display tools ("award-search tools") emerged to solve this problem.  They make the process of redeeming points easier and more efficient.  Specifically, these tools allow consumers to view, compare, and evaluate award-flight availability and redemption data across airlines and programs.  These tools provide efficient search capability, alerts when seats become available, and side-by-side comparisons of redemption options that airlines' interfaces do not offer.

21.     Consumers prefer these award-search tools to plan travel efficiently, to determine whether to redeem points or pay cash, and to maximize the value of their loyalty points.  As a result, these tools lower consumers' effective travel costs, increase transparency into program value, and reduce the dissipation of loyalty points that would otherwise expire or go unused.  These tools also stimulate competition among airlines by increasing visibility into redemption pricing and availability.  The resulting transparency promotes consumer confidence in loyalty programs and drives competitive pressure on airlines to maintain fair redemption values.

22.     Award-search tools obtain public data from airlines through various methods, including accessing application programming interfaces ("APIs") provided by airlines and third-party databases.  These APIs allow tools to retrieve real-time information on award availability, pricing, and flight schedules.  In some cases, airlines or technology vendors make portions of this data available through standard data-distribution channels.  Award-search tools interact with these publicly available systems to collect data that airlines themselves have chosen to make visible to consumers.

23.     By enabling consumers to actually use their points, award-search tools increase the utility of loyalty programs and encourage continued participation by consumers.

24.     Examples of award-search tools include, but are not limited to, seats.aero, point.me, Roame, PointsYeah, AwardTool, Awayz, Daily Drop, Points Path, AwardLogic, and Cowtool.  These tools expand consumer access to redemption data, but their ability to operate depends on continued access to airline-controlled information.  For example, Cowtool, a non-profit award-search tool that provided functionality relating to Aeroplan redemption data, ceased operations of their award-search functionality after Air Canada initiated its enforcement actions against Localhost.  Upon information and belief, Cowtool's decision to discontinue its services was influenced by the risks associated with Air Canada's enforcement position, including the potential for similar legal or technical restrictions.  This example illustrates the broader effect of Air Canada's conduct on independent tools that rely on access to Aeroplan redemption data.

**B.     Air Canada Uniquely Controls and Limits Aeroplan Redemption Data**

25.     Air Canada is Canada's largest passenger airline, with a market capitalization exceeding \$5 billion.[3]  Air Canada is a dominant participant in the North American air-travel markets.  As alleged in the complaint, Air Canada's daily schedule includes up to 400 flights between the United States and Canada, serving 51 U.S. airports.  Its scale and reach give Air Canada substantial influence over airline scheduling, pricing, and consumer access to travel options.

26.     Aeroplan is Air Canada's loyalty-awards program and one of North America's largest airline-loyalty programs.  The program has millions of members who earn points through flights, credit-card purchases, and partner transactions.  Air Canada alone owns and operates Aeroplan.

---

[3] *Air Canada (AC.TO)*, YAHOO! FINANCE, https://ca.finance.yahoo.com/quote/AC.TO (last visited May 11, 2026).

27.     Aeroplan points constitute an awards currency redeemable solely through Air Canada's Aeroplan program.  The redemption data for Aeroplan points, covering seat inventory, dynamic point pricing, and availability, is generated and maintained exclusively by Air Canada.  Aeroplan offers a wide range of award routes, travel dates, and partner-airline redemptions, making it one of the more extensive sources of award-flight options available to consumers.

28.     Air Canada is also a founding member of the Star Alliance partnership.  Through that alliance, Air Canada markets flights operated by partner carriers and allows Aeroplan members to redeem points for travel on those partners.  Even though Aeroplan members may use points for flights operated by Star Alliance partners, the redemption process and all underlying data about pricing, availability, and seat inventory, remain controlled exclusively by Air Canada.  The combination of its own network and its alliance relationships enable Air Canada to control a vast inventory of award travel, giving it outsized influence over how consumers earn, view, and redeem Aeroplan points across multiple airlines.

29.     Air Canada's exclusive control over Aeroplan redemption data also gives it significant power over competition.  Air Canada uniquely controls the data that defines its redemption value.  Without that access, competitors cannot offer consumers meaningful comparisons or alternative tools, and Air Canada retains its ability to control consumer choice.  This exclusive control enables Air Canada to determine the level of transparency available to consumers, the extent to which they can make informed, competitive choices about how to use their points, and to dictate the conditions under which independent award-search tools may operate.

**C.      Localhost's seats.aero Empowers Consumers By Making Aeroplan Redemption Data Easier to Access and Search**

30.      Seats.aero is an award-search tool.  Seats.aero, operated by Localhost and founded by Ian Carroll, was designed to help consumers maximize the use of their accumulated credit card points for air travel.  Mr. Carroll, an avid traveler, found it difficult to search for award redemption trips using an airline's website search function.  At 22 years old, he began building a website that would become seats.aero.

31.      Seats.aero aggregates publicly available award-pricing and availability data from twenty-four airlines such as Aeromexico, Air Canada, Air France, Alaska, American, Delta, Emirates, Etihad, JetBlue, Qantas, SAS, United, Virgin Atlantic, and Virgin Australia.  These airlines span all three major alliances, namely, Oneworld, SkyTeam, and Star Alliance.  Among these carriers, Air Canada is the only one to have taken steps to exclude seats.aero.

32.      Using this publicly available data, seats.aero presents award travel options to consumers in a single, searchable interface.  The interface allows users to compare redemption options across airlines instantly, using enhanced search features that most airlines' proprietary systems do not offer.  These features include flexible date-range searches and multi-route filters, and substantially reduce the time required to locate viable award seats.  By redirecting users to the airline's own website for booking, seats.aero also preserves the airline's control over ticketing and payment while expanding consumer choice and market transparency.  For example, in the case of Air Canada, seats.aero directs users to Air Canada's website to complete bookings, thereby facilitating transactions on Air Canada's platform and increasing Air Canada's passenger traffic and associated revenue.  Seats.aero does not represent that it is affiliated with, endorsed by, or operated by Air Canada.

33.     Seats.aero began operations on or around May 2022 and began offering display and search services for Air Canada flights on or around April 2023.  For Air Canada information, Localhost maintains a controlled request rate of about five searches per second, with caching to prevent duplicative queries.  This approach conserves airline resources while providing consumers with up-to-date information.  Seats.aero further reduces load by tracking only routes with direct or non-stop flights and manually verifying new route requests for operation by an Aeroplan partner, with limited, reviewed exceptions.

34.     Seats.aero has approximately ▮▮▮▮▮ monthly visitors and has been praised by consumers and industry publications for making it easier to find award availability and its search criteria flexibility.[4]

35.     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The platform operates under a model where basic searches within two months of travel are free, while broader and more advanced searches are available for a $9.99-per-month subscription.  This structure allows consumers to experience the product's benefits before committing to a paid plan and encourages conversion based on value.  Subscribers value the ability to search every major airline from one interface, and many upgrade after recognizing the efficiency, breadth, and transparency of the paid service.  Seats.aero's business model depends on continued consumer satisfaction and access to the same public data that airlines display to their consumers.

---

[4] "I've been using it since March 2023 and have found value in their Pro (paid) offering which is $9.99 per month. It's awesome to able to see award availability many months out to help find award availability with ease . . . . The flexibility of search criteria makes this app super powerful."  Palo, *Pro Tool: Seats.aero for Airline Award Availability*, PALOWILLTRAVEL (Nov. 11, 2023) available at https://www.palowilltravel.com/2023/11/11/pro-tool-seats-aero-for-airline-award-availability/.

**D.      Air Canada Uses Unreasonable Exclusionary Conduct to Impede Independent Award-Search and Display Tools Like seats.aero**

36.      In 2023, Air Canada began aggressively enforcing restrictive Terms of Use that purported to prohibit automated access to its publicly available website content.  Air Canada issued a demand letter, followed by this lawsuit.  Aeroplan also began issuing technological restriction measures to exclude seats.aero access to the Aeroplan redemption data.  Later, in 2025, Air Canada altered its website's configuration to require login credentials for public redemption data that had previously been accessible without authentication.

37.      Air Canada has applied its Terms of Use and technical restrictions in a targeted and disproportionate manner, including by directing enforcement actions against seats.aero, while other entities engaging in comparable activities have not been subject to similar enforcement. This differential treatment has deterred independent award-search tools, increased uncertainty and operational risk, and impaired competitors' ability to operate and compete effectively.  Air Canada's actions against seats.aero, a prominent award-search tool, further demonstrates that it actively monitors independent award-search tools.

38.      Air Canada justified these actions as protecting its infrastructure from excessive burden.  But, as explained above, seats.aero operates in a manner specifically designed to avoid any burden: its data collection uses a controlled request rate of approximately five queries per second, employs caching to prevent duplicate calls, and accesses publicly available APIs.

39.      Air Canada's exclusionary conduct has increased the cost and complexity of operating seats.aero.  It has also diminished and compromised display options as a result of compromised data.

- 21 -

40.     Air Canada's exclusionary conduct has also stifled innovation in award-search tools.  Independent developers and potential partners face barriers and uncertainty that discourage investment and new product development.

41.     Air Canada's exclusionary conduct has also harmed consumers and distorted the competitive process.  By restricting access to Aeroplan redemption data and enforcing its Terms of Use to impede independent tools, Air Canada has limited transparency in how Aeroplan points can be redeemed and the value those points represent.  Air Canada's restrictions materially impair the ability of independent tools to compete by raising their costs, degrading their functionality, and limiting access to essential data inputs.

**E.     Air Canada's Exclusionary Conduct Interferes with Localhost's Existing and Prospective Business Relationships**

42.     Air Canada's exclusionary conduct has also materially interfered with Localhost's relationships with its paying subscribers and with prospective business opportunities.  Because seats.aero's functionality depends in part on access to Aeroplan redemption data, Air Canada's restrictions have impaired Localhost's ability to deliver the level of service expected by its users and to grow its business relationships.

43.     As a result of Air Canada's restrictions, paying subscribers of seats.aero experienced concrete service disruptions affecting Aeroplan search functionality.  For example, on or about April 2025, subscribers were unable to access complete Aeroplan redemption data following Air Canada's implementation of the login restrictions, resulting in incomplete or unavailable search results.  These subscribers reported the issues to Localhost, requested refunds citing inaccurate Aeroplan data and the inability to retrieve Aeroplan results, and cancelled their subscriptions.  Indeed, one subscriber wrote,

- 22 -

███████████████████

█████████████████████████████████████

█████████████████████████████████████

███████████████████████████████████

██████████████████████████████████████

██████████████████████

44.    In another instance, on or about April 2024, subscribers encountered repeated delays and incomplete Aeroplan availability results.  These subscribers cancelled their subscription, which led to lost revenue for Localhost.  For example, one subscriber wrote, ███

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

████████████████████

45.    These examples are illustrative and not exhaustive; Localhost has experienced numerous additional instances of subscriber dissatisfaction, cancellations, refund requests after Air Canada implemented technical restrictions.  These instances led to lost subscription revenue and related business harm.

46.    These incidents are representative of a broader pattern.  Following Air Canada's escalation of access restrictions beginning in or about May 2023 and continuing thereafter, Localhost received multiple complaints from subscribers reporting incomplete, delayed, or unreliable Aeroplan search results.  During this period, Localhost experienced an increase in refund requests and subscription cancellations attributable to diminished Aeroplan functionality.

47.    These disruptions occurred in close temporal proximity to Air Canada's implementation and escalation of access restrictions, including login requirements and technical

restriction measures.  The resulting inability of seats.aero to consistently access Aeroplan redemption data materially impaired core aspects of the service beyond ordinary variability, leading to subscriber dissatisfaction and lost business.

48.     Air Canada's conduct also interfered with Localhost's prospective business relationships.  On or about July 2023, Localhost interacted with an organizer of the Travel Summit regarding a potential sponsorship opportunity.  The Travel Summit is an airline industry conference attended by airlines, travel technology companies, and other industry participants. Sponsorship of the conference would have provided Localhost with a concrete opportunity to promote its services, engage with potential partners and customers, and expand its business.

49.     Localhost took steps to participate in the conference, including confirming interest and coordinating with the organizers in December 2023, reflecting a reasonable expectation that the associated business opportunities would materialize.

50.     Upon information and belief, on or around December 2023, Air Canada communicated with the conference organizers and conveyed that it did not want Localhost to participate in or sponsor the event.  Following that communication, the organizers refused Localhost's participation.  As a result, Localhost was unable to proceed with the opportunity.

51.     Air Canada's intervention directly caused the loss of this business opportunity. The organizers' decision to exclude or limit Localhost occurred after and in response to Air Canada's communication and would not have occurred absent that interference.

52.     Air Canada's conduct also deterred other prospective business relationships.  In or about November 2025, a prospective partner expressed strong interest in Localhost's technology and platform and indicated that it was "impressive."  However, the prospective partner stated

that, because of Localhost's ongoing dispute and litigation with Aeroplan, it was unwilling to proceed, citing concern with the associated risks of engaging under those circumstances.

53.    Upon information and belief, the prospective partner's decision was influenced by Air Canada's enforcement actions and litigation, which created perceived legal and commercial risk associated with engaging with Localhost.

54.    The foregoing examples are illustrative and not exhaustive.  Numerous additional prospective partners, customers, and industry participants declined to initiate or proceed with business relationships due to concerns arising from Air Canada's conduct, including the perceived legal, operational, and commercial risks associated with engaging with Localhost.  Air Canada knew or should have known that its conduct would create such risk and deter third parties from entering into business relationships with Localhost.

55.    Through these actions, Air Canada interfered not only with Localhost's ability to perform for its existing customers, but also with its ability to develop new relationships, expand its business, and compete on the merits in the marketplace.

**F.    Air Canada's Exclusionary Conduct Has No Legitimate Justification and Entrenches Its Monopoly Position**

56.    Air Canada has suggested that its restrictions on access to Aeroplan redemption data may relate to concerns regarding infrastructure burdens.  To the extent such justifications are asserted, Air Canada's conduct is not reasonably tailored to achieve those objectives and instead operates to impair competition in the Aeroplan Award-Search Tools market.

57.    Independent tools such as seats.aero use measured and controlled access practices designed to minimize any potential burden on Air Canada's systems, including limited request rates, caching to avoid duplicate queries, and structured data retrieval.  These practices are

consistent with efficient use of publicly available data and do not impose disproportionate demands on Air Canada's infrastructure.

58.    Air Canada has not implemented neutral, generally applicable measures designed to manage system load while preserving access.  Instead, ███████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████

59.    Less restrictive alternatives are readily available to address any legitimate operational concerns, including reasonable rate limiting that would allow independent tools to operate without impairing system performance.  Air Canada has declined to implement such alternatives.

60.    The breadth and structure of Air Canada's restrictions are therefore disproportionate to any legitimate objectives and have the effect of restricting access to Aeroplan redemption data beyond what is necessary to protect its systems.  As a result, these measures function to raise rivals' costs, degrade the functionality of competing tools, and limit effective competition in the Aeroplan Award-Search Tools market.

61.    The timing and escalation of these measures, following the emergence and increasing adoption of independent award-search tools, further demonstrate that Air Canada's conduct is directed at suppressing competitive threats rather than addressing neutral operational concerns.

---

[5] Allegations regarding "contract," "contracts," or "contractual" as it relates to antitrust violations are made to the extent that the Court finds that a contract exists based on Terms of Use.

## ADDITIONAL FACTUAL ALLEGATIONS RELEVANT TO LOCALHOST'S ANTITRUST COUNTERCLAIMS

### THE RELEVANT MARKET

**A.    Relevant Product Market**

62.    The relevant product market is the market for tools that facilitate the search and display of Aeroplan redemption data (the "Aeroplan Award-Search Tools market").  This is a distinct market in which entities provide consumers with the ability to efficiently identify, compare, and evaluate redemption opportunities using Aeroplan loyalty points.

63.    This market depends on a distinct and essential input: Aeroplan redemption data, including seat availability, dynamic pricing in points, and routing options.  Air Canada exclusively owns and controls this data through its operation of the Aeroplan program.  There is no practical alternative source from which competitors can obtain comprehensive, real-time Aeroplan redemption data.

64.    Aeroplan Award-Search Tools constitute a distinct antitrust market because no reasonably interchangeable substitutes exist for consumers seeking to redeem Aeroplan points efficiently, including tools associated with other loyalty programs or general travel search services.  Aeroplan points are a non-fungible currency that may be redeemed only through the Aeroplan program.

65.    Consumers holding Aeroplan points are effectively locked into the Aeroplan ecosystem because those points are non-fungible and must be redeemed within the program. Once acquired, Aeroplan points cannot be converted into alternative loyalty currencies or used outside the Aeroplan program.  This creates substantial switching costs, as consumers who have accumulated Aeroplan points cannot replicate those balances or benefits in alternative programs without material economic loss.

- 27 -

66.     As a result of these switching costs, when access to efficient Aeroplan search functionality is degraded, consumers do not substitute to alternative loyalty programs or to cash purchases.  Instead, they remain within the Aeroplan ecosystem and incur increased search costs in order to utilize their existing Aeroplan points.  This behavior reflects low cross-elasticity of demand between Aeroplan-specific search tools and other travel-search options and demonstrates the absence of reasonable substitutes within the relevant market.

67.     Other independent award-search tools rely on the same underlying data and are subject to the same restrictions imposed by Air Canada.  As a result, these tools are similarly constrained in their ability to access complete and reliable information and do not provide effective competitive alternatives.

68.     Likewise, airline-operated interfaces operated by airlines other than Air Canada are not substitutes because consumers who have accumulated Aeroplan points must redeem through Aeroplan.  Further, other loyalty award programs use different loyalty currencies.

69.     A hypothetical monopolist controlling Aeroplan Award-Search Tools, or the underlying Aeroplan redemption data necessary to supply such tools, could profitably impose a small but significant and non-transitory increase in price, or degrade product quality (including search functionality, transparency, and speed), without losing sufficient users to render such conduct unprofitable.

### B.     Air Canada Possess Market Power, Monopoly Power, and a Dangerous Probability of Obtaining Monopoly Power in the Relevant Market

70.     Air Canada possesses monopoly power in the Aeroplan Award-Search Tools market through its exclusive ownership and control of Aeroplan redemption data, which is a necessary and non-replicable input for any firm seeking to compete in that market.  This control

- 28 -

enables Air Canada to restrict, condition, or deny access in ways that impair competition and gives it the ability to exercise market power.

71.     This control allows Air Canada to exclude competition by restricting access to Aeroplan data through contractual, technical, and login-based barriers.  Because competitors cannot obtain equivalent data from any alternative source, Air Canada's restrictions foreclose effective competition.

72.     Barriers to entry in the Aeroplan Award-Search Tools market are high and durable.  New entrants cannot independently generate Aeroplan redemption data, reverse engineer it at scale without access, or otherwise obtain it.

73.     Air Canada's market power is demonstrated by its ability to impose exclusionary restrictions without losing users to alternative products.  Despite degrading access to Aeroplan search functionality for independent award-search tools, consumers remain within the Aeroplan ecosystem due to the non-fungible nature of Aeroplan points and the switching costs described above.

74.     Air Canada's market power is further reflected in its ability to control the level of transparency available to consumers regarding redemption pricing and availability.  By limiting access to independent award-search tools that enhance transparency, Air Canada can reduce competitive pressure on its redemption pricing and availability practices.

75.     Air Canada's monopoly power is durable because it arises from structural ownership of the Aeroplan platform and its associated data.  This power cannot be eroded by innovation, entry, or competition absent access to Aeroplan redemption data.

76.     Air Canada's exclusionary conduct reflects its specific intent to monopolize the Aeroplan Award-Search Tools market.  Air Canada has knowingly restricted access to Aeroplan

- 29 -

redemption data while deploying technical barriers and enforcing overly restrictive contractual provisions that impair the functionality of independent award-search tools.  These actions are directed at suppressing competing services that provide enhanced search functionality and transparency to consumers.  Air Canada's conduct demonstrates a deliberate effort to exclude competitors and consolidate control over Aeroplan search functionality.

77.     Air Canada's conduct also creates a dangerous probability that it will obtain or maintain monopoly power in the Aeroplan Award-Search Tools market.  By restricting access to Aeroplan redemption data, degrading the functionality of independent award-search tools, and deterring actual and potential rivals from participating in the market, Air Canada is reducing competitive alternatives and steering consumers toward its own search interface.  Given the absence of reasonable substitutes, the high barriers to entry, and the demonstrated impact of Air Canada's conduct on rival award-search tools and market participation, there is a substantial likelihood that competition in this market will be further diminished or eliminated.

## C.     Geographic Markets

78.     The relevant geographic market is at least the United States and Canada, where Aeroplan members are concentrated and where Air Canada actively markets and administers the Aeroplan program.

79.     Competition in the Aeroplan Award-Search Tools market is not meaningfully segmented by geography.  Aeroplan redemption data is controlled centrally by Air Canada and is subject to uniform contractual, technical, and login-based restrictions that apply regardless of a user's location.  As a result, independent award-search tools face the same constraints and competitive conditions across regions.

80.     To the extent a broader geographic market is considered, the same centralized control over Aeroplan redemption data imposes uniform constraints on competition globally,

such that independent award-search tools and consumers face substantially similar conditions regardless of location and Air Canada's anticompetitive conduct has worldwide effects.

## AIR CANADA'S OVERALL SCHEME

81.     As described below, Air Canada has engaged in a pattern of exclusionary conduct designed to impair independent award-search tools and limit effective competition in the Aeroplan Award-Search Tools market.  This conduct includes restricting access to Aeroplan redemption data, deploying technical barriers that interfere with data retrieval, and enforcing overly restrictive contractual provisions that deter and penalize the operation of independent tools.

82.     These interrelated practices operate together to raise rivals' costs, degrade the functionality and reliability of competing services, and limit the ability of independent award-search tools to compete on the merits.  Air Canada has impaired the development and effectiveness of independent award-search tools, thereby reducing competitive pressure and limiting transparency for consumers.

83.     The effects of Air Canada's conduct are not limited to any single mechanism. Rather, they reinforce one another and collectively distort competition in the Aeroplan Award-Search Tools market by diminishing the quality, availability, and innovation of competing services.

A.      **Air Canada's Terms of Use Improperly Restrict Users, Including Localhost**

84.     Air Canada's Terms of Use are a component of its scheme to inhibit innovation and competition in the Aeroplan Award-Search Tools market.  The Terms of Use prohibit any direct or indirect access or use of the website through "any manual process or any automatic, electronic or technical device," including "automated scripts, robots, crawls, screen scrapers, web 'bots', deep-links, indexes, spiders, click-spams, macro programs," or any other technology

- 31 -

to "data mine," "screen scrape," "data process; access, extract, copy, distribute, aggregate, or acquire information; generate impressions or clicks; input or store information; search or generate searches; or manipulate or monitor any portion or content of the website."[6]  The Terms of Use also prohibit creating derivative works from or otherwise copying, licensing, displaying, publishing, performing, recreating, reproducing, selling, transferring, transmitting, or otherwise distributing, modifying, editing, adding to, mirroring, framing, re-rendering, truncating, injecting, filering or changing the order of any information available from the website.  The Terms of Use also prohibit using the website in any manner that burdens infrastructure or interferes with normal functioning; and prohibit circumventing measures designed to prevent such access or use.

85.     These restrictions are facially overbroad, anticompetitive, and unenforceable.  By prohibiting virtually all automated and even manual access, Air Canada's Terms of Use prevent independent innovators from developing tools that could enhance consumer access to Aeroplan redemption information and improve search efficiency.  They also restrict consumers from employing third-party tools that could improve their ability to search and interact with available awards.  The cumulative effect is to lock consumers into Air Canada's own limited interface and to suppress competitive innovation.

86.     These Terms of Use operate collectively across a network of users to restrict the use and development of independent award-search tools; they operate collectively to restrain competition by imposing materially identical restrictions across a broad set of users.

---

[6] These restrictions are so expansive that they purport to cover virtually all use of Air Canada's website and mobile application because they forbid access through "any manual or automatic" means to acquire information.  As written, the Terms of Use would capture even standard consumer interactions, rendering lawful use impossible.

87.    There is no legitimate business justification for these Terms of Use.  The data at issue is public and visible to any consumer through Air Canada's own site.  Air Canada uses the Terms of Use not to protect its infrastructure but to preserve its control over redemption data and deter competitive entry.

88.    Air Canada knows that innovation in searching and accessing its content could challenge its dominance in the Aeroplan Award-Search Tools market.  Thus, it imposes overly restrictive Terms of Use to deter the development of tools that could compete with its services.

89.    Even if the challenged Terms of Use were not facially anticompetitive, Air Canada has implemented and enforced them for the specific purpose of suppressing competition, causing ongoing anticompetitive effects in the Aeroplan Award-Search Tools market.

**B.    Air Canada Deployed Technical Barriers That Impair Independent Award-Search Tools**

90.    

91.    These technical measures interfere with the ability of independent award-search tools to access Aeroplan data reliably and at scale.  As a result, such tools experience reduced data availability, delayed updates, incomplete search results, and increased operational instability.

92.    Air Canada's implementation of these measures has been dynamic and iterative. This pattern has increased the costs, complexity, and uncertainty associated with operating independent award-search tools.

**C.    Air Canada Withdrew and Restricted Access to Public Aeroplan Redemption Data**

93.    Since at least the inception of the online Aeroplan awards program in or around May 2010, Aeroplan redemption data, including flight availability, pricing, and routing information, was historically publicly available through Air Canada's website and related interfaces.

94.    Independent developers, including Localhost, reasonably relied on this longstanding public access in developing tools that enhanced search efficiency and consumer transparency.

95.    This access also benefited Air Canada.  By directing users to Air Canada's booking platform, seats.aero and other independent award-search tools increased customer traffic, engagement, and bookings that generated revenue for Air Canada.

96.    However, in or around April 2025, Air Canada placed previously accessible Aeroplan redemption data behind a login requirement, requiring account authentication to view information that had historically been available without restriction.

97.    This change eliminated an established avenue through which independent award-search tools could access Aeroplan data and represented a departure from Air Canada's voluntary prior course of conduct.  The timing of this restriction followed the emergence and growth of independent award-search tools that provided enhanced transparency and functionality to consumers.

98.    Air Canada's restrictions have eliminated a source of consumer traffic and booking activity that had previously benefited its business.  Independent award-search tools, including Localhost, helped consumers find available award flights and directed them to Air Canada's website to complete bookings.  With these tools impeded, fewer consumers are able to

identify and pursue Aeroplan redemption options, resulting in fewer bookings and lost revenue that Air Canada would otherwise have earned.  In doing so, Air Canada sacrificed these short-term economic benefits in order to restrict competition from independent award-search tools.

99.    Air Canada's decision to terminate this established and beneficial course of access was driven by a desire to exclude independent award-search tools and maintain control over how Aeroplan redemption options are presented to consumers.

### D.    Aeroplan Redemption Data Is an Essential Input for Competition

100.    Aeroplan redemption data also constitutes an essential facility for purposes of competition in this market because it is a necessary upstream input for competing in the downstream Aeroplan Award-Search Tools market.  Without access to sufficiently complete and timely data, independent award-search tools cannot provide meaningful search or comparison functionality.

101.    Air Canada controls this essential facility through its operation of the Aeroplan program.  Air Canada has denied or substantially restricted access to this essential facility by imposing contractual, technical, and access-control measures that limit or prevent independent tools from obtaining Aeroplan redemption data necessary to compete.

102.    Air Canada participates in the downstream market through its own consumer-facing search tools while restricting or denying upstream access to Aeroplan redemption data through contractual, technical, and access-control measures, thereby impairing independent tools' ability to compete.

103.    Providing access to Aeroplan redemption data is feasible.  Air Canada has historically made this information available through its own consumer-facing interfaces and continues to generate and deliver such data to users through its systems.

104.    By denying access to this essential facility, Air Canada has impaired the ability of independent award-search tools to compete on the merits and has foreclosed effective competition in the Aeroplan Award-Search Tools market.

**E.      Air Canada's Conduct Raises Rivals' Costs and Degrades Competition**

105.    The combined effect of Air Canada's contractual restrictions, technical barriers, and data-access limitations is to raise the costs of operating independent award-search tools and to degrade their functionality.  Independent developers must expend substantial resources to adapt to compromised data and mitigate disruptions.

106.    These increased costs reduce the ability of independent tools to compete on price, invest in innovation, and deliver reliable, real-time, and comprehensive search functionality.  As a result, competing services provide less complete, less accurate, and less timely information than they would in a but-for competitive environment.

**F.      Air Canada's Conduct Substantially Forecloses Effective Competition**

107.    Air Canada's conduct has substantially foreclosed effective competition in the Aeroplan Award-Search Tools market.  By restricting access to the essential data required to provide full functionality, Air Canada has limited the ability of competing tools to offer comparable services.

**G.      Air Canada's Proffered Justifications Are Pretextual and Disproportionate**

108.    Air Canada has asserted that its restrictions are necessary to protect system integrity and prevent infrastructure burdens.  Those justifications are pretextual and disproportionate to the conduct at issue.

109.    Independent tools such as seats.aero use controlled access methods, including limited request rates and caching, to minimize system impact.  These practices are consistent with efficient use of publicly available data and do not impose unreasonable burdens.

110.    Less restrictive alternatives are readily available, including reasonable rate limiting.  Air Canada has declined to adopt such measures and instead has implemented restrictions that impair competition.

### H.    Air Canada's Conduct Reflects a Strategy to Suppress Competition

111.    The timing and nature of Air Canada's actions demonstrate a deliberate strategy to suppress competition from independent award-search tools.  Air Canada escalated its restrictive measures following the emergence and growing popularity of tools such as seats.aero.

112.    Rather than competing by improving its own offerings, Air Canada has chosen to restrict access to the inputs necessary for rivals to compete, thereby preserving its control over Aeroplan redemption data.

113.    This conduct represents exclusionary behavior designed to maintain Air Canada's dominance in the Aeroplan Award-Search Tools market at the expense of competition and consumers.

### LOCALHOST HAS SUFFERED AND WILL SUFFER ANTITRUST INJURY

114.    As a direct and proximate result of Air Canada's anticompetitive conduct, competition in the Aeroplan Award-Search Tools market has been substantially lessened, causing injury to consumers as well as to Localhost.

115.    Air Canada's conduct has materially impaired the ability of independent award-search tools to compete effectively.  By restricting access to Aeroplan redemption data, imposing technical barriers, and introducing login requirements, Air Canada has degraded the functionality, reliability, and completeness of independent award-search tools that rely on such data.

116.    As a result of these restrictions, independent award-search tools, including Localhost's seats.aero, are unable to provide consumers with consistent real-time access to

- 37 -

comprehensive Aeroplan redemption availability and pricing.  These limitations result in incomplete, delayed, or less accurate search results, reducing the effectiveness of these tools compared to a competitive environment.

117.    Air Canada's conduct has also increased the operational costs and uncertainty faced by Localhost and other independent award-search tools.  Developers must devote substantial engineering resources to respond to shifting technical measures, mitigating access disruptions, and attempting to maintain data continuity.  These increased costs reduce the ability of independent firms to compete on price, invest in innovation, and expand their services.

118.    These increased costs and reduced functionality raise rivals' costs and distort competition in the Aeroplan Award-Search Tools market.  Competitors are uniformly constrained by Air Canada's conduct, resulting in diminished competitive pressure and reduced incentives to innovate.

119.    These impairments to competition have directly harmed consumers.  In the absence of fully functional independent award-search tools, consumers must rely on less efficient and more limited search methods, including Air Canada's interface, which does not provide equivalent flexibility, efficiency, or comparative functionality.  Consumers are therefore required to perform repetitive, manual searches across dates and routes, increasing transaction costs, and reducing the effective usability of Aeroplan points.

120.    These harms are reflected in the actual experience of consumers who are forced to rely on Air Canada's interface.  Air Canada's website and mobile application require users to conduct repetitive, sequential searches across individual routes and dates, rather than allowing broad or flexible queries.  For example, a consumer seeking to identify Aeroplan award

availability over a range of dates must manually input each date and route combination, review results one query at a time, and then repeat the process for alternative itineraries.

121.    In addition, Air Canada's interface does not permit users to efficiently compare redemption options across multiple dates, routes, or partner airlines in a single view, and does not provide the same filtering, sorting, or aggregation capabilities available through independent tools.  As a result, consumers must expend significantly more time and effort to locate suitable award travel options, often missing efficient routings or better redemption values that would be readily identified using independent search tools.  These limitations materially increase search costs, reduce transparency, and diminish the practical value of Aeroplan points.

122.    The reduction in transparency and comparability caused by Air Canada's conduct also weakens competitive constraints on redemption pricing and availability.  Independent award-search tools previously enabled users to identify optimal redemption opportunities and to observe pricing patterns across dates and routes.  By impairing these tools, Air Canada reduces the likelihood that unfavorable pricing or reduced availability will be detected or avoided, to the detriment of consumers.

123.    Air Canada's conduct has further suppressed innovation in the Aeroplan Award-Search Tools market.  Independent developers, including Localhost, have curtailed or delayed product enhancements, feature development, and commercial partnerships due to uncertainty regarding continued access to essential data inputs.  This reduction in innovation represents a decrease in the quality and diversity of services available to consumers.

124.    Collectively, these effects constitute harm to the competitive process, including reduced output of effective tools, diminished quality and functionality of existing services,

- 39 -

increased costs to consumers seeking to redeem Aeroplan points, and reduced innovation in the market.

125.    Localhost has suffered antitrust injury as a direct and foreseeable result of Air Canada's conduct, including lost revenue, diminished goodwill, increased operational costs, and impaired ability to compete on the merits.  These injuries flow directly from the same anticompetitive effects that have harmed competition and consumers in the Aeroplan Award-Search Tools market.

126.    The injuries alleged herein are of the type the antitrust laws were designed to prevent and are the direct result of Air Canada's exclusionary and anticompetitive conduct.

## CAUSES OF ACTION

### COUNT I
### (Monopolization Under Section 2 of the Sherman Act, 15 U.S.C. § 2)

127.    Localhost repeats and realleges the preceding paragraphs of its Counterclaims as if fully set forth herein.

128.    Air Canada's conduct constitutes unlawful monopolization under Section 2 of the Sherman Act, 15 U.S.C. § 2.

129.    Section 2 of the Sherman Act prohibits, *inter alia*, the willful monopolization of any part of the trade and commerce among the States, as well as attempts to monopolize any part of the trade and commerce among the States.

130.    Air Canada has monopoly power in the Aeroplan Award-Search Tools, and it has maintained this power through anticompetitive conduct.

131.    Air Canada has engaged in an anticompetitive scheme, including imposing improperly restrictive Terms of Use on users, deploying discriminatory technical barriers under the pretext of infrastructure burden, gating previously public Aeroplan redemption data behind

login requirements, and denying or restricting access to Aeroplan redemption data as an essential facility, to acquire, enhance, and/or maintain its monopoly power in the Aeroplan Award-Search Tools market in violation of Section 2 of the Sherman Act.

132. Each aspect of the overall scheme described above is anticompetitive conduct that itself violates the antitrust laws. In addition, each act, in combination with one or more other aspects of the overall scheme, has the purpose and effect of furthering the overall scheme to maintain Air Canada's monopoly power in the Aeroplan Award-Search Tools market, and the resulting synergistic effects of the scheme independently violate the antitrust laws.

133. Air Canada's anticompetitive scheme has given it the power to control pricing and exclude competition in the Aeroplan Award-Search Tools market.

134. Air Canada's willful and wrongful maintenance and/or extension of its monopoly power is not the result of growth and development as a result of innovation, business acumen, or by virtue of offering a superior product. Rather, it is a direct consequence of Air Canada's intentional, exclusionary conduct in connection with its anticompetitive scheme.

135. There is no efficiency-enhancing, procompetitive justification for Air Canada's behavior.

136. Air Canada's anticompetitive scheme alleged herein has injured (and unless enjoined, will continue to injure) consumers and competitors in the Aeroplan Award-Search Tools market through decreased output, reduced choice, reduced innovation, and other anticompetitive effects including raising additional barriers to entry in the Aeroplan Award-Search Tools market.

137. By reason of Air Canada's unlawful monopolization of the Aeroplan Award-Search Tools market, Localhost has been injured in its business and property.

- 41 -

138.    Unless enjoined and declared illegal, Air Canada's unlawful conduct will continue, Localhost will continue to sustain injury and damages, and competition will continue to decrease in the Aeroplan Award-Search Tools market.

139.    The injuries to Localhost, other competitors, consumers, and competition described herein are the types of injuries that the antitrust laws are designed to prevent because they are a direct result of Air Canada's illegal, anticompetitive scheme to exclude competitors from the market.

140.    Localhost is entitled to injunctive relief and treble damages.

## COUNT II
### (Attempted Monopolization Under Section 2 of the Sherman Act, 15 U.S.C. § 2)

141.    Localhost repeats and realleges the preceding paragraphs of its counterclaims as if fully set forth herein.

142.    Air Canada's conduct constitutes unlawful monopolistic conduct under Section 2 of the Sherman Act, 15 U.S.C. § 2.

143.    Section 2 of the Sherman Act prohibits attempted monopolization of any part of the trade and commerce among the States.

144.    Air Canada has engaged in anticompetitive and exclusionary conduct directed at the Aeroplan Award-Search Tools market, including imposing restrictive Terms of Use, deploying technical barriers, restricting access to Aeroplan redemption data, and denying or restricting access to Aeroplan redemption data as an essential facility.

145.    Air Canada has acted with specific intent to monopolize the Aeroplan Award-Search Tools market.

146.    Air Canada's conduct has deterred existing and potential competitors, degraded the functionality of independent tools, and reduced competitive alternatives available to consumers.

147.    Air Canada's conduct creates a dangerous probability that it will obtain or maintain monopoly power in the Aeroplan Award-Search Tools market.

148.    The likelihood of monopolization is supported by Air Canada's exclusive control over a necessary input, the absence of reasonable substitutes, high barriers to entry, and the demonstrated effect of its conduct in impairing competition and discouraging market participation.

149.    By reason of Air Canada's attempted monopolization, Localhost has been injured in its business and property.

150.    Unless enjoined, Air Canada's unlawful conduct will continue, causing ongoing harm to Localhost and competition.

151.    The injuries alleged are of the type the antitrust laws were intended to prevent.

152.    Localhost is entitled to injunctive relief and treble damages.

### COUNT III
### (Unreasonable Restraint of Trade in Violation of Sherman Act § 1, 15 U.S.C. § 1)

153.    Localhost repeats and realleges the preceding paragraphs of its counterclaims as if fully set forth herein.

154.    Air Canada's conduct constitutes an unreasonable restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

155.    Section 1 of the Sherman Act (15 U.S.C. § 1) prohibits, *inter alia*, (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) which is intended to harm or restrain trade or commerce among the several States, or with foreign nations;

- 43 -

(3) which actually injures competition; and (4) that harms the plaintiff as a result of the anticompetitive aspect of the practice under scrutiny.

156.   Air Canada and Aeroplan are corporations engaged in interstate and foreign trade and commerce.

157.   Air Canada's Terms of Use with each of its users are contracts between distinct entities that Air Canada has entered into for the purpose of restraining trade in the Aeroplan Award-Search Tools market.

158.   These contracts are not isolated or individualized arrangements, but rather constitute a common set of materially identical contractual provisions imposed across a network of users as a condition of accessing Aeroplan services.  These contracts collectively restrain the conduct of a broad set of market participants, including both developers and consumers.

159.   Collectively, these contractual provisions operate as a network of parallel restraints that restrict independent award-search tools' ability to access Aeroplan data and prevent users from utilizing such tools, thereby limiting competition in the Aeroplan Award-Search Tools market.

160.   Air Canada has market power in the Aeroplan Award-Search Tools market.

161.   There is no efficiency enhancing, procompetitive justification for Air Canada's challenged Terms of Use.

162.   Air Canada's improperly restrictive Terms of Use have injured (and unless enjoined, will continue to injure) consumers and competitors in the Aeroplan Award-Search Tools market through decreased output, reduced choice, reduced innovation, and other anticompetitive effects including raising additional barriers to entry in the Aeroplan

Award-Search Tools market. These effects impact consumers across the Aeroplan Award-Search Tools market.

163.    By reason of Air Canada's unlawful Terms of Use, Localhost has lost potential business partners and been injured in its business and property. As a direct result of these contractual restrictions, these restraints have harmed, and threaten to harm, Localhost by inhibiting seats.aero from offering its competitive display product.

164.    Air Canada has engaged in anticompetitive conduct by imposing, in its agreements with users, restrictive terms of use that limit access to Aeroplan data, thereby restraining trade in the Aeroplan Award-Search Tools market.

165.    Unless the Air Canada's unlawful Terms of Use are enjoined and declared illegal, Localhost will continue to sustain injury and damages, and competition will continue to decrease in the Aeroplan Award-Search Tools market.

166.    The injuries to Localhost, other competitors, consumers, and competition described herein are the types of injuries that the antitrust laws are designed to prevent because they are a direct result of Air Canada's unlawful agreements imposed on each of its users.

167.    Localhost is entitled to injunctive relief and treble damages.

## COUNT IV
### (Tortious Interference with Contractual Relations)

168.    Localhost repeats and realleges the preceding paragraphs of its counterclaims as if fully set forth herein.

169.    Air Canada has tortiously interfered with Localhost's contractual relations in violation of the common law of Delaware.

170.    Localhost maintains valid and enforceable subscription agreements with its paying users, pursuant to which users obtain access to seats.aero's award-search functionality

- 45 -

and related features, including certain expanded search capabilities available through paid subscriptions.

171.    Air Canada knew of these contractual relationships.  Air Canada monitored seats.aero and was aware that Localhost provided Aeroplan-related functionality to paying subscribers whose continued use depended on the ability of the service to access and display Aeroplan redemption data.

172.    Air Canada intentionally engaged in conduct that interfered with Localhost's performance of these agreements, including restricting access to Aeroplan redemption data through enforcement of its Terms of Use, technical restriction measures, and login requirements.

173.    For example, on or about April 2025, paying subscribers of seats.aero experienced degradation in Aeroplan search results following Air Canada's implementation of login restrictions.  During this period, these subscribers were unable to retrieve complete or reliable Aeroplan redemption availability data through seats.aero, resulting in incomplete or unavailable search results.  As a direct consequence of this service disruption, these subscribers contacted Localhost to report the issue and subsequently requested a refund and cancelled the subscription. Localhost issued a refund and lost the associated subscription revenue.

174.    In another instance, on or about April 2024, subscribers encountered repeated delays and incomplete Aeroplan availability results.  These subscribers cancelled their subscription, which led to lost revenue for Localhost.

175.    The foregoing examples are illustrative and not exhaustive.  Localhost has experienced numerous additional instances in which paying subscribers encountered degraded Aeroplan functionality attributable to Air Canada's conduct, resulting in subscriber dissatisfaction, refund requests, cancellations, and lost subscription revenue.  These incidents

reflect a broader and ongoing pattern of disruption to Localhost's contractual relationships with its subscribers.

176. These disruptions were not isolated incidents. Following Air Canada's implementation and escalation of access restrictions and continuing thereafter, Localhost received multiple complaints from paying subscribers reporting incomplete, delayed, or unreliable Aeroplan search results. During this period, Localhost experienced an increase in refund requests and subscription cancellations attributable to the diminished functionality of Aeroplan search results caused by Air Canada's conduct.

177. The service disruptions and resulting customer losses occurred in close temporal proximity to Air Canada's implementation of its access restrictions, including the login restrictions and technical barriers, and were directly caused by the resulting inability of seats.aero to reliably access Aeroplan redemption data. Air Canada knew or should have known that restricting access to this data would impair the functionality of independent tools and interfere with Localhost's ability to fulfill its contractual obligations to subscribers.

178. Air Canada's conduct has not only resulted in specific subscriber cancellations, but has also caused broader and ongoing harm to Localhost's business by negatively impacting subscriber growth, reducing overall customer retention, and diminishing the value and viability of its platform.

179. As a result of these actions, the seats.aero service experienced material degradation in its ability to access and display Aeroplan redemption data, including reduced data availability, incomplete results, and interruptions in search functionality.

180. These disruptions went beyond ordinary limitations and variability, and materially impaired the functionality that subscribers paid to access.

181.    Air Canada knew or should have known that restricting access to Aeroplan redemption data would foreseeably impair the functionality of independent award-search tools, resulting in degraded service performance, customer dissatisfaction, and termination of subscriber agreements.

182.    Air Canada's conduct was a significant factor in causing Localhost to be unable to deliver the level of functionality expected by its subscribers, resulting in cancellations, refund requests, and the loss of subscriber relationships.

183.    Air Canada's interference was intentional and without justification, as its restrictions were not reasonably necessary to protect system integrity and were disproportionate to any legitimate objective.

184.    Air Canada's conduct was willful and undertaken with conscious disregard of the harm to Localhost.

185.    As a direct and proximate result, Localhost has suffered injury, including lost subscription revenue, diminished goodwill, and increased operational costs.

186.    By intentionally interfering with Localhost's performance of its subscription agreements, with knowledge of those agreements, and without justification, Air Canada induced or caused the breach, termination, or disruption of valid contractual relationships between Localhost and its subscribers.  Air Canada's conduct therefore constitutes tortious interference with contractual relations under Delaware common law.

187.    Localhost is entitled to damages in an amount to be determined at trial.

## COUNT V
### (Tortious Interference with Prospective Business Relationships)

188.    Localhost repeats and realleges the preceding paragraphs of its counterclaims as if fully set forth herein.

189.    Air Canada has tortiously interfered with Localhost's prospective business relationships in violation of the common law of Delaware.

190.    Localhost had a reasonable probability of entering into prospective business relationships, including with users, subscribers, partners, and industry participants, based on the ongoing operation and growth of its seats.aero platform.

191.    For example, in or about July 2023, Localhost engaged in discussions to potentially sponsor the Travel Summit, an airline industry conference that facilitates connections among industry participants, partners, and potential customers.  This sponsorship opportunity presented a concrete opportunity for Localhost to develop business relationships and expand its customer base.

192.    Upon information and belief, on or around December 2023, Air Canada communicated with the organizers of the Travel Summit and caused Localhost's participation to be rescinded or materially curtailed.

193.    Localhost also engaged in discussions with prospective partners who expressed interest in Localhost's technology and platform and indicated a willingness to pursue potential collaborations.

194.    In addition, prospective partners who had expressed interest in collaborating with Localhost declined to proceed due to concerns arising from Localhost's dispute and litigation with Air Canada, and the associated risks of engagement.

195.    Air Canada knew or should have known of these prospective business relationships and that Localhost depended on continued access to Aeroplan redemption data and the ability to operate its platform without interference.

196.    Air Canada intentionally interfered with these prospective relationships by restricting access to Aeroplan redemption data, initiating enforcement actions, and engaging in conduct that created perceived legal and commercial risks associated with doing business with Localhost.

197.    The foregoing examples are illustrative and not exhaustive.  Numerous additional prospective partners, customers, and industry participants declined to initiate or proceed with business relationships due to concerns arising from Air Canada's conduct, including the perceived legal, operational, and commercial risks associated with engaging with Localhost. These lost opportunities represent a substantial and ongoing impairment of Localhost's prospective business relationships and anticipated revenue, and reflect Air Canada's tortious interference with those relationships.

198.    Air Canada's conduct has not only resulted in the loss of specific prospective opportunities, but has also caused broader harm to Localhost's business by deterring potential partners and customers, negatively impacting its growth, and impairing its ability to expand its platform.

199.    Air Canada's conduct created foreseeable legal and commercial risk perceptions that directly discouraged prospective partners from entering into business relationships with Localhost.

200.    Air Canada knew or should have known that its conduct would deter such relationships and was a substantial factor in causing these prospective business opportunities to be lost.

201.    Air Canada's interference was without justification.

202.     Air Canada's conduct was willful and undertaken with conscious disregard of the harm to Localhost.

203.     As a direct and proximate result of Air Canada's conduct, Localhost has suffered damages, including lost business opportunities, lost prospective revenue, and harm to its reputation and goodwill.

204.     By intentionally interfering with Localhost's reasonable probability of entering into prospective business relationships, through improper means and without justification, Air Canada caused the loss of identifiable business opportunities and prospective economic advantage.  Air Canada's conduct therefore constitutes tortious interference with prospective business relationships under Delaware common law.

205.     Localhost is entitled to damages in an amount to be determined at trial.

### COUNT VI
### (Unfair Competition)

206.     Localhost repeats and realleges the preceding paragraphs of its counterclaims as if fully set forth herein.

207.     Localhost had a reasonable expectation of entering into valid business relationships with users, subscribers, partners, and industry participants through the continued operation and growth of its seats.aero platform.

208.     Air Canada interfered with these expectancies by engaging in conduct designed not merely to compete, but to prevent others from dealing with Localhost.

209.     Air Canada employed improper means in doing so, including issuing legal threats, initiating enforcement actions, and implementing targeted technical restrictions in a manner intended to deter third parties from engaging with Localhost.

210.    Air Canada also took affirmative steps to interfere with Localhost's relationships with third parties, including communicating with industry participants to discourage Localhost's participation in business opportunities, such as the Travel Summit.

211.    These actions conveyed to market participants that engaging with Localhost carried legal or operational risk, thereby discouraging prospective partners and customers from entering into or continuing business relationships.

212.    The foregoing conduct is illustrative of a broader course of conduct by Air Canada.  Through its actions, Air Canada has interfered with numerous existing and prospective relationships between Localhost and third parties, resulting in lost business opportunities, diminished goodwill, and financial harm.

213.    Air Canada's conduct constitutes intimidation, disparagement, and other wrongful means of competition under Delaware common law.

214.    Air Canada's conduct was willful and undertaken with conscious disregard of the harm to Localhost.

215.    As a direct and proximate result of this conduct, Localhost's reasonable expectancies of business relationships were defeated, and Localhost suffered harm, including lost business opportunities, diminished goodwill, and financial injury.

216.    Air Canada's conduct constitutes unfair competition under Delaware common law.  By engaging in conduct designed to exclude Localhost from competing and to deter third parties from doing business with it, Air Canada has wrongfully interfered with the competitive process and caused compensable harm.

217.    Localhost is entitled to damages in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Localhost prays for relief as follows:

A.      That Air Canada takes nothing from its claims for relief;

B.      That Air Canada's complaint be dismissed with prejudice and that Air Canada's requests for relief be denied with prejudice;

C.      That judgment be entered against Air Canada and in Localhost's favor in all respects;

D.      That the Court declare that Air Canada's conduct, as alleged herein, violates Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2;

E.      That the Court declare that Air Canada's conduct, as alleged herein, constitutes tortious interference with Localhost's contractual relations and prospective business relationships and unfair competition under applicable law;

F.      That the Court enter injunctive relief enjoining Air Canada from engaging in the anticompetitive and unlawful conduct alleged herein, including conduct that interferes with competition in the Aeroplan Award-Search Tools market;

G.      That judgment be entered in favor of Localhost for treble damages, together with the costs of this action and reasonable attorneys' fees, pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15;

H.      That judgment be entered in favor of Localhost for damages, and where permitted by law, punitive damages, resulting from Air Canada's tortious interference with contractual relations, tortious interference with prospective business relationships, and unfair competition;

I.      That the Court award pre-judgment and post-judgment interest as provided by law; and

- 53 -

J.      That Localhost be awarded such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Localhost requests, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, a trial by jury for all claims and issues so triable.

Respectfully submitted,

**GELLERT SEITZ BUSENKELL & BROWN, LLC**
Attorneys for Defendant
Localhost LLC
Attorneys for Counterclaim Plaintiffs
Localhost LLC and Travel Data Corporation


Dated: May 14, 2026                           */s/ Charles J. Brown*
                                              Charles J. Brown, III (DE 3368)
**OF COUNSEL**:                               **GELLERT SEITZ BUSENKELL & BROWN, LLC**
Ross Weingarten                               1201 N. Orange Street, Suite 300
Vishal C. Gupta                               Wilmington, DE 19801
Lillian Wallace                               Telephone: (302) 425-5800
**STEPTOE LLP**                               cbrown@gsbblaw.com
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 506-3900
rossweingarten@steptoe.com                    *Attorneys for Defendant Localhost LLC*
vgupta@steptoe.com                            *Attorneys for Counterclaim Plaintiffs Localhost LLC*
lwallace@steptoe.com                          *and Travel Data Corporation*

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| AIR CANADA AND AEROPLAN INC., <br><br> Plaintiffs, <br><br> v. <br><br> LOCALHOST LLC, <br><br> Defendant. | Case No. 1:23-cv-01177-GBW <br><br> **JURY DEMAND REQUESTED** <br> ██████████████████ |
| LOCALHOST LLC AND TRAVEL DATA CORPORATION, <br><br> Counterclaim Plaintiffs, <br><br> v. <br><br> AIR CANADA AND AEROPLAN INC., <br><br> Counterclaim Defendants. | |

**LOCALHOST LLC'S AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND
COUNTERCLAIMS OF LOCALHOST LLC AND TRAVEL DATA CORPORATION**

~~**DEFENDANT LOCALHOST LLC's ANSWER**~~

NOW COMES the Defendant, Localhost~~,~~ LLC, ("Localhost"), by and through its counsel, and for its Answer to the Complaint of Plaintiffs Air Canada and Aeroplan, Inc. (the "Air Canada Group") states as follows:

**RESPONSES AS TO THE PARTIES**

1. Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

2. Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

~~3. Admitted.~~

3. Admits that it is a limited liability company, organized and existing under the laws of the State of Delaware, that it previously maintained a registered agent for service of process at 8 The Green, STE A, Dover, Delaware 19901, and further states that it now maintains its registered agent for service of process at Corporation Trust Center, 1209 Orange St, Wilmington, Delaware, 19801.

## RESPONSES AS TO THE NATURE OF THE ACTION[1]

4. Localhost admits only that the Air Canada Group's Complaint includes the listed claims. Localhost denies that the Air Canada Group has stated any plausible claims.

5. Denied as untrue. In addition, Localhost objects to the reference to actions by non-party Ian Carroll being "through Defendant Localhost LLC." This appears to be an attempt by Air

Canada Group to pierce the corporate veil.  As Air Canada has not proffered any basis to believe that Mr. Carroll was acting in his individual capacity in connection with the allegations in this paragraph or, for that matter, anywhere in the complaint, any allegations against Mr. Carroll directly are improper.

### RESPONSES AS TO THE JURISDICTION AND VENUE

6. Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

7. Denied as untrue.  The Terms of Use advanced by the Air Canada Group state "Any dispute is to be submitted to the non-exclusive jurisdiction of the courts in in the judicial district of Calgary, Province of Alberta."  This District is not the proper venue for at least the Air Canada Group's breach of contract allegations.

---

[1] Localhost denies any allegation that may be implied or inferred from the headings of the Air Canada Group's Complaint.

## RESPONSES AS TO AIR CANADA GROUP BACKGROUND

8.      Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

9.      Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

10.      Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

11.      Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

12.      Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

13.      Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

14.      Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

15.      Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict

proof thereof.

16.     Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

## RESPONSES AS TO AIR CANADA GROUP'S ALLEGEDLY FAMOUS TRADEMARKS

17.     Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

18.     Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

19.     Admitted only that Plaintiffs have obtained federal trademark registrations for the trademarks identified in the table.  Otherwise, Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

20.     Admitted.

21.     Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

22.     Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

### RESPONSES AS TO ALLEGED UNLAWFUL ACTS OF DEFENDANT

23.    Localhost again objects to the reference to non-party Ian Carroll.  Mr. Carroll has not extracted any data from the Air Canada Group in his individual capacity.  To the extent that the Air Canada Group has mistakenly substituted Mr. Carroll for Defendant Localhost, Localhost admits only that Localhost lawfully extracts publicly available data from the Air Canada Group and uses it for the Seats.aero website owned by Localhost.  Localhost further admits only that its website correctly states "Seats.aero is the fastest search engine for award travel."  Otherwise, denied as untrue.

24.    Admitted.

25.    Localhost again objects to the reference to non-party Ian Carroll.  Admitted only that the linked webpage includes the quoted phrase.  Otherwise, denied as untrue.

26.    Denied as untrue.  Localhost again objects to the reference to non-party Ian Carroll.  Mr. Carroll has not extracted any data in his individual capacity.  To the extent that Air Canada Group has mistakenly substituted Mr. Carroll for Defendant Localhost, Localhost has never performed any "screen scraping" of Air Canada Group's data.

27.    Denied as untrue.  Localhost again objects to the reference to non-party Ian Carroll.  Mr. Carroll has not extracted any data in his individual capacity.

28.    Localhost again objects to the reference to non-party Ian Carroll.  Mr. Carroll has not extracted any data in his individual capacity.  To the extent that Air Canada Group has mistakenly substituted Mr. Carroll for Defendant Localhost, Localhost admits only that Localhost performs API extraction to obtain publicly available data from the Air Canada Group.  Otherwise, denied as untrue.

29.    Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

30.    Localhost lacks knowledge or information sufficient to form a belief about the

truth of this allegation, which has the effect of a denial and demands strict proof thereof.

31.     Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

32.     Denied as untrue.  Localhost again objects to the reference to non-party Ian Carroll. Mr. Carroll has not extracted any data from the Air Canada Group in his individual capacity.

33.     Admitted only that Localhost performs API extraction to obtain publicly available data from the Air Canada Group, including date, location, and required Aeroplan points for various routes.  Otherwise, denied as untrue.

34.     Denied as untrue.

35.     Admitted only that Localhost uses the phrases "Air Canada" and "Aeroplan" on the Seats.aero website to identify services offered by the Air Canada Group.  Otherwise, denied as untrue.

36.     Admitted.

37.     Denied as untrue.

38.     Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

39.     Denied as untrue.

40.     Denied as untrue.

41.     Localhost again objects to the reference to non-party Ian Carroll. Mr. Carroll has not extracted any data from the Air Canada Group in his individual capacity.  To the extent that the Air Canada Group has mistakenly substituted Mr. Carroll for Defendant Localhost, Localhost admits only that on October 5, 2023, Localhost, through counsel, received a letter from the Air Canada Group alleging violations of the Terms of Use. Counsel for Localhost responded to that letter on October 17, pointing out the deficiencies of the Air Canada Group's

allegations. Localhost further admits only that Mr. Carroll, acting through Localhost, made a post including the quoted language.  Otherwise, denied as untrue.

42.     Denied as untrue.

43.     Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

44.     Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

45.     Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

46.     Localhost again objects to the reference to non-party Ian Carroll.  Mr. Carroll has acted solely through Localhost at all relevant times.  To the extent that the Air Canada Group has mistakenly substituted Mr. Carroll for Defendant Localhost, Localhost admits only that Localhost has continued to legally extract data from the Air Canada Group publicly available website and that Localhost has communicated its operational status to users on Discord. Otherwise, denied as untrue.

47.     Localhost again objects to the reference to non-party Ian Carroll. Mr. Carroll has acted solely through Localhost at all relevant times.  Admitted only that on May 14, 2023 Mr. Carroll, acting through Localhost, made a post on Discord including the quoted language.

Otherwise, Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

48.     Localhost again objects to the reference to non-party Ian Carroll.  Mr. Carroll has acted solely through Localhost at all relevant times.  Admitted only that, on June 1, 2023 Mr. Carroll, acting through Localhost, made a post on Discord including the quoted language. Otherwise, Localhost lacks knowledge or information sufficient to form a belief about the truth

of this allegation, which has the effect of a denial and demands strict proof thereof.

49.     Localhost again objects to the reference to non-party Ian Carroll. Mr. Carroll has acted solely through Localhost at all relevant times. Admitted only that on August 17, 2023 Mr. Carroll, acting through Localhost, made a post on Discord including the quoted language.

50.     Denied as untrue.

### RESPONSES AS TO ALLEGED INJURY TO THE AIR CANADA GROUP

51.     Denied as untrue.

52.     Denied as untrue.

53.     Denied as untrue.

54.     Denied as untrue.

55.     Denied as untrue.

56.     Denied as untrue.

### RESPONSES AS TO AIR CANADA GROUP'S FIRST CLAIM FOR RELIEF

57.     Localhost re-alleges and re-avers its responses to paragraphs 1 through 56 as set forth above.

58.     Denied as untrue.

59.     Denied as untrue.

60.     Denied as untrue.

61.     Denied as untrue.

62.     Denied as untrue.

### RESPONSES AS TO AIR CANADA GROUP'S SECOND CLAIM FOR RELIEF

63.     Localhost re-alleges and re-avers its responses to paragraphs 1 through 62 as set forth above.

64.     Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

65.     Denied as untrue.

66.     Denied as untrue.

67.     Denied as untrue.

68.     Denied as untrue.

### RESPONSES AS TO AIR CANADA GROUP'S THIRD CLAIM FOR RELIEF

69.     Localhost re-alleges and re-avers its responses to paragraphs 1 through 68 as set forth above.

70.     Denied as untrue.

### RESPONSES AS TO AIR CANADA GROUP'S FOURTH CLAIM FOR RELIEF

71.     Localhost re-alleges and re-avers its responses to paragraphs 1 through 70 as set forth above.

72.     Denied as untrue.

### RESPONSES AS TO AIR CANADA GROUP'S FIFTH CLAIM FOR RELIEF

73.     Localhost re-alleges and re-avers its responses to paragraphs 1 through ~~73~~72 as set forth above.

74.     Denied as untrue.

### RESPONSES AS TO AIR CANADA GROUP'S SIXTH CLAIM FOR RELIEF

75.     Localhost re-alleges and re-avers its responses to paragraphs 1 through 74 as set forth above.

76.     Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

77.     Denied as untrue.

### RESPONSES AS TO AIR CANADA GROUP'S ~~SIXTH~~SEVENTH CLAIM FOR RELIEF

78.     Localhost re-alleges and re-avers its responses to paragraphs 1 through 77 as set forth above.

- 9 -

79.    Denied as untrue.

### RESPONSES AS TO AIR CANADA GROUP'S EIGHTH CLAIM FOR RELIEF

80.    Localhost re-alleges and re-avers its responses to paragraphs 1 through 79 as set forth above.

81.    Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

82.    Denied as untrue.

83.    Localhost lacks knowledge or information sufficient to form a belief about the truth of this allegation, which has the effect of a denial and demands strict proof thereof.

84.    Denied as untrue.

### AFFIRMATIVE DEFENSES

Defendant Localhost asserts the following affirmative defenses to the Air Canada Group's Complaint:

1.    The Air Canada Group's claims are barred, in whole or in part, by the doctrines of laches, equitable estoppel, waiver, unclean hands, and/or acquiescence.

2.    The Air Canada Group's breach of contract claims are barred, in whole or in part, by the doctrines of unconscionability, illegality, commercial impracticability, frustration of purpose, want or failure of consideration, and/or lack of mutuality.

3.    The Air Canada Group's breach of contract claims are barred because the Air Canada Group breached the mandatory forum selection clause of the Terms of Use by filing their Complaint in this District. The contract claims should be dismissed based on at least the doctrine of *forum non conveniens*.

4.    The Air Canada Group's trademark claims are barred, in whole or in part, by the doctrines of trademark fair use, particularly the doctrine of nominative fair use.

5.    Localhost reserves the right to amend these affirmative defenses based upon the

- 10 -

course of discovery and proceedings in this action.

## RELIEF REQUESTED

WHEREFORE, Localhost respectfully requests that this Court:

A.          Dismiss the Air Canada Group's complaint in its entirety with prejudice;

B.          Grant judgement in Localhost's favor against the Air Canada Group for damages,

including pre-judgment interest, post-judgement interest, attorney's fees and costs; and

C.          Grant any such other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Defendant demands a trial by jury on all issues so

triable.

December 4, 2023                              Respectfully Submitted,

                              GELLERT SCALI BUSENKELL & BROWN, LLC

                                   By: /s/ Charles J. Brown, III
                                   Charles J. Brown, III (DE 3368)
                                   201 N. Orange Street, Suite 300
                                   Wilmington, DE 19801
                                   Telephone: (302) 425-5800
                                   Email: cbrown@gsbblaw.com

                                   Steven Susser, Esq.
                                   (*pro hac vice* forthcoming)
                                   Michael S. Schwartz
                                   (*pro hac vice* forthcoming)
                                   CARLSON, GASKEY & OLDS, P.C.
                                   400 West Maple Road, Suite 350
                                   Birmingham, MI 48009
                                   P: (248) 988-8360
                                   F: (248) 988-8363
                                   ssusser@cgolaw.com
                                   mschwartz@cgolaw.com

                                   Attorneys for Defendant

## COUNTERCLAIMS

Defendant and Counterclaim Plaintiff Localhost LLC ("Localhost LLC"), together with Counterclaim Plaintiff Travel Data Corporation ("TDC") (collectively, "Localhost"), by and through its undersigned counsel, asserts these counterclaims against Plaintiffs Air Canada and Aeroplan, Inc. (collectively, "Air Canada") as follows:

### AIR CANADA HARMS CONSUMERS AND COMPETITION BY IMPEDING LOYALTY POINT REDEMPTION

1.      These counterclaims challenge Air Canada's misuse of its control over the Aeroplan program to silence emerging competition and keep consumers in the dark.

2.      When Localhost introduced an independent display and search tool that allowed Aeroplan members to see and compare airline point redemption options more easily, consumers responded enthusiastically. Using Localhost's tool, travelers could readily and quickly evaluate the value of their points and identify award seats on multiple dates and routes, in an efficient way not possible on Air Canada's difficult to navigate website and mobile application.

3.      Rather than welcome innovation that benefited its members, Air Canada moved to shut Localhost's tool down by aggressively enforcing restrictive Terms of Use, invoking technical barriers, and walling off data. By restricting access to basic redemption information, Air Canada deprived Aeroplan members of transparency, choice, and the ability to make informed travel decisions, and to save money while doing so.

4.      Air Canada's conduct harms Localhost, consumers, and the competitive process that drives fair value and choice in the travel-awards marketplace. Localhost seeks to restore that competition and ensure that Aeroplan members, not Air Canada's gatekeeping, determine how best to use the awards they have earned.

### NATURE OF COUNTERCLAIMS

5.      Localhost brings antitrust, unfair competition, and interference claims based on

- 12 -

Air Canada's conduct in the market for tools that search and display Aeroplan redemption data (the "Aeroplan Award-Search Tools market"). This case does not challenge Air Canada's operation of its airline or loyalty program as such, but rather its conduct in impairing competition by independent services that enable consumers to efficiently use Aeroplan points in a manner that suits their needs and preferences.

6. Air Canada has engaged in a course of conduct designed to impair competition in this market by restricting access to Aeroplan redemption data, deploying technical measures that interfere with data retrieval, and enforcing overly restrictive contractual provisions that deter the development and operation of independent award-search tools. Because access to Aeroplan redemption data is a necessary input for competing services, these restrictions have the effect of raising rivals' costs, degrading their functionality, and limiting their ability to compete on the merits.

7. Through this conduct, Air Canada has reduced the quality, reliability, and availability of independent award-search tools, diminished innovation, increased the difficulty and cost for consumers to identify and evaluate Aeroplan redemption opportunities, and engaged in conduct that constitutes tortious interference with Localhost's existing and prospective business relationships and unfair competition. Localhost has been directly harmed by this conduct through lost revenue, increased operating costs, and impaired business relationships, and these harms flow from the same anticompetitive effects that injure competition and consumers in the Aeroplan Award-Search Tools market.

## PARTIES

8. Localhost LLC is a limited liability company organized and existing under the laws of the State of Delaware, which maintains a registered agent for service of process at Corporation Trust Center, 1209 Orange St, Wilmington, Delaware, 19801.

9.      TDC is a corporation organized and existing under the laws of the State of Delaware, which maintains a registered office at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware, 19801. ██████████████████████ TDC is added herein pursuant to Federal Rules of Civil Procedure 13(h) and 20(a).

10.     ████████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████

11.     Localhost LLC and TDC each suffered direct injuries arising from Air Canada's conduct.

12.     Upon information and belief, Plaintiff Air Canada is a company organized and existing under the laws of Canada with its headquarters at 7373 Blvd. de la Côte-Vertu West, Montréal, Québec, Canada.

13.     Upon information and belief, Plaintiff Aeroplan Inc. is a company organized and existing under the laws of Canada with its headquarters at 7373 Blvd. de la Côte-Vertu West, Montréal, Québec, Canada.

## JURISDICTION AND VENUE

14.     Localhost brings this action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26, for treble damages, injunctive relief, costs of suit, and reasonable attorneys' fees for violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. This Court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1337.

15.     Localhost also asserts state law claims: (i) for tortious interference with contractual relations; (ii) for tortious interference with prospective business relationships; and (iii) unfair competition. This Court also has supplemental jurisdiction over the state law claims

pursuant to 28 U.S.C. § 1367, and Federal Rule of Civil Procedure 13, because these claims arise out of the same nucleus of operative facts and from the same controversy as Localhost's federal claims.

16.    This Court has personal jurisdiction over Air Canada because Air Canada instituted this litigation in this Court and, therefore, has consented to personal jurisdiction or waived any objection to it.

17.    Venue is proper in this District because, among other reasons, (1) having filed its action in this District, Air Canada is subject to personal jurisdiction in this District and has consented to venue in this District; and (2) as non-residents of the United States, Air Canada may be sued in any district.

## FACTUAL ALLEGATIONS RELEVANT TO LOCALHOST'S COUNTERCLAIMS[2]

### A.    Independent Travel Award-Search and Display Tools Help Consumers Use Their Loyalty Points

18.    Consumers accumulate airline loyalty points with the expectation that they can redeem those points for travel at predictable, reasonable value.  As such, the value consumers derive from loyalty programs depends on the ability to identify available award inventory across dates, cabins, and routes, which is inherently dynamic and time sensitive.  For example, airlines frequently change redemption pricing and seat availability.

19.    However, unlike cash flight data, which is publicly distributed to global distribution systems used by travel agents and online travel agencies, there is no equivalent centralized system for award data.  Consequently, consumers must visit multiple airline websites, run repetitive searches, and manually compare results, which is an inefficient process that discourages redemption and reduces the perceived value of loyalty programs.  For example, Air Canada's website and mobile interface require users to conduct numerous manual, sequential searches across dates and routes, making it difficult to efficiently identify and compare

redemption opportunities.

---

² Localhost LLC asserts these counterclaims without waiving, and expressly preserves, all defenses to Air Canada's claims. Nothing in these counterclaims should be construed as an admission or as inconsistent with Localhost LLC's defenses, all of which are asserted separately. To the extent necessary, Localhost pleads these counterclaims in the alternative and reserves all rights to do so.

20.    Independent travel award-search and display tools ("award-search tools") emerged to solve this problem. They make the process of redeeming points easier and more efficient. Specifically, these tools allow consumers to view, compare, and evaluate award-flight availability and redemption data across airlines and programs. These tools provide efficient search capability, alerts when seats become available, and side-by-side comparisons of redemption options that airlines' interfaces do not offer.

21.    Consumers prefer these award-search tools to plan travel efficiently, to determine whether to redeem points or pay cash, and to maximize the value of their loyalty points. As a result, these tools lower consumers' effective travel costs, increase transparency into program value, and reduce the dissipation of loyalty points that would otherwise expire or go unused. These tools also stimulate competition among airlines by increasing visibility into redemption pricing and availability. The resulting transparency promotes consumer confidence in loyalty programs and drives competitive pressure on airlines to maintain fair redemption values.

22.    Award-search tools obtain public data from airlines through various methods, including accessing application programming interfaces ("APIs") provided by airlines and third-party databases. These APIs allow tools to retrieve real-time information on award availability, pricing, and flight schedules. In some cases, airlines or technology vendors make portions of this data available through standard data-distribution channels. Award-search tools interact with these publicly available systems to collect data that airlines themselves have chosen to make

visible to consumers.

23.     By enabling consumers to actually use their points, award-search tools increase the utility of loyalty programs and encourage continued participation by consumers.

24.     Examples of award-search tools include, but are not limited to, seats.aero, point.me, Roame, PointsYeah, AwardTool, Awayz, Daily Drop, Points Path, AwardLogic, and Cowtool.  These tools expand consumer access to redemption data, but their ability to operate depends on continued access to airline-controlled information.  For example, Cowtool, a non-profit award-search tool that provided functionality relating to Aeroplan redemption data, ceased operations of their award-search functionality after Air Canada initiated its enforcement actions against Localhost.  Upon information and belief, Cowtool's decision to discontinue its services was influenced by the risks associated with Air Canada's enforcement position, including the potential for similar legal or technical restrictions.  This example illustrates the broader effect of Air Canada's conduct on independent tools that rely on access to Aeroplan redemption data.

**B.     Air Canada Uniquely Controls and Limits Aeroplan Redemption Data**

25.     Air Canada is Canada's largest passenger airline, with a market capitalization exceeding $5 billion.[3]  Air Canada is a dominant participant in the North American air-travel markets.  As alleged in the complaint, Air Canada's daily schedule includes up to 400 flights between the United States and Canada, serving 51 U.S. airports.  Its scale and reach give Air Canada substantial influence over airline scheduling, pricing, and consumer access to travel options.

26.     Aeroplan is Air Canada's loyalty-awards program and one of North America's largest airline-loyalty programs.  The program has millions of members who earn points through flights, credit-card purchases, and partner transactions.  Air Canada alone owns and operates Aeroplan.

[3] *Air Canada (AC.TO)*, YAHOO! FINANCE, https://ca.finance.yahoo.com/quote/AC.TO (last visited May 11, 2026).

27.     Aeroplan points constitute an awards currency redeemable solely through Air Canada's Aeroplan program. The redemption data for Aeroplan points, covering seat inventory, dynamic point pricing, and availability, is generated and maintained exclusively by Air Canada. Aeroplan offers a wide range of award routes, travel dates, and partner-airline redemptions, making it one of the more extensive sources of award-flight options available to consumers.

28.     Air Canada is also a founding member of the Star Alliance partnership. Through that alliance, Air Canada markets flights operated by partner carriers and allows Aeroplan members to redeem points for travel on those partners. Even though Aeroplan members may use points for flights operated by Star Alliance partners, the redemption process and all underlying data about pricing, availability, and seat inventory, remain controlled exclusively by Air Canada. The combination of its own network and its alliance relationships enable Air Canada to control a vast inventory of award travel, giving it outsized influence over how consumers earn, view, and redeem Aeroplan points across multiple airlines.

29.     Air Canada's exclusive control over Aeroplan redemption data also gives it significant power over competition. Air Canada uniquely controls the data that defines its redemption value. Without that access, competitors cannot offer consumers meaningful comparisons or alternative tools, and Air Canada retains its ability to control consumer choice. This exclusive control enables Air Canada to determine the level of transparency available to consumers, the extent to which they can make informed, competitive choices about how to use their points, and to dictate the conditions under which independent award-search tools may operate.

**C.     Localhost's seats.aero Empowers Consumers By Making Aeroplan Redemption Data Easier to Access and Search**

- 18 -

30.    Seats.aero is an award-search tool.  Seats.aero, operated by Localhost and founded by Ian Carroll, was designed to help consumers maximize the use of their accumulated credit card points for air travel.  Mr. Carroll, an avid traveler, found it difficult to search for award redemption trips using an airline's website search function.  At 22 years old, he began building a website that would become seats.aero.

31.    Seats.aero aggregates publicly available award-pricing and availability data from twenty-four airlines such as Aeromexico, Air Canada, Air France, Alaska, American, Delta, Emirates, Etihad, JetBlue, Qantas, SAS, United, Virgin Atlantic, and Virgin Australia.  These airlines span all three major alliances, namely, Oneworld, SkyTeam, and Star Alliance.  Among these carriers, Air Canada is the only one to have taken steps to exclude seats.aero.

32.    Using this publicly available data, seats.aero presents award travel options to consumers in a single, searchable interface.  The interface allows users to compare redemption options across airlines instantly, using enhanced search features that most airlines' proprietary systems do not offer.  These features include flexible date-range searches and multi-route filters, and substantially reduce the time required to locate viable award seats.  By redirecting users to the airline's own website for booking, seats.aero also preserves the airline's control over ticketing and payment while expanding consumer choice and market transparency.  For example, in the case of Air Canada, seats.aero directs users to Air Canada's website to complete bookings, thereby facilitating transactions on Air Canada's platform and increasing Air Canada's passenger traffic and associated revenue.  Seats.aero does not represent that it is affiliated with, endorsed by, or operated by Air Canada.

33.    Seats.aero began operations on or around May 2022 and began offering display and search services for Air Canada flights on or around April 2023.  For Air Canada information, Localhost maintains a controlled request rate of about five searches per second, with caching to

prevent duplicative queries.  This approach conserves airline resources while providing consumers with up-to-date information.  Seats.aero further reduces load by tracking only routes with direct or non-stop flights and manually verifying new route requests for operation by an Aeroplan partner, with limited, reviewed exceptions.

34.     Seats.aero has approximately ██████ monthly visitors and has been praised by consumers and industry publications for making it easier to find award availability and its search criteria flexibility.[4]

35.     ████████████████████████████████████  The platform operates under a model where basic searches within two months of travel are free, while broader and more advanced searches are available for a $9.99-per-month subscription.  This structure allows consumers to experience the product's benefits before committing to a paid plan and encourages conversion based on value.  Subscribers value the ability to search every major airline from one interface, and many upgrade after recognizing the efficiency, breadth, and transparency of the paid service.  Seats.aero's business model depends on continued consumer satisfaction and access to the same public data that airlines display to their consumers.

---

[4] "I've been using it since March 2023 and have found value in their Pro (paid) offering which is $9.99 per month. It's awesome to able to see award availability many months out to help find award availability with ease........ The flexibility of search criteria makes this app super powerful."  Palo, *Pro Tool: Seats.aero for Airline Award Availability*, PALOWILLTRAVEL (Nov. 11, 2023) available at https://www.palowilltravel.com/2023/11/11/pro-tool-seats-aero-for-airline-award-availability/.

### D.     Air Canada Uses Unreasonable Exclusionary Conduct to Impede Independent Award-Search and Display Tools Like seats.aero

36.     In 2023, Air Canada began aggressively enforcing restrictive Terms of Use that purported to prohibit automated access to its publicly available website content.  Air Canada

issued a demand letter, followed by this lawsuit. Aeroplan also began issuing technological restriction measures to exclude seats.aero access to the Aeroplan redemption data. Later, in 2025, Air Canada altered its website's configuration to require login credentials for public redemption data that had previously been accessible without authentication.

37. Air Canada has applied its Terms of Use and technical restrictions in a targeted and disproportionate manner, including by directing enforcement actions against seats.aero, while other entities engaging in comparable activities have not been subject to similar enforcement. This differential treatment has deterred independent award-search tools, increased uncertainty and operational risk, and impaired competitors' ability to operate and compete effectively. Air Canada's actions against seats.aero, a prominent award-search tool, further demonstrates that it actively monitors independent award-search tools.

38. Air Canada justified these actions as protecting its infrastructure from excessive burden. But, as explained above, seats.aero operates in a manner specifically designed to avoid any burden: its data collection uses a controlled request rate of approximately five queries per second, employs caching to prevent duplicate calls, and accesses publicly available APIs.

39. Air Canada's exclusionary conduct has increased the cost and complexity of operating seats.aero. It has also diminished and compromised display options as a result of compromised data.

40. Air Canada's exclusionary conduct has also stifled innovation in award-search tools. Independent developers and potential partners face barriers and uncertainty that discourage investment and new product development.

41. Air Canada's exclusionary conduct has also harmed consumers and distorted the competitive process. By restricting access to Aeroplan redemption data and enforcing its Terms of Use to impede independent tools, Air Canada has limited transparency in how Aeroplan points

- 21 -

can be redeemed and the value those points represent.  Air Canada's restrictions materially impair the ability of independent tools to compete by raising their costs, degrading their functionality, and limiting access to essential data inputs.

**E.    Air Canada's Exclusionary Conduct Interferes with Localhost's Existing and Prospective Business Relationships**

42.    Air Canada's exclusionary conduct has also materially interfered with Localhost's relationships with its paying subscribers and with prospective business opportunities.  Because seats.aero's functionality depends in part on access to Aeroplan redemption data, Air Canada's restrictions have impaired Localhost's ability to deliver the level of service expected by its users and to grow its business relationships.

43.    As a result of Air Canada's restrictions, paying subscribers of seats.aero experienced concrete service disruptions affecting Aeroplan search functionality.  For example, on or about April 2025, subscribers were unable to access complete Aeroplan redemption data following Air Canada's implementation of the login restrictions, resulting in incomplete or unavailable search results.  These subscribers reported the issues to Localhost, requested refunds citing inaccurate Aeroplan data and the inability to retrieve Aeroplan results, and cancelled their subscriptions.  Indeed, one subscriber wrote, ███████████████████████████

██████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████

██████████████████████████████████

██████████████████████████████████████

████████████████████████

44.    In another instance, on or about April 2024, subscribers encountered repeated delays and incomplete Aeroplan availability results.  These subscribers cancelled their

subscription, which led to lost revenue for Localhost.  For example, one subscriber wrote, ██

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

45.     These examples are illustrative and not exhaustive; Localhost has experienced numerous additional instances of subscriber dissatisfaction, cancellations, refund requests after Air Canada implemented technical restrictions.  These instances led to lost subscription revenue and related business harm.

46.     These incidents are representative of a broader pattern.  Following Air Canada's escalation of access restrictions beginning in or about May 2023 and continuing thereafter, Localhost received multiple complaints from subscribers reporting incomplete, delayed, or unreliable Aeroplan search results.  During this period, Localhost experienced an increase in refund requests and subscription cancellations attributable to diminished Aeroplan functionality.

47.     These disruptions occurred in close temporal proximity to Air Canada's implementation and escalation of access restrictions, including login requirements and technical restriction measures.  The resulting inability of seats.aero to consistently access Aeroplan redemption data materially impaired core aspects of the service beyond ordinary variability, leading to subscriber dissatisfaction and lost business.

48.     Air Canada's conduct also interfered with Localhost's prospective business relationships.  On or about July 2023, Localhost interacted with an organizer of the Travel Summit regarding a potential sponsorship opportunity.  The Travel Summit is an airline industry conference attended by airlines, travel technology companies, and other industry participants.  Sponsorship of the conference would have provided Localhost with a concrete opportunity to

- 23 -

promote its services, engage with potential partners and customers, and expand its business.

49.     Localhost took steps to participate in the conference, including confirming interest and coordinating with the organizers in December 2023, reflecting a reasonable expectation that the associated business opportunities would materialize.

50.     Upon information and belief, on or around December 2023, Air Canada communicated with the conference organizers and conveyed that it did not want Localhost to participate in or sponsor the event.  Following that communication, the organizers refused Localhost's participation.  As a result, Localhost was unable to proceed with the opportunity.

51.     Air Canada's intervention directly caused the loss of this business opportunity.  The organizers' decision to exclude or limit Localhost occurred after and in response to Air Canada's communication and would not have occurred absent that interference.

52.     Air Canada's conduct also deterred other prospective business relationships.  In or about November 2025, a prospective partner expressed strong interest in Localhost's technology and platform and indicated that it was "impressive."  However, the prospective partner stated that, because of Localhost's ongoing dispute and litigation with Aeroplan, it was unwilling to proceed, citing concern with the associated risks of engaging under those circumstances.

53.     Upon information and belief, the prospective partner's decision was influenced by Air Canada's enforcement actions and litigation, which created perceived legal and commercial risk associated with engaging with Localhost.

54.     The foregoing examples are illustrative and not exhaustive.  Numerous additional prospective partners, customers, and industry participants declined to initiate or proceed with business relationships due to concerns arising from Air Canada's conduct, including the perceived legal, operational, and commercial risks associated with engaging with Localhost.  Air Canada knew or should have known that its conduct would create such risk and deter third

parties from entering into business relationships with Localhost.

55.     Through these actions, Air Canada interfered not only with Localhost's ability to perform for its existing customers, but also with its ability to develop new relationships, expand its business, and compete on the merits in the marketplace.

**F.      Air Canada's Exclusionary Conduct Has No Legitimate Justification and Entrenches Its Monopoly Position**

56.     Air Canada has suggested that its restrictions on access to Aeroplan redemption data may relate to concerns regarding infrastructure burdens. To the extent such justifications are asserted, Air Canada's conduct is not reasonably tailored to achieve those objectives and instead operates to impair competition in the Aeroplan Award-Search Tools market.

57.     Independent tools such as seats.aero use measured and controlled access practices designed to minimize any potential burden on Air Canada's systems, including limited request rates, caching to avoid duplicate queries, and structured data retrieval. These practices are consistent with efficient use of publicly available data and do not impose disproportionate demands on Air Canada's infrastructure.

58.     Air Canada has not implemented neutral, generally applicable measures designed to manage system load while preserving access. Instead, ███████████████████████. ████████████████████████████████████████████████. ████████████████████████████████████████████████. ███████████████████████

59.     Less restrictive alternatives are readily available to address any legitimate operational concerns, including reasonable rate limiting that would allow independent tools to operate without impairing system performance. Air Canada has declined to implement such alternatives.

60.     The breadth and structure of Air Canada's restrictions are therefore

disproportionate to any legitimate objectives and have the effect of restricting access to Aeroplan redemption data beyond what is necessary to protect its systems.  As a result, these measures function to raise rivals' costs, degrade the functionality of competing tools, and limit effective competition in the Aeroplan Award-Search Tools market.

61.     The timing and escalation of these measures, following the emergence and increasing adoption of independent award-search tools, further demonstrate that Air Canada's conduct is directed at suppressing competitive threats rather than addressing neutral operational concerns.

---

[5] Allegations regarding "contract," "contracts," or "contractual" as it relates to antitrust violations are made to the extent that the Court finds that a contract exists based on Terms of Use.

## ADDITIONAL FACTUAL ALLEGATIONS RELEVANT TO LOCALHOST'S ANTITRUST COUNTERCLAIMS

### THE RELEVANT MARKET

**A.     Relevant Product Market**

62.     The relevant product market is the market for tools that facilitate the search and display of Aeroplan redemption data (the "Aeroplan Award-Search Tools market").  This is a distinct market in which entities provide consumers with the ability to efficiently identify, compare, and evaluate redemption opportunities using Aeroplan loyalty points.

63.     This market depends on a distinct and essential input: Aeroplan redemption data, including seat availability, dynamic pricing in points, and routing options.  Air Canada exclusively owns and controls this data through its operation of the Aeroplan program.  There is no practical alternative source from which competitors can obtain comprehensive, real-time Aeroplan redemption data.

64.    Aeroplan Award-Search Tools constitute a distinct antitrust market because no reasonably interchangeable substitutes exist for consumers seeking to redeem Aeroplan points efficiently, including tools associated with other loyalty programs or general travel search services.  Aeroplan points are a non-fungible currency that may be redeemed only through the Aeroplan program.

65.    Consumers holding Aeroplan points are effectively locked into the Aeroplan ecosystem because those points are non-fungible and must be redeemed within the program.  Once acquired, Aeroplan points cannot be converted into alternative loyalty currencies or used outside the Aeroplan program.  This creates substantial switching costs, as consumers who have accumulated Aeroplan points cannot replicate those balances or benefits in alternative programs without material economic loss.

66.    As a result of these switching costs, when access to efficient Aeroplan search functionality is degraded, consumers do not substitute to alternative loyalty programs or to cash purchases.  Instead, they remain within the Aeroplan ecosystem and incur increased search costs in order to utilize their existing Aeroplan points.  This behavior reflects low cross-elasticity of demand between Aeroplan-specific search tools and other travel-search options and demonstrates the absence of reasonable substitutes within the relevant market.

67.    Other independent award-search tools rely on the same underlying data and are subject to the same restrictions imposed by Air Canada.  As a result, these tools are similarly constrained in their ability to access complete and reliable information and do not provide effective competitive alternatives.

68.    Likewise, airline-operated interfaces operated by airlines other than Air Canada are not substitutes because consumers who have accumulated Aeroplan points must redeem through Aeroplan.  Further, other loyalty award programs use different loyalty currencies.

- 27 -

69.     A hypothetical monopolist controlling Aeroplan Award-Search Tools, or the underlying Aeroplan redemption data necessary to supply such tools, could profitably impose a small but significant and non-transitory increase in price, or degrade product quality (including search functionality, transparency, and speed), without losing sufficient users to render such conduct unprofitable.

**B.     Air Canada Possess Market Power, Monopoly Power, and a Dangerous Probability of Obtaining Monopoly Power in the Relevant Market**

70.     Air Canada possesses monopoly power in the Aeroplan Award-Search Tools market through its exclusive ownership and control of Aeroplan redemption data, which is a necessary and non-replicable input for any firm seeking to compete in that market.  This control enables Air Canada to restrict, condition, or deny access in ways that impair competition and gives it the ability to exercise market power.

71.     This control allows Air Canada to exclude competition by restricting access to Aeroplan data through contractual, technical, and login-based barriers.  Because competitors cannot obtain equivalent data from any alternative source, Air Canada's restrictions foreclose effective competition.

72.     Barriers to entry in the Aeroplan Award-Search Tools market are high and durable.  New entrants cannot independently generate Aeroplan redemption data, reverse engineer it at scale without access, or otherwise obtain it.

73.     Air Canada's market power is demonstrated by its ability to impose exclusionary restrictions without losing users to alternative products.  Despite degrading access to Aeroplan search functionality for independent award-search tools, consumers remain within the Aeroplan ecosystem due to the non-fungible nature of Aeroplan points and the switching costs described above.

74.     Air Canada's market power is further reflected in its ability to control the level of

transparency available to consumers regarding redemption pricing and availability. By limiting access to independent award-search tools that enhance transparency, Air Canada can reduce competitive pressure on its redemption pricing and availability practices.

75. Air Canada's monopoly power is durable because it arises from structural ownership of the Aeroplan platform and its associated data. This power cannot be eroded by innovation, entry, or competition absent access to Aeroplan redemption data.

76. Air Canada's exclusionary conduct reflects its specific intent to monopolize the Aeroplan Award-Search Tools market. Air Canada has knowingly restricted access to Aeroplan redemption data while deploying technical barriers and enforcing overly restrictive contractual provisions that impair the functionality of independent award-search tools. These actions are directed at suppressing competing services that provide enhanced search functionality and transparency to consumers. Air Canada's conduct demonstrates a deliberate effort to exclude competitors and consolidate control over Aeroplan search functionality.

77. Air Canada's conduct also creates a dangerous probability that it will obtain or maintain monopoly power in the Aeroplan Award-Search Tools market. By restricting access to Aeroplan redemption data, degrading the functionality of independent award-search tools, and deterring actual and potential rivals from participating in the market, Air Canada is reducing competitive alternatives and steering consumers toward its own search interface. Given the absence of reasonable substitutes, the high barriers to entry, and the demonstrated impact of Air Canada's conduct on rival award-search tools and market participation, there is a substantial likelihood that competition in this market will be further diminished or eliminated.

**C.    Geographic Markets**

78. The relevant geographic market is at least the United States and Canada, where Aeroplan members are concentrated and where Air Canada actively markets and administers the

Aeroplan program.

79.    Competition in the Aeroplan Award-Search Tools market is not meaningfully segmented by geography.  Aeroplan redemption data is controlled centrally by Air Canada and is subject to uniform contractual, technical, and login-based restrictions that apply regardless of a user's location.  As a result, independent award-search tools face the same constraints and competitive conditions across regions.

80.    To the extent a broader geographic market is considered, the same centralized control over Aeroplan redemption data imposes uniform constraints on competition globally, such that independent award-search tools and consumers face substantially similar conditions regardless of location and Air Canada's anticompetitive conduct has worldwide effects.

### AIR CANADA'S OVERALL SCHEME

81.    As described below, Air Canada has engaged in a pattern of exclusionary conduct designed to impair independent award-search tools and limit effective competition in the Aeroplan Award-Search Tools market.  This conduct includes restricting access to Aeroplan redemption data, deploying technical barriers that interfere with data retrieval, and enforcing overly restrictive contractual provisions that deter and penalize the operation of independent tools.

82.    These interrelated practices operate together to raise rivals' costs, degrade the functionality and reliability of competing services, and limit the ability of independent award-search tools to compete on the merits.  Air Canada has impaired the development and effectiveness of independent award-search tools, thereby reducing competitive pressure and limiting transparency for consumers.

83.    The effects of Air Canada's conduct are not limited to any single mechanism.  Rather, they reinforce one another and collectively distort competition in the Aeroplan

- 30 -

Award-Search Tools market by diminishing the quality, availability, and innovation of competing services.

A.    **Air Canada's Terms of Use Improperly Restrict Users, Including Localhost**

84.    Air Canada's Terms of Use are a component of its scheme to inhibit innovation and competition in the Aeroplan Award-Search Tools market. The Terms of Use prohibit any direct or indirect access or use of the website through "any manual process or any automatic, electronic or technical device," including "automated scripts, robots, crawls, screen scrapers, web 'bots', deep-links, indexes, spiders, click-spams, macro programs," or any other technology to "data mine," "screen scrape," "data process; access, extract, copy, distribute, aggregate, or acquire information; generate impressions or clicks; input or store information; search or generate searches; or manipulate or monitor any portion or content of the website."[6] The Terms of Use also prohibit creating derivative works from or otherwise copying, licensing, displaying, publishing, performing, recreating, reproducing, selling, transferring, transmitting, or otherwise distributing, modifying, editing, adding to, mirroring, framing, re-rendering, truncating, injecting, filering or changing the order of any information available from the website. The Terms of Use also prohibit using the website in any manner that burdens infrastructure or interferes with normal functioning; and prohibit circumventing measures designed to prevent such access or use.

85.    These restrictions are facially overbroad, anticompetitive, and unenforceable. By prohibiting virtually all automated and even manual access, Air Canada's Terms of Use prevent independent innovators from developing tools that could enhance consumer access to Aeroplan redemption information and improve search efficiency. They also restrict consumers from employing third-party tools that could improve their ability to search and interact with available awards. The cumulative effect is to lock consumers into Air Canada's own limited interface and

to suppress competitive innovation.

86.    These Terms of Use operate collectively across a network of users to restrict the use and development of independent award-search tools; they operate collectively to restrain competition by imposing materially identical restrictions across a broad set of users.

---

[6] These restrictions are so expansive that they purport to cover virtually all use of Air Canada's website and mobile application because they forbid access through "any manual or automatic" means to acquire information. As written, the Terms of Use would capture even standard consumer interactions, rendering lawful use impossible.

87.    There is no legitimate business justification for these Terms of Use. The data at issue is public and visible to any consumer through Air Canada's own site. Air Canada uses the Terms of Use not to protect its infrastructure but to preserve its control over redemption data and deter competitive entry.

88.    Air Canada knows that innovation in searching and accessing its content could challenge its dominance in the Aeroplan Award-Search Tools market. Thus, it imposes overly restrictive Terms of Use to deter the development of tools that could compete with its services.

89.    Even if the challenged Terms of Use were not facially anticompetitive, Air Canada has implemented and enforced them for the specific purpose of suppressing competition, causing ongoing anticompetitive effects in the Aeroplan Award-Search Tools market.

### B.    Air Canada Deployed Technical Barriers That Impair Independent Award-Search Tools

90.    ██████████████████████████████████████████████████████ ███████████████████████████████████████████ ████████████████████████████████████

91.    These technical measures interfere with the ability of independent award-search tools to access Aeroplan data reliably and at scale. As a result, such tools experience reduced

data availability, delayed updates, incomplete search results, and increased operational instability.

92.    Air Canada's implementation of these measures has been dynamic and iterative. This pattern has increased the costs, complexity, and uncertainty associated with operating independent award-search tools.

**C.    Air Canada Withdrew and Restricted Access to Public Aeroplan Redemption Data**

93.    Since at least the inception of the online Aeroplan awards program in or around May 2010, Aeroplan redemption data, including flight availability, pricing, and routing information, was historically publicly available through Air Canada's website and related interfaces.

94.    Independent developers, including Localhost, reasonably relied on this longstanding public access in developing tools that enhanced search efficiency and consumer transparency.

95.    This access also benefited Air Canada.  By directing users to Air Canada's booking platform, seats.aero and other independent award-search tools increased customer traffic, engagement, and bookings that generated revenue for Air Canada.

96.    However, in or around April 2025, Air Canada placed previously accessible Aeroplan redemption data behind a login requirement, requiring account authentication to view information that had historically been available without restriction.

97.    This change eliminated an established avenue through which independent award-search tools could access Aeroplan data and represented a departure from Air Canada's voluntary prior course of conduct.  The timing of this restriction followed the emergence and growth of independent award-search tools that provided enhanced transparency and functionality to consumers.

98.    Air Canada's restrictions have eliminated a source of consumer traffic and booking activity that had previously benefited its business.  Independent award-search tools, including Localhost, helped consumers find available award flights and directed them to Air Canada's website to complete bookings.  With these tools impeded, fewer consumers are able to identify and pursue Aeroplan redemption options, resulting in fewer bookings and lost revenue that Air Canada would otherwise have earned.  In doing so, Air Canada sacrificed these short-term economic benefits in order to restrict competition from independent award-search tools.

99.    Air Canada's decision to terminate this established and beneficial course of access was driven by a desire to exclude independent award-search tools and maintain control over how Aeroplan redemption options are presented to consumers.

### D.    Aeroplan Redemption Data Is an Essential Input for Competition

100.    Aeroplan redemption data also constitutes an essential facility for purposes of competition in this market because it is a necessary upstream input for competing in the downstream Aeroplan Award-Search Tools market.  Without access to sufficiently complete and timely data, independent award-search tools cannot provide meaningful search or comparison functionality.

101.    Air Canada controls this essential facility through its operation of the Aeroplan program.  Air Canada has denied or substantially restricted access to this essential facility by imposing contractual, technical, and access-control measures that limit or prevent independent tools from obtaining Aeroplan redemption data necessary to compete.

102.    Air Canada participates in the downstream market through its own consumer-facing search tools while restricting or denying upstream access to Aeroplan redemption data through contractual, technical, and access-control measures, thereby impairing independent tools' ability to compete.

103.    Providing access to Aeroplan redemption data is feasible.  Air Canada has historically made this information available through its own consumer-facing interfaces and continues to generate and deliver such data to users through its systems.

104.    By denying access to this essential facility, Air Canada has impaired the ability of independent award-search tools to compete on the merits and has foreclosed effective competition in the Aeroplan Award-Search Tools market.

**E.    Air Canada's Conduct Raises Rivals' Costs and Degrades Competition**

105.    The combined effect of Air Canada's contractual restrictions, technical barriers, and data-access limitations is to raise the costs of operating independent award-search tools and to degrade their functionality.  Independent developers must expend substantial resources to adapt to compromised data and mitigate disruptions.

106.    These increased costs reduce the ability of independent tools to compete on price, invest in innovation, and deliver reliable, real-time, and comprehensive search functionality.  As a result, competing services provide less complete, less accurate, and less timely information than they would in a but-for competitive environment.

**F.    Air Canada's Conduct Substantially Forecloses Effective Competition**

107.    Air Canada's conduct has substantially foreclosed effective competition in the Aeroplan Award-Search Tools market.  By restricting access to the essential data required to provide full functionality, Air Canada has limited the ability of competing tools to offer comparable services.

**G.    Air Canada's Proffered Justifications Are Pretextual and Disproportionate**

108.    Air Canada has asserted that its restrictions are necessary to protect system integrity and prevent infrastructure burdens.  Those justifications are pretextual and disproportionate to the conduct at issue.

- 35 -

109.    Independent tools such as seats.aero use controlled access methods, including limited request rates and caching, to minimize system impact.  These practices are consistent with efficient use of publicly available data and do not impose unreasonable burdens.

110.    Less restrictive alternatives are readily available, including reasonable rate limiting.  Air Canada has declined to adopt such measures and instead has implemented restrictions that impair competition.

### H.    Air Canada's Conduct Reflects a Strategy to Suppress Competition

111.    The timing and nature of Air Canada's actions demonstrate a deliberate strategy to suppress competition from independent award-search tools.  Air Canada escalated its restrictive measures following the emergence and growing popularity of tools such as seats.aero.

112.    Rather than competing by improving its own offerings, Air Canada has chosen to restrict access to the inputs necessary for rivals to compete, thereby preserving its control over Aeroplan redemption data.

113.    This conduct represents exclusionary behavior designed to maintain Air Canada's dominance in the Aeroplan Award-Search Tools market at the expense of competition and consumers.

### LOCALHOST HAS SUFFERED AND WILL SUFFER ANTITRUST INJURY

114.    As a direct and proximate result of Air Canada's anticompetitive conduct, competition in the Aeroplan Award-Search Tools market has been substantially lessened, causing injury to consumers as well as to Localhost.

115.    Air Canada's conduct has materially impaired the ability of independent award-search tools to compete effectively.  By restricting access to Aeroplan redemption data, imposing technical barriers, and introducing login requirements, Air Canada has degraded the functionality, reliability, and completeness of independent award-search tools that rely on such

- 36 -

data.

116.    As a result of these restrictions, independent award-search tools, including Localhost's seats.aero, are unable to provide consumers with consistent real-time access to comprehensive Aeroplan redemption availability and pricing.  These limitations result in incomplete, delayed, or less accurate search results, reducing the effectiveness of these tools compared to a competitive environment.

117.    Air Canada's conduct has also increased the operational costs and uncertainty faced by Localhost and other independent award-search tools.  Developers must devote substantial engineering resources to respond to shifting technical measures, mitigating access disruptions, and attempting to maintain data continuity.  These increased costs reduce the ability of independent firms to compete on price, invest in innovation, and expand their services.

118.    These increased costs and reduced functionality raise rivals' costs and distort competition in the Aeroplan Award-Search Tools market.  Competitors are uniformly constrained by Air Canada's conduct, resulting in diminished competitive pressure and reduced incentives to innovate.

119.    These impairments to competition have directly harmed consumers.  In the absence of fully functional independent award-search tools, consumers must rely on less efficient and more limited search methods, including Air Canada's interface, which does not provide equivalent flexibility, efficiency, or comparative functionality.  Consumers are therefore required to perform repetitive, manual searches across dates and routes, increasing transaction costs, and reducing the effective usability of Aeroplan points.

120.    These harms are reflected in the actual experience of consumers who are forced to rely on Air Canada's interface.  Air Canada's website and mobile application require users to conduct repetitive, sequential searches across individual routes and dates, rather than allowing broad or flexible queries.  For example, a consumer seeking to identify Aeroplan award

availability over a range of dates must manually input each date and route combination, review results one query at a time, and then repeat the process for alternative itineraries.

121. In addition, Air Canada's interface does not permit users to efficiently compare redemption options across multiple dates, routes, or partner airlines in a single view, and does not provide the same filtering, sorting, or aggregation capabilities available through independent tools. As a result, consumers must expend significantly more time and effort to locate suitable award travel options, often missing efficient routings or better redemption values that would be readily identified using independent search tools. These limitations materially increase search costs, reduce transparency, and diminish the practical value of Aeroplan points.

122. The reduction in transparency and comparability caused by Air Canada's conduct also weakens competitive constraints on redemption pricing and availability. Independent award-search tools previously enabled users to identify optimal redemption opportunities and to observe pricing patterns across dates and routes. By impairing these tools, Air Canada reduces the likelihood that unfavorable pricing or reduced availability will be detected or avoided, to the detriment of consumers.

123. Air Canada's conduct has further suppressed innovation in the Aeroplan Award-Search Tools market. Independent developers, including Localhost, have curtailed or delayed product enhancements, feature development, and commercial partnerships due to uncertainty regarding continued access to essential data inputs. This reduction in innovation represents a decrease in the quality and diversity of services available to consumers.

124. Collectively, these effects constitute harm to the competitive process, including reduced output of effective tools, diminished quality and functionality of existing services, increased costs to consumers seeking to redeem Aeroplan points, and reduced innovation in the market.

125.     Localhost has suffered antitrust injury as a direct and foreseeable result of Air Canada's conduct, including lost revenue, diminished goodwill, increased operational costs, and impaired ability to compete on the merits.  These injuries flow directly from the same anticompetitive effects that have harmed competition and consumers in the Aeroplan Award-Search Tools market.

126.     The injuries alleged herein are of the type the antitrust laws were designed to prevent and are the direct result of Air Canada's exclusionary and anticompetitive conduct.

## CAUSES OF ACTION

## COUNT I
### (Monopolization Under Section 2 of the Sherman Act, 15 U.S.C. § 2)

127.     Localhost repeats and realleges the preceding paragraphs of its Counterclaims as if fully set forth herein.

128.     Air Canada's conduct constitutes unlawful monopolization under Section 2 of the Sherman Act, 15 U.S.C. § 2.

129.     Section 2 of the Sherman Act prohibits, *inter alia*, the willful monopolization of any part of the trade and commerce among the States, as well as attempts to monopolize any part of the trade and commerce among the States.

130.     Air Canada has monopoly power in the Aeroplan Award-Search Tools, and it has maintained this power through anticompetitive conduct.

131.     Air Canada has engaged in an anticompetitive scheme, including imposing improperly restrictive Terms of Use on users, deploying discriminatory technical barriers under the pretext of infrastructure burden, gating previously public Aeroplan redemption data behind login requirements, and denying or restricting access to Aeroplan redemption data as an essential facility, to acquire, enhance, and/or maintain its monopoly power in the Aeroplan Award-Search Tools market in violation of Section 2 of the Sherman Act.

132.    Each aspect of the overall scheme described above is anticompetitive conduct that itself violates the antitrust laws.  In addition, each act, in combination with one or more other aspects of the overall scheme, has the purpose and effect of furthering the overall scheme to maintain Air Canada's monopoly power in the Aeroplan Award-Search Tools market, and the resulting synergistic effects of the scheme independently violate the antitrust laws.

133.    Air Canada's anticompetitive scheme has given it the power to control pricing and exclude competition in the Aeroplan Award-Search Tools market.

134.    Air Canada's willful and wrongful maintenance and/or extension of its monopoly power is not the result of growth and development as a result of innovation, business acumen, or by virtue of offering a superior product.  Rather, it is a direct consequence of Air Canada's intentional, exclusionary conduct in connection with its anticompetitive scheme.

135.    There is no efficiency-enhancing, procompetitive justification for Air Canada's behavior.

136.    Air Canada's anticompetitive scheme alleged herein has injured (and unless enjoined, will continue to injure) consumers and competitors in the Aeroplan Award-Search Tools market through decreased output, reduced choice, reduced innovation, and other anticompetitive effects including raising additional barriers to entry in the Aeroplan Award-Search Tools market.

137.    By reason of Air Canada's unlawful monopolization of the Aeroplan Award-Search Tools market, Localhost has been injured in its business and property.

138.    Unless enjoined and declared illegal, Air Canada's unlawful conduct will continue, Localhost will continue to sustain injury and damages, and competition will continue to decrease in the Aeroplan Award-Search Tools market.

139.    The injuries to Localhost, other competitors, consumers, and competition described herein are the types of injuries that the antitrust laws are designed to prevent because

they are a direct result of Air Canada's illegal, anticompetitive scheme to exclude competitors from the market.

140.    Localhost is entitled to injunctive relief and treble damages.

**COUNT II**
**(Attempted Monopolization Under Section 2 of the Sherman Act, 15 U.S.C. § 2)**

141.    Localhost repeats and realleges the preceding paragraphs of its counterclaims as if fully set forth herein.

142.    Air Canada's conduct constitutes unlawful monopolistic conduct under Section 2 of the Sherman Act, 15 U.S.C. § 2.

143.    Section 2 of the Sherman Act prohibits attempted monopolization of any part of the trade and commerce among the States.

144.    Air Canada has engaged in anticompetitive and exclusionary conduct directed at the Aeroplan Award-Search Tools market, including imposing restrictive Terms of Use, deploying technical barriers, restricting access to Aeroplan redemption data, and denying or restricting access to Aeroplan redemption data as an essential facility.

145.    Air Canada has acted with specific intent to monopolize the Aeroplan Award-Search Tools market.

146.    Air Canada's conduct has deterred existing and potential competitors, degraded the functionality of independent tools, and reduced competitive alternatives available to consumers.

147.    Air Canada's conduct creates a dangerous probability that it will obtain or maintain monopoly power in the Aeroplan Award-Search Tools market.

148.    The likelihood of monopolization is supported by Air Canada's exclusive control over a necessary input, the absence of reasonable substitutes, high barriers to entry, and the demonstrated effect of its conduct in impairing competition and discouraging market

- 41 -

participation.

149.    By reason of Air Canada's attempted monopolization, Localhost has been injured in its business and property.

150.    Unless enjoined, Air Canada's unlawful conduct will continue, causing ongoing harm to Localhost and competition.

151.    The injuries alleged are of the type the antitrust laws were intended to prevent.

152.    Localhost is entitled to injunctive relief and treble damages.

## COUNT III
### (Unreasonable Restraint of Trade in Violation of Sherman Act § 1, 15 U.S.C. § 1)

153.    Localhost repeats and realleges the preceding paragraphs of its counterclaims as if fully set forth herein.

154.    Air Canada's conduct constitutes an unreasonable restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

155.    Section 1 of the Sherman Act (15 U.S.C. § 1) prohibits, *inter alia*, (1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) which is intended to harm or restrain trade or commerce among the several States, or with foreign nations; (3) which actually injures competition; and (4) that harms the plaintiff as a result of the anticompetitive aspect of the practice under scrutiny.

156.    Air Canada and Aeroplan are corporations engaged in interstate and foreign trade and commerce.

157.    Air Canada's Terms of Use with each of its users are contracts between distinct entities that Air Canada has entered into for the purpose of restraining trade in the Aeroplan Award-Search Tools market.

158.    These contracts are not isolated or individualized arrangements, but rather constitute a common set of materially identical contractual provisions imposed across a network

- 42 -

of users as a condition of accessing Aeroplan services.  These contracts collectively restrain the conduct of a broad set of market participants, including both developers and consumers.

159.    Collectively, these contractual provisions operate as a network of parallel restraints that restrict independent award-search tools' ability to access Aeroplan data and prevent users from utilizing such tools, thereby limiting competition in the Aeroplan Award-Search Tools market.

160.    Air Canada has market power in the Aeroplan Award-Search Tools market.

161.    There is no efficiency enhancing, procompetitive justification for Air Canada's challenged Terms of Use.

162.    Air Canada's improperly restrictive Terms of Use have injured (and unless enjoined, will continue to injure) consumers and competitors in the Aeroplan Award-Search Tools market through decreased output, reduced choice, reduced innovation, and other anticompetitive effects including raising additional barriers to entry in the Aeroplan Award-Search Tools market.  These effects impact consumers across the Aeroplan Award-Search Tools market.

163.    By reason of Air Canada's unlawful Terms of Use, Localhost has lost potential business partners and been injured in its business and property.  As a direct result of these contractual restrictions, these restraints have harmed, and threaten to harm, Localhost by inhibiting seats.aero from offering its competitive display product.

164.    Air Canada has engaged in anticompetitive conduct by imposing, in its agreements with users, restrictive terms of use that limit access to Aeroplan data, thereby restraining trade in the Aeroplan Award-Search Tools market.

165.    Unless the Air Canada's unlawful Terms of Use are enjoined and declared illegal, Localhost will continue to sustain injury and damages, and competition will continue to decrease

in the Aeroplan Award-Search Tools market.

166.    The injuries to Localhost, other competitors, consumers, and competition described herein are the types of injuries that the antitrust laws are designed to prevent because they are a direct result of Air Canada's unlawful agreements imposed on each of its users.

167.    Localhost is entitled to injunctive relief and treble damages.

## COUNT IV
### (Tortious Interference with Contractual Relations)

168.    Localhost repeats and realleges the preceding paragraphs of its counterclaims as if fully set forth herein.

169.    Air Canada has tortiously interfered with Localhost's contractual relations in violation of the common law of Delaware.

170.    Localhost maintains valid and enforceable subscription agreements with its paying users, pursuant to which users obtain access to seats.aero's award-search functionality and related features, including certain expanded search capabilities available through paid subscriptions.

171.    Air Canada knew of these contractual relationships.  Air Canada monitored seats.aero and was aware that Localhost provided Aeroplan-related functionality to paying subscribers whose continued use depended on the ability of the service to access and display Aeroplan redemption data.

172.    Air Canada intentionally engaged in conduct that interfered with Localhost's performance of these agreements, including restricting access to Aeroplan redemption data through enforcement of its Terms of Use, technical restriction measures, and login requirements.

173.    For example, on or about April 2025, paying subscribers of seats.aero experienced degradation in Aeroplan search results following Air Canada's implementation of login restrictions.  During this period, these subscribers were unable to retrieve complete or reliable

- 44 -

Aeroplan redemption availability data through seats.aero, resulting in incomplete or unavailable search results. As a direct consequence of this service disruption, these subscribers contacted Localhost to report the issue and subsequently requested a refund and cancelled the subscription. Localhost issued a refund and lost the associated subscription revenue.

174. In another instance, on or about April 2024, subscribers encountered repeated delays and incomplete Aeroplan availability results. These subscribers cancelled their subscription, which led to lost revenue for Localhost.

175. The foregoing examples are illustrative and not exhaustive. Localhost has experienced numerous additional instances in which paying subscribers encountered degraded Aeroplan functionality attributable to Air Canada's conduct, resulting in subscriber dissatisfaction, refund requests, cancellations, and lost subscription revenue. These incidents reflect a broader and ongoing pattern of disruption to Localhost's contractual relationships with its subscribers.

176. These disruptions were not isolated incidents. Following Air Canada's implementation and escalation of access restrictions and continuing thereafter, Localhost received multiple complaints from paying subscribers reporting incomplete, delayed, or unreliable Aeroplan search results. During this period, Localhost experienced an increase in refund requests and subscription cancellations attributable to the diminished functionality of Aeroplan search results caused by Air Canada's conduct.

177. The service disruptions and resulting customer losses occurred in close temporal proximity to Air Canada's implementation of its access restrictions, including the login restrictions and technical barriers, and were directly caused by the resulting inability of seats.aero to reliably access Aeroplan redemption data. Air Canada knew or should have known that restricting access to this data would impair the functionality of independent tools and

interfere with Localhost's ability to fulfill its contractual obligations to subscribers.

178. Air Canada's conduct has not only resulted in specific subscriber cancellations, but has also caused broader and ongoing harm to Localhost's business by negatively impacting subscriber growth, reducing overall customer retention, and diminishing the value and viability of its platform.

179. As a result of these actions, the seats.aero service experienced material degradation in its ability to access and display Aeroplan redemption data, including reduced data availability, incomplete results, and interruptions in search functionality.

180. These disruptions went beyond ordinary limitations and variability, and materially impaired the functionality that subscribers paid to access.

181. Air Canada knew or should have known that restricting access to Aeroplan redemption data would foreseeably impair the functionality of independent award-search tools, resulting in degraded service performance, customer dissatisfaction, and termination of subscriber agreements.

182. Air Canada's conduct was a significant factor in causing Localhost to be unable to deliver the level of functionality expected by its subscribers, resulting in cancellations, refund requests, and the loss of subscriber relationships.

183. Air Canada's interference was intentional and without justification, as its restrictions were not reasonably necessary to protect system integrity and were disproportionate to any legitimate objective.

184. Air Canada's conduct was willful and undertaken with conscious disregard of the harm to Localhost.

185. As a direct and proximate result, Localhost has suffered injury, including lost subscription revenue, diminished goodwill, and increased operational costs.

186.    By intentionally interfering with Localhost's performance of its subscription agreements, with knowledge of those agreements, and without justification, Air Canada induced or caused the breach, termination, or disruption of valid contractual relationships between Localhost and its subscribers.  Air Canada's conduct therefore constitutes tortious interference with contractual relations under Delaware common law.

187.    Localhost is entitled to damages in an amount to be determined at trial.

**COUNT V**
**(Tortious Interference with Prospective Business Relationships)**

188.    Localhost repeats and realleges the preceding paragraphs of its counterclaims as if fully set forth herein.

189.    Air Canada has tortiously interfered with Localhost's prospective business relationships in violation of the common law of Delaware.

190.    Localhost had a reasonable probability of entering into prospective business relationships, including with users, subscribers, partners, and industry participants, based on the ongoing operation and growth of its seats.aero platform.

191.    For example, in or about July 2023, Localhost engaged in discussions to potentially sponsor the Travel Summit, an airline industry conference that facilitates connections among industry participants, partners, and potential customers. This sponsorship opportunity presented a concrete opportunity for Localhost to develop business relationships and expand its customer base.

192.    Upon information and belief, on or around December 2023, Air Canada communicated with the organizers of the Travel Summit and caused Localhost's participation to be rescinded or materially curtailed.

193.    Localhost also engaged in discussions with prospective partners who expressed interest in Localhost's technology and platform and indicated a willingness to pursue potential

collaborations.

194.    In addition, prospective partners who had expressed interest in collaborating with Localhost declined to proceed due to concerns arising from Localhost's dispute and litigation with Air Canada, and the associated risks of engagement.

195.    Air Canada knew or should have known of these prospective business relationships and that Localhost depended on continued access to Aeroplan redemption data and the ability to operate its platform without interference.

196.    Air Canada intentionally interfered with these prospective relationships by restricting access to Aeroplan redemption data, initiating enforcement actions, and engaging in conduct that created perceived legal and commercial risks associated with doing business with Localhost.

197.    The foregoing examples are illustrative and not exhaustive.  Numerous additional prospective partners, customers, and industry participants declined to initiate or proceed with business relationships due to concerns arising from Air Canada's conduct, including the perceived legal, operational, and commercial risks associated with engaging with Localhost.  These lost opportunities represent a substantial and ongoing impairment of Localhost's prospective business relationships and anticipated revenue, and reflect Air Canada's tortious interference with those relationships.

198.    Air Canada's conduct has not only resulted in the loss of specific prospective opportunities, but has also caused broader harm to Localhost's business by deterring potential partners and customers, negatively impacting its growth, and impairing its ability to expand its platform.

199.    Air Canada's conduct created foreseeable legal and commercial risk perceptions that directly discouraged prospective partners from entering into business relationships with

Localhost.

200.    Air Canada knew or should have known that its conduct would deter such relationships and was a substantial factor in causing these prospective business opportunities to be lost.

201.    Air Canada's interference was without justification.

202.    Air Canada's conduct was willful and undertaken with conscious disregard of the harm to Localhost.

203.    As a direct and proximate result of Air Canada's conduct, Localhost has suffered damages, including lost business opportunities, lost prospective revenue, and harm to its reputation and goodwill.

204.    By intentionally interfering with Localhost's reasonable probability of entering into prospective business relationships, through improper means and without justification, Air Canada caused the loss of identifiable business opportunities and prospective economic advantage.  Air Canada's conduct therefore constitutes tortious interference with prospective business relationships under Delaware common law.

205.    Localhost is entitled to damages in an amount to be determined at trial.

## COUNT VI
### (Unfair Competition)

206.    Localhost repeats and realleges the preceding paragraphs of its counterclaims as if fully set forth herein.

207.    Localhost had a reasonable expectation of entering into valid business relationships with users, subscribers, partners, and industry participants through the continued operation and growth of its seats.aero platform.

208.    Air Canada interfered with these expectancies by engaging in conduct designed not merely to compete, but to prevent others from dealing with Localhost.

- 49 -

209. Air Canada employed improper means in doing so, including issuing legal threats, initiating enforcement actions, and implementing targeted technical restrictions in a manner intended to deter third parties from engaging with Localhost.

210. Air Canada also took affirmative steps to interfere with Localhost's relationships with third parties, including communicating with industry participants to discourage Localhost's participation in business opportunities, such as the Travel Summit.

211. These actions conveyed to market participants that engaging with Localhost carried legal or operational risk, thereby discouraging prospective partners and customers from entering into or continuing business relationships.

212. The foregoing conduct is illustrative of a broader course of conduct by Air Canada. Through its actions, Air Canada has interfered with numerous existing and prospective relationships between Localhost and third parties, resulting in lost business opportunities, diminished goodwill, and financial harm.

213. Air Canada's conduct constitutes intimidation, disparagement, and other wrongful means of competition under Delaware common law.

214. Air Canada's conduct was willful and undertaken with conscious disregard of the harm to Localhost.

215. As a direct and proximate result of this conduct, Localhost's reasonable expectancies of business relationships were defeated, and Localhost suffered harm, including lost business opportunities, diminished goodwill, and financial injury.

216. Air Canada's conduct constitutes unfair competition under Delaware common law. By engaging in conduct designed to exclude Localhost from competing and to deter third parties from doing business with it, Air Canada has wrongfully interfered with the competitive process and caused compensable harm.

217.    Localhost is entitled to damages in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Localhost prays for relief as follows:

A.    That Air Canada takes nothing from its claims for relief;

B.    That Air Canada's complaint be dismissed with prejudice and that Air Canada's requests for relief be denied with prejudice;

C.    That judgment be entered against Air Canada and in Localhost's favor in all respects;

D.    That the Court declare that Air Canada's conduct, as alleged herein, violates Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2;

E.    That the Court declare that Air Canada's conduct, as alleged herein, constitutes tortious interference with Localhost's contractual relations and prospective business relationships and unfair competition under applicable law;

F.    That the Court enter injunctive relief enjoining Air Canada from engaging in the anticompetitive and unlawful conduct alleged herein, including conduct that interferes with competition in the Aeroplan Award-Search Tools market;

G.    That judgment be entered in favor of Localhost for treble damages, together with the costs of this action and reasonable attorneys' fees, pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15;

H.    That judgment be entered in favor of Localhost for damages, and where permitted by law, punitive damages, resulting from Air Canada's tortious interference with contractual relations, tortious interference with prospective business relationships, and unfair competition;

I.    That the Court award pre-judgment and post-judgment interest as provided by law; and

J.    That Localhost be awarded such other and further relief as the Court deems just

and proper.

## DEMAND FOR JURY TRIAL

Localhost requests, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, a trial by jury for all claims and issues so triable.

Respectfully submitted,

**GELLERT SEITZ BUSENKELL & BROWN, LLC**
Attorneys for Defendant
Localhost LLC
Attorneys for Counterclaim Plaintiffs
Localhost LLC and Travel Data Corporation

Dated: May 14, 2026

**OF COUNSEL:**
Ross Weingarten
Vishal C. Gupta
Lillian Wallace
**STEPTOE LLP**
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 506-3900
rossweingarten@steptoe.com
vgupta@steptoe.com
lwallace@steptoe.com

*/s/ Charles J. Brown*
Charles J. Brown, III (DE 3368)
**GELLERT SEITZ BUSENKELL & BROWN, LLC**
1201 N. Orange Street, Suite 300
Wilmington, DE 19801
Telephone: (302) 425-5800
cbrown@gsbblaw.com

*Attorneys for Defendant Localhost LLC*
*Attorneys for Counterclaim Plaintiffs Localhost LLC and Travel Data Corporation*

## CERTIFICATE OF SERVICE

I, Charles J. Brown, III, hereby certify that on May 14, 2026, I caused a copy of the forgoing

*Localhost LLC's Motion to Amend Answer* to be filed with the clerk of Court via the CM/ECF

system and served to counsel of record via electronic mail.

Dated:  May 14, 2026

/s/ Charles J. Brown, III
Charles J. Brown, III (DE 3368)